UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JAMES M. PLASSE

              **Plaintiff,**

vs.                                Civil Action No.  04-CV-30056-MAP

**TYCO ELECTRONICS
CORPORATION,**

              **Defendant.**

**TYCO ELECTRONICS CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

### I.     Introduction

Defendant Tyco Electronics Corporation ("Tyco Electronics") moves to dismiss Plaintiff's Complaint as a sanction for repeated and willful false deposition testimony, and for fabrication of a document, both of which were intended by Plaintiff James M. Plasse to conceal and obscure fraudulent representations made to Tyco Electronics at the time of Mr. Plasse's application for employment.  Mr. Plasse's false testimony was flagrant, repeated numerous times over two days of deposition, and separated by ten days of careful consideration. Mr. Plasse sought to bolster his false testimony with a fraudulent document.  Whether the false testimony is considered standing alone, or where compounded by the production of a bogus document, dismissal of the action is warranted.

Mr. Plasse's misrepresentations about his education and false testimony in this litigation do not concern collateral matters but go to the heart of one of Tyco Electronics' defenses:  Mr. Plasse's claims and damages are barred by the after-acquired evidence of his "resume fraud."  Furthermore, where Mr. Plasse's wrongful termination claim is

based entirely on unfounded and uncorroborated assertions by Mr. Plasse, his misrepresentations, and later effort to conceal those misrepresentations, make his dubious claims highly suspect.[1]  For these reasons, Tyco Electronics respectfully requests that the Complaint be dismissed as a sanction for litigation misconduct by Mr. Plasse.

## II.     Background

Mr. Plasse is a former Controller in Tyco Electronics' Printed Circuit Group facility.  His employment was terminated on February 25, 2003.[2]  In Count I of his Complaint, Mr. Plasse alleges that he was terminated in retaliation for raising concerns about accounting, and, that although he was an employee at will, his termination was wrongful because it allegedly violated public policy.  Count II of Plaintiff's Complaint makes a similar claim based on promissory estoppel, alleging that Plaintiff relied on a promise that he would not be terminated if he reported allegedly unethical or illegal conduct.

Following the termination of Mr. Plasse's employment, Tyco Electronics discovered that in July 2000 when Mr. Plasse applied to be a controller, a position in which truthfulness and ethical conduct are essential, he fraudulently claimed in his resume and in his hand-written application that he had received an MBA degree from Western New England College.  Both documents remain in Mr. Plasse's personnel file, which is attached hereto with the Affidavit of Mary Ann Ayala, a Tyco Electronics

---

[1]   Despite his knowledge that he could bring any complaint or concern to an employee complaint hotline, human resources personnel, legal department personnel, external auditors, internal auditors, or the Vice-President of Finance, Mr. Plasse never brought any complaints, concerns or issues about accounting to any of these resources.  Further, Mr. Plasse never brought any complaint or concern to an audit committee, director, or the Securities & Exchange Commission.  (Exhibit 2, Plasse Dep. at 92-3, 129-133, 315-317 and Exhibit 3, Plasse Dep. Ex. 14).

[2]   Plaintiff has acknowledged that his allegation in Paragraph 5 that he was terminated in February 25, 2002 is mistaken.

human resources manager. (*See* Exhibit 1; *See also* Exhibit 2, Plasse Dep. at 262-266; 334-336; 359; Exhibit 4, Plasse Dep. Ex. 15 at 15-36; 15-41; 15-44 --15-46). Mr. Plasse's employment application also contained his agreement that the information provided in the application and on his resume (such as his MBA degree claims) "is true and complete to the best of my knowledge. I also agree that any falsified information or omissions may disqualify me from further consideration for employment and **may be considered justification for dismissal if discovered at a later date**." (Exhibit 2, Plasse Dep. at 183-184; 262-263; Exhibit 4, Plasse Dep. Ex. 15 at 15-38; 15-44 -- 15-46) (emphasis added).[3]

In this litigation, Mr. Plasse produced with his Initial Disclosures and in response to Tyco Electronics' Request for Production of Documents a more recent resume that, like the resume in the Tyco Electronics personnel file, also contained the false claim that Mr. Plasse had earned an MBA degree. (*See* Exhibit 5, Plasse Dep. Ex.1, at Plasse 0194). When Mr. Plasse was questioned about this recent resume, he first attempted to blame a "recruiter" for the false MBA claim. Then, he admitted that "it must have come from me to give to my attorney" and was "possibly" produced on his computer. (Exhibit 2, Plasse Dep. at 11).[4]

---

[3] Mr. Plasse also executed an acknowledgement in his employment application confirming that he understood his employment was "at-will. This means that either the Company or employee may terminate the employment relationship at any time, for any reason, with or without cause or notice." (Exhibit 2, Plasse Dep. at 183-184; 262-263; Exhibit 4, Plasse Dep. Ex. 15 at 15-38).

[4] During Mr. Plasse's deposition, Tyco Electronics requested that Mr. Plasse produce his computer for inspection. (*See* Exhibit 2, Plasse Dep. at 12-13). Following the second day of Mr. Plasse's deposition, Tyco Electronics again requested an opportunity to inspect Mr. Plasse's computer to determine whether it contained evidence of the recent fabrication of Deposition Exhibit 9. Plaintiff's counsel declined to cooperate with the request, and demanded a "conventional discovery request." *See* Exhibit 8, Correspondence from Maurice M. Cahillane to Jeffrey D. Clements, December 28, 2004. The request to examine Mr. Plasse's computer with respect to Deposition Exhibits 1 and 9 is encompassed by Tyco Electronics' First Request for Production of Documents, in which the term "document" includes computer-generated or computer-stored documents, data and disks, and which requested all documents concerning

In the first day of his deposition on November 19, 2004, Mr. Plasse admitted that he did not have an MBA degree from Western New England College or any other institution. (Exhibit 2, Plasse Dep. at 9-10; 14; 254). Mr. Plasse, however, repeatedly insisted that he never claimed to have an MBA degree:

Q. Have you ever claimed to have gotten an MBA?

A. No.

(Exhibit 2, Plasse Dep. at 9)

Instead, Mr. Plasse now claimed to be an "MBA Candidate," and insisted that he never told Tyco Electronics or any other employer otherwise. (Exhibit 2, Plasse Dep. at 9-22; 254-255). Again and again, Mr. Plasse testified that he had never submitted a resume to Tyco Electronics, or any other employer, in which he falsely claimed to have an MBA, and that all of his resumes stated that he was a candidate for an MBA:

- "[A]ll the resumes I have say candidate."

- All of "the resumes I've submitted to any employer has candidate for MBA."

- "I may have put that [MBA] on one of the resumes in anticipation of getting or hitting that milestone at that point in time, <u>but when I submit that, the ones after that I've submitted for employment all say candidate</u>."

- "If it was going to an agency or employer, it would say candidate."

- "This [Deposition Exhibit 1] is something that was on my computer that was not sent to any employer. **My resume at Tyco says candidate for master's degree**."

(Exhibit 2, Plasse Dep. at 11-14, 22.) (emphasis added)

Between the first and second day of his deposition ten days later, Mr. Plasse produced a document that he represented was a true copy of the cover letter and resume

---

Mr. Plasse's employment or any of his communications with Tyco Electronics. Although it should not be necessary, Tyco Electronics has served a second request for the inspection of Mr. Plasse's computer.

4

that he submitted to Tyco Electronics. This copy of Mr. Plasse's resume appeared to support his position that he had not claimed to have an MBA but instead claimed only to be an MBA Candidate (a claim that is also false). The newly discovered document was marked as Exhibit 9 in Mr. Plasse's deposition, and is attached hereto as Exhibit 6 (referred to herein as "Deposition Exhibit 9").

Throughout the second day of his deposition, Mr. Plasse continued to falsely insist that he never represented to Tyco Electronics that he had received an MBA degree:

> Q. Did you send a resume to Tyco Electronics that stated that you had an M.B.A.?
>
> A. No.
>
> Q. Are you sure about that?
>
> A. Yes, I am.

(Exhibit 2, Plasse Dep. at 254-255.)

Seeking to bolster his certainty that he had not misrepresented his education to Tyco Electronics, Mr. Plasse referred to Deposition Exhibit 9, claiming to have just discovered the document "in his briefcase" after the first day of his deposition. According to Mr. Plasse, the document was a true copy of his application letter and resume that he faxed to Tyco Electronics when he applied for the Controller position. (Exhibit 2, Plasse Dep. at 257-259). Unlike the resume in his Tyco Electronics personnel file, and in contrast to his assertion of an MBA degree in the resume produced previously in this litigation, the Plasse resume contained in Deposition Exhibit 9, which Mr. Plasse testified he had sent to Tyco Electronics in July 2000, stated: "Western New England College, Springfield, MA (Pursuing MBA/Candidate)." (*See* Exhibit 6, Deposition Exhibit 9.) (emphasis added).

5

When confronted by the fact that the resume and cover letter in his Tyco Electronics personnel file did not match the cover letter and resume that Mr. Plasse maintains he had just discovered in his briefcase, Mr. Plasse was evasive, inconsistent, and incredible.  First, he suggested that it was a "possibility" that someone else had sent in his resume and cover letter to Tyco Electronics.  (Exhibit 2, Plasse Dep. at 336).  Then, he claimed that Tyco Electronics "lost" the resume that he had faxed so he mailed an additional resume.  (Exhibit 2, Plasse Dep. at 336-337).  When asked whether he had any knowledge or evidence that someone at Tyco Electronics lost his first resume, he admitted that he did not.  (Exhibit 2, Plasse Dep. at 340.)

Both spontaneously and in response to specific questions, Mr. Plasse was adamant, until he changed his mind, that he had just discovered the documents contained in Deposition Exhibit 9 in his briefcase.  Asked where he had found Deposition Exhibit 9, he responded, "Actually, I had it in my briefcase."  (Exhibit 2, Plasse Dep. at 257).  When asked if he had altered the document since July 2000, Mr. Plasse stated that he had not, and spontaneously added, "This [Exhibit 9] is what I had in my briefcase."  (Exhibit 2, Plasse Dep. at 260).

Mr. Plasse was asked again if he had altered the resume contained in Deposition Exhibit 9.  He replied, "When I had this in my briefcase this was all intact . . .."  (Exhibit 2, Plasse Dep. at 270).  Because Mr. Plasse's answer was non-responsive, the question was repeated.  Mr. Plasse stated, "This [Exhibit 9] was what was attached to the facsimile.  **I didn't change anything.  This was in my briefcase.**") (Exhibit 2, Plasse Dep. at 271) (emphasis added).

6

Mr. Plasse's "briefcase" explanation was carefully considered, and repeated numerous times:

> Q. If I understood your testimony, you said it [Deposition Exhibit 9] came from a briefcase you had, is that right.
>
> A. Correct.
>
> Q. Is that a briefcase you use in your daily work?
>
> A. It may have been an older briefcase or it may have been a portfolio it was in.
>
> Q. Again, may haves aren't-- don't give me the information I'm asking about. Specifically, what briefcase did that document [Exhibit 9] come from?
>
> A. It **would have been** one of my older briefcases in my office.
>
> Q. Was it in fact? Is that your testimony?
>
> A. Yes, it was. Yes, it was.

(Exhibit 2, Plasse Dep. at 350-1) (emphasis added)

The implausibility of the briefcase explanation for where Deposition Exhibit 9 "would have" come from became increasingly obvious as Mr. Plasse could not explain how the document came to rest in his briefcase for more than three years, even as he continued his current employment as a controller at another company. (Exhibit 2, Plasse Dep. at 352-353.) Finally, Mr. Plasse simply changed stories, practically without skipping a beat:

> A. Yeah, it was in another folder with some Tyco booklets I have.
>
> Q. Where was that folder?
>
> A. Where was that folder? It was in my desk-- in another folder separate from the e-mails I had.
>
> Q. And where specifically, a desk drawer?

7

   A. Yes, a desk drawer.

   Q. So it wasn't in the briefcase?

   A. No.

(Exhibit 2, Plasse Dep. at 354-355).

  Following Mr. Plasse's deposition, Western New England College confirmed that Mr. Plasse not only was not a candidate for an MBA in 2000 when he applied to be a controller at Tyco Electronics, but that he was <u>never</u> a candidate for an MBA. Mr. Plasse's only activity at Western New England College involved attendance at three <u>non-degree</u> classes in 1988 and 1989. (Exhibit 7, Western New England College Transcript, at WNEC 003).

  When counsel for Tyco Electronics asked Mr. Plasse's counsel to consider the significance of Mr. Plasse's false MBA claims, false deposition testimony and the questionable documents contained in Deposition Exhibit 9, the response, unfortunately, was not constructive. Instead, the response included the baseless and cavalier retort that the resume in the Tyco Electronics' personnel file containing the false MBA claim "would be evidence that *Tyco*, not Mr. Plasse, is falsifying documents." (Exhibit 8, Letter from Jeffrey D. Clements to Maurice M. Cahillane, December 13, 2004; Letter from Maurice M. Cahillane to Jeffrey D. Clements, December 28, 2004). This irresponsible and groundless assertion merits no evidentiary consideration. (*See* Exhibit 1, Affidavit of Mary Ann Ayala.) Such a response, however, does offer additional grounds for imposing the strongest sanction in order to address misconduct that the Plaintiff does not appear willing to acknowledge or address himself.

### III.     Argument

This motion presents the question of whether a plaintiff may willfully and repeatedly use false testimony and doctored documents in an effort to preserve a dubious claim and defeat a compelling defense.  The conduct described above does not reflect isolated mistakes or misstatements in the course of a deposition, but instead constitutes repeated and considered false statements made many times, and separated by ten days of careful consideration.  In this court, as elsewhere, such conduct is considered fraud on the court as well as intolerable discovery abuse, warranting dismissal.

#### A.     Mr. Plasse's Conduct Constitutes Fraud On The Court.

Where Mr. Plasse consciously sought by dishonest means to prevent Tyco Electronics from discovering and presenting its defenses based on Mr. Plasse's fraudulent statements at the time he sought employment, the sanction of dismissal is warranted. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (Fraud on the court warranting dismissal occurs where party "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.")  As explained by the United States Supreme Court, "tampering with the administration of justice . . . is more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public. . . ."  *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 246 (1944), *overruled on other grounds, Standard Oil Co. v. United States,* 429 U.S. 17 (1976).

Fraud on the court can take many forms.  In *Aoude*, the court found a "near-classic example" of fraud on the court where plaintiff had filed a complaint based on a

9

bogus purchase agreement which was attached to the complaint. Even though the plaintiff eventually withdrew the complaint based upon the fraudulent contract and substituted the original, actual contract, the First Circuit Court of Appeals upheld dismissal of the action as an appropriate sanction. 892 F.2d at 1118. More recently, this court dismissed a complaint and awarded fees and costs to the defendant after finding that the plaintiff filed a fabricated document to support its claim. *See Premier Homes and Land Corporation v. Cheswell*, 240 F.Supp.2d 97 (D. Mass. 2002) (Neiman, USMJ).

The First Circuit Court of Appeals has recently reinforced and extended *Aoude's* holding, making clear that dismissal for fraud on the court is not limited to fraudulent filings with the court, but may also be proper where the fraudulent conduct occurred in discovery. *See Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004) (affirming dismissal of personal injury claim where the plaintiff failed to reveal prior material injuries despite questioning in depositions and interrogatories.) Massachusetts state courts take a similarly strong stand against false testimony or discovery misconduct. *See Rockdale Management Co., Inc. v. Shawmut Bank, N.A.,* 518 Mass. 596, 597, 638 N.E.2d 29, 31-32 (1994) (dismissal warranted where plaintiff forged letter on issue of damages, referenced it in his answer to an interrogatory, and lied about its genuineness at his deposition). *See also Munshani v. Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. 714, 805 N.E.2d 998 (2004) (dismissal and attorneys' fees and costs warranted where plaintiff manufactured evidence and swore to its authenticity in order to avoid a statute of frauds defense).

### B.  Mr. Plasse Attempted To Conceal and Obstruct A Compelling Defense.

Mr. Plasse's false testimony and the serendipitously discovered Deposition Exhibit 9 concerns an issue central to one of Tyco Electronics' defenses in this case: Mr. Plasse's false representations about his MBA degree at the time of his hiring were grounds in themselves for termination, as Mr. Plasse knew when he executed the hand-written employment application. Thus, under the "after-acquired evidence" doctrine, Mr. Plasse's misconduct is likely to bar his claims for wrongful termination outright, and will, at a minimum, preclude anything but *de minimis* damages in any event.

In *McKennon v. Nashville Banner Pub'g Co.,* 513 U.S. 352 (1995), the Supreme Court held that under federal sex discrimination statutes after-acquired evidence of employee misconduct warranting termination may not bar the employee from proving liability, but that it may render the employee ineligible for front pay and reinstatement, and limit backpay to the period between the unlawful termination and the date on which discovery was made. Since *McKennon* was decided, other courts have found that after-acquired evidence of misconduct, including the type of "resume fraud" engaged in by Mr. Plasse, may not only curtail damages, but may bar claims outright in cases that may be distinguished from *McKennon* by the absence of a statutory claim. *See e.g., Lewis v. Fisher Service Co.*, 495 S.E.2d 440, 444 (S.C. Sup. Ct. 1998) (the rationales underlying *McKennon* are inapplicable in employment contract cases and therefore after-acquired evidence of misconduct may be proffered as a complete bar to liability in an employee handbook breach of contract action); *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Col. Sup. Ct. 1997) (*en banc*) (after-acquired evidence of resume fraud may provide an employer with a complete defense to claims for breach of implied

11

contract and promissory estoppel); *McDill v. Environamics Corp.,* 144 N.H. 635, 640-641, 757 A.2d 162 (2000) (applying after-acquired evidence doctrine as bar to employee's recovery on contract and as limitation on damages in tort in New Hampshire).

Although Massachusetts courts have not explicitly addressed whether after-acquired evidence of employee misconduct may completely bar a non-statutory wrongful termination or promissory estoppel claim, rather than simply curtail damages as in *McKennon*, Tyco Electronics certainly has ample grounds based on Mr. Plasse's fraudulent employment application, among other defenses, to prevail on both liability and damages. *See Prozinski v. Northeast Real Estate Services, LLC*, 59 Mass.App.Ct. 599, 610-612, 797 N.E.2d 415, 424-426 (2003) (noting that "Massachusetts has not expressly adopted the 'after-acquired evidence doctrine,' although there exists some authority to suggest that it has been implicitly adopted."). *See also Flesner v. Technical Communications Corp.*, 410 Mass. 805, 815-817, 575 N.E.2d 1107 (1991) (discussing but declining to address after- acquired evidence argument because "[e]ven if the defendants are correct that they may show that their 'after the fact' discovery of legitimate reasons for discharging Flesner precludes recovery, resolution of this issue is not appropriate at the summary judgment stage."); *Guzman v. United Airlines, Inc.,* 1990 WL 105732 at 4 (D. Mass. 1990) (granting defendant employer's motion for summary judgment in part because plaintiff could not demonstrate essential element of discrimination claim, that he was qualified for employment and could perform satisfactorily, where defendant averred that plaintiff would have been terminated for falsehood in application.)

Clear and convincing evidence demonstrates that in response to Tyco Electronics' efforts to obtain evidence supporting this defense, Mr. Plasse engaged in extended false deposition testimony and falsified Deposition Exhibit 9. As the First Circuit Court of Appeals observed in affirming dismissal of an action for fraud on the court in the *Hull* case last year:

> We find no clear error in the district court's finding that [Plaintiff's] fraud was proved by clear and convincing evidence. It is easy enough to forget details of one's past; and possibly [Plaintiff] did suffer some impairment in the fall affecting his memory. **But the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless**.

356 F.3d at 101-2 (emphasis added).

## IV.     Conclusion

For the foregoing reasons, Tyco Electronics respectfully requests that the Court dismiss Mr. Plasse's Complaint as an appropriate sanction and as a deterrent to other litigants.

>Respectfully submitted,
>
>TYCO ELECTRONICS CORPORATION,
>
>By its attorneys:
>
>/s/ Jeffrey D. Clements
>
>_____
>Jeffrey D. Clements, BBO #632544
>Clements & Clements LLP
>50 Federal Street
>Boston, MA 02110
>(617) 451-1802

**CERTIFICATE OF SERVICE**

    I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on January 24, 2005.

                              /s/ Jeffrey D. Clements
                              _____