UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE<br><br>      **Plaintiff,**<br><br>vs.<br><br>TYCO ELECTRONICS CORPORATION,<br><br>      **Defendant.** | Civil Action No.  04-CV-30056-MAP |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION: (1) TO COMPEL
PLAINTIFF'S DEPOSITION; (2) TO COMPEL PLAINTIFF TO PRODUCE
COMPUTERS AND OTHER MEDIA STORAGE DEVICES FOR INSPECTION BY
DEFENDANT'S COMPUTER EXPERT; AND (3) TO COMPEL PLAINTIFF TO
PRODUCE ORIGINAL DOCUMENTS FOR INSPECTION AND ANALYSIS BY
<u>DEFENDANT'S INK DATING EXPERT</u>**

**I. <u>Introduction</u>**

Defendant Tyco Electronics Corporation ("TEC") moves pursuant to FED. R. CIV. P. 37(a), and in accordance with guidance given to the parties by the Honorable Michael Ponsor, U.S.D.J., to compel plaintiff James Plasse ("Plasse"): (1) to submit to deposition for the purpose of identifying computer(s) (and other media storage devices) used by him at certain relevant times; (2) to produce certain computer(s) (and media storage devices) in his possession for inspection by TEC's computer expert; and (3) to produce certain original documents in his possession for inspection by TEC's ink dating expert.

TEC recently moved to dismiss Plasse's Complaint as a sanction for giving false deposition testimony and for fabricating a document he produced in discovery. Judge Ponsor conducted a hearing on that motion on April 28, 2005. After a thorough analysis of the issues, Judge Ponsor denied TEC's motion without prejudice, and invited TEC to renew its motion following an inspection of Plasse's computer. *See Exhibit A*. The Court observed:

> I am very, very concerned about this. I don't think it's frivolous. The problem I have is that at this point I'm not sure that the evidence is convincing enough and I'm not sure, depending upon what the evidence really is, that dismissal would be a measured response to the situation.
>
> It's easy as pie to go into the computer and find out when this document was created [Plasse Deposition Exhibit 9]. I mean I just had a case that went on for a long, long time. Anybody who knows anything about a computer can open the computer up and see when the document was created.
>
> I'm inclined to deny the motion without prejudice, but I can say that if there's a motion to compel to require Mr. Plasse to produce his computer for an investigation, I would be inclined to allow it.
>
> It's just you can't do a thing on a computer that isn't as plain as day to somebody who really knows what they're doing later on, and so I mean that seems to me to be a possible next step here.
>
> If he created that document, he knows whether he did or not, then I'm really very concerned about this. I mean, I'm not sure the case is going to survive if it turns out that he doctored the document. I'm about to send somebody off to jail for a couple of years for doctoring a document in a situation that is not a whole lot different from this. He's got some real problems if he fabricated that document. It's very easy to find out whether he did. Just take a look in the computer and there it is. It's there or not. *See Exhibit A, p. 19-21.*

Judge Ponsor then held:

> I am going to deny the motion to dismiss without prejudice in its present form. I want to make a couple of things clear. I don't consider the motion to be frivolous. I think the motion is very well argued. I think the motion is very well presented. I think the opposition is very vigorously and cogently presented as well.
>
> The picture that emerges from the presentation is not sufficiently clear from my point of view to justify what I consider to be the very stringent sanction of dismissal, and so based upon what we have here I'm going to deny the motion to dismiss.
>
> I'm going to leave the issue of the inspection of the computer for another day rather than dealing with it on the fly except to make a couple of general comments. The defense can file a formal motion to compel. The defense can refer to the remarks that I am making now at this hearing in that motion if they wish to. The defense can make a written proposal with regard to that, and the plaintiff can oppose or respond with its own suggestion.

> The whole matter can be supervised by Magistrate Judge Neiman who handles these types of discovery issues very, very ably, and whatever approach can be worked out that is appropriate I'm sure can be worked out before him. *See Exhibit A, p. 23-24.*
>
> …
>
> I'm going to deny the motion without prejudice to an application to Magistrate Judge Neiman to obtain some kind of discovery of the computer if that is possible as a practical matter, and this ruling of course is without prejudice to re-filing of the motion to dismiss depending upon how that turns out. *See Exhibit A, p. 25-26.*

Since the April 28, 2005 hearing, TEC has attempted to arrange for inspection of Plasse's computers with his counsel, but has not been successful. Accordingly, TEC is forced to file this motion to compel production of Plasse's computers.

Also, TEC seeks to have Plasse deposed for the limited purpose of identifying the computer(s) he had access to and/or used during the relevant time periods. To date, Plasse has not been definitive about the identification of the computer(s) he used to create the documents at issue. Thus, in an effort to locate the appropriate computer(s) to inspect, TEC seeks to have Plasse identify them under oath.

Finally, TEC moves herein to compel Plasse to permit TEC to conduct an ink dating analysis of certain original documents in his possession. Plasse possesses the original document that TEC believes is a recent fabrication. One reason for the computer inspection request is to find evidence on Plasse's computer that this document was recently created. Because Plasse may claim that he no longer has the computer used to create the document, a computer inspection alone may not be adequate. Thus, as a reasonable additional method to establish that the document is a recent fabrication, TEC desires to have it examined by an ink dating expert.

## II. Background

  A. <u>Plasse's Allegations.</u>

  TEC hired Plasse in or about July 2000 as a Controller in its Printed Circuit Group in Stafford, Connecticut. TEC terminated Plasse's employment in February 2003. Plasse claims he was discharged in retaliation for raising internal concerns about accounting practices at TEC. *See Exhibit B.* TEC, on the other hand, maintains that Plasse was terminated following a pattern of inappropriate conduct, including disclosing confidential information to his subordinates without authorization. *See Exhibit C.*

  Plasse instituted this action in February 2004. In Count I of his Complaint, Plasse alleges that his termination was in retaliation for his complaints about TEC's accounting practices and in violation of public policy. Count II of Plasse's Complaint makes a similar claim based on promissory estoppel, alleging that he relied on a promise that he would not be terminated if he reported allegedly unethical or illegal conduct.

  B. <u>Documentary Evidence Confirms that Plasse Misrepresented His Educational Credentials When He Applied for Employment at TEC.</u>

  Plasse's personnel file at TEC contains two critical documents: (1) a cover letter and resume that Plasse submitted to TEC in July 2000 in connection with his application for employment, and (2) a hand-written application Plasse completed for TEC in July 2000. *See Exhibits D and E.* In both the resume and the hand-written application, Plasse represented that he held an MBA degree from Western New England College ("WNEC"). In preparation of its defense to this case, however, TEC discovered that Plasse does not have an MBA degree from any institution.

  In addition to the documents found in Plasse's personnel file, Plasse himself produced a more recent resume (apparently a resume Plasse used in his job search efforts after his

termination from TEC) that also contains the false claim that Plasse has an MBA degree. *See Exhibit F, p. 2.* There is no dispute that this resume was produced by Plasse and that this resume misrepresents that Plasse has an MBA degree. At the time Plasse produced this resume with his Initial Disclosures, Plasse did not know that TEC had discovered the truth about his educational credentials.

It is TEC's contention that Plasse intentionally misrepresented to TEC in connection with his hiring that he held an MBA degree, and that this misconduct: (1) at a minimum, is highly relevant to his credibility; (2) is sufficient to support an "after acquired evidence" defense to damages under the principles articulated in *McKennon v. Nashville Banner Pub'g Co.,* 513 U.S. 352 (1995), and (3) may be a complete bar to liability. *See, e.g., Lewis v. Fisher Service Co.*, 495 S.E.2d 440, 444 (S.C. Sup. Ct. 1998) (the rationales underlying *McKennon* are inapplicable in employment contract cases and, therefore, after-acquired evidence of misconduct may be proffered as a complete bar to liability in an employee handbook breach of contract action); *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Col. Sup. Ct. 1997) (*en banc*) (after-acquired evidence of resume fraud may provide an employer with a complete defense to claims for breach of implied contract and promissory estoppel); *McDill v. Environamics Corp.,* 144 N.H. 635, 640-41, 757 A.2d 162 (2000) (applying after-acquired evidence doctrine as bar to employee's recovery on contract and as limitation on damages in tort in New Hampshire).

### C. Plasse Lied at His First Day of Deposition in an Attempt to Cover the Prior Misrepresentation of His Educational Credentials.

Plasse was deposed on November 19 and 29, 2004. At his first day of deposition, Plasse admitted that he does not hold an MBA degree. *See Exhibit G, pp. 9-10, 14, 254.* However, Plasse denied that he ever represented to TEC that he did have an MBA degree. *See id., p. 9.*

When asked to explain why the resume he produced to TEC with his Initial Disclosures falsely states that he has an MBA, Plasse offered a hodgepodge of reasons. First he testified, "I don't know where this came from." *See id., p. 10.* Then he testified, "This was actually from a recruiter." *See id., p. 11.* Then he testified, "It must have come from me to give to my attorney." *See id.* Then he testified it "possibly" came from his computer. *See id.*

Plasse further testified that all resumes he ever prepared simply said he was a "candidate" for an MBA and insisted that he never told Tyco Electronics or any other employer otherwise. *See id., pp. 9-22, 254-255.* Again and again, Plasse testified that he had never submitted a resume to TEC, or any other employer, in which he falsely claimed to have an MBA, and that all of his resumes stated that he was a candidate for an MBA:

- "[A]ll the resumes I have say candidate."

- All of "the resumes I've submitted to any employer has candidate for MBA."

- "I may have put that [MBA] on one of the resumes in anticipation of getting or hitting that milestone at that point in time, but when I submit that, the ones after that I've submitted for employment all say candidate."

- "If it was going to an agency or employer, it would say candidate."

- "This [Deposition Exhibit 1] is something that was on my computer that was not sent to any employer. **My resume at Tyco says candidate for master's degree**."

*See id., pp. 11-14, 22 (emphasis added).*

It is TEC's contention that the foregoing deposition testimony is willfully false. Specifically, it is TEC's position that Plasse intentionally lied under oath: (1) when he denied submitting a resume to TEC that stated he had an MBA, and (2) when he denied preparing the resume produced with his Initial Disclosures that falsely represented that he had an MBA.

> **D.    Plasse Fabricated Documents Prior to, and Then Lied at, His Second Day of Deposition in an Attempt to Cover His Prior Misrepresentation of His Educational Credentials.**

Between the first (November 19, 2004) and second (November 29, 2004) days of his deposition, Plasse produced a document that he claimed was a true copy of the cover letter and resume he submitted to TEC in connection with his hiring in July 2000. *See Exhibit H; see also Exhibit G, pp. 257-259.* Unlike the resume in his TEC personnel file, and unlike the resume he previously produced – both of which falsely state that Plasse holds an MBA degree – this resume merely describes Plasse's MBA status as "Pursuing MBA/Candidate." *See Exhibit H.*

When questioned at his November 29, 2004 deposition about the sudden discovery of this resume and cover letter, Plasse initially claimed to have found it "in his briefcase" after the first day of his deposition. *See Exhibit G, pp. 257, 260, 270, 271.* Plasse's "briefcase" explanation was carefully considered, and repeated, numerous times:

> Q.    If I understood your testimony, you said it [Deposition Exhibit 9] came from a briefcase you had, is that right?
> A.    Correct.
> Q.    Is that a briefcase you use in your daily work?
> A.    It may have been an older briefcase or it may have been a portfolio it was in.
> Q.    Again, may haves aren't -- don't give me the information I'm asking about. Specifically, what briefcase did that document [Deposition Exhibit 9] come from?
> A.    It **would have been** one of my older briefcases in my office.
> Q.    Was it in fact? Is that your testimony?
> A.    Yes, it was. Yes, it was.

*See id., pp. 350-351 (emphasis added).*

The implausibility of the briefcase explanation became increasingly obvious as Plasse could not explain how the document came to rest in his briefcase for more than three years, even as he continued his current employment as a controller at another company. *See id., pp. 352-353.* Finally, Plasse simply changed stories, practically without skipping a beat:

> A.    Yeah, it was in another folder with some Tyco booklets I have.

- 7 -

> Q. Where was that folder?
> A. Where was that folder? It was in my desk -- in another folder separate from the e-mails I had.
> …
> Q. And where specifically, a desk drawer?
> A. Yes, a desk drawer.
> Q. So it wasn't in the briefcase?
> A. No.

*See id., pp. 354-355.*

Plasse was also questioned about the fact that the resume and cover letter he had just "discovered" did not match the resume and cover letter found in his TEC personnel file. Here, Plasse was evasive, inconsistent, and incredible. First, he suggested that it was a "possibility" that someone else had sent in the resume and cover letter found in his TEC personnel file. *See id., p. 336.* Then, he claimed that TEC "lost" the resume that he had faxed, so he mailed an additional resume. *See id., pp. 336-337.* When asked whether he had any knowledge or evidence that someone at TEC lost his first resume, he admitted that he did not. *See id., p. 340.*

Also, throughout the second day of his deposition, Plasse continued to insist that he never represented to TEC that he had received an MBA degree:

> Q. Did you send a resume to Tyco Electronics that stated that you had an MBA?
> A. No.
> Q. Are you sure about that?
> A. Yes, I am.

*See id., pp. 254-255.*

It is TEC's contention that Plasse fabricated the resume and cover letter (Plasse Deposition Exhibit 9) he claimed to have "discovered" after the first day of deposition in an effort to cover up the fact that he misrepresented to TEC, when he applied for employment, that he had an MBA degree. Plasse may have created these documents "from scratch" or he may

have created them by altering the original cover letter and resume that he submitted to TEC when he applied for employment in July 2000.

It is also TEC's contention that Plasse lied under oath at the second day of his deposition: (1) when he claimed to have just "discovered" the resume and cover letter in his briefcase (or anywhere else); (2) when he claimed that this was the resume and cover letter he submitted to TEC at his hiring; and (3) when he denied submitting the false resume to TEC that is found in his TEC personnel file.

### E.  Plasse Lied at His Deposition When He Claimed to be an MBA Candidate.

Following Plasse's deposition, TEC subpoenaed documents from WNEC that not only confirmed that Plasse was **not** a candidate for an MBA in 2000, when he applied to be a controller at TEC, but that he was **never** a candidate for an MBA. Plasse's only activity at WNEC involved attendance at three **non-degree** classes, **more than 10 years** before he applied for employment at TEC. *See Exhibit I.*

### F.  TEC's First Request to Inspect Plasse's Computers.

During the first day of Plasse's deposition, TEC requested that Plasse produce his computer for inspection. *See Exhibit G, pp. 12-13.* Following the second day of Plasse's deposition, TEC again requested an opportunity to inspect Plasse's computer to determine whether it contained evidence of the recent fabrication of Plasse Deposition Exhibit 9. Plasse declined to cooperate with the request, and demanded a "conventional discovery request." *See Exhibit J.*

On January 24, 2005, TEC served Plasse with a Request for Production of Plasse's computer(s) and media storage devices. *See Exhibit K.* Plasse failed to respond to TEC's discovery request despite several follow up inquiries to Plasse's counsel. Finally, at depositions

- 9 -

held on April 8, 2005, Plasse's counsel advised that he would not be producing Plasse's computer to TEC without a court order.

### G.     TEC's Motion to Dismiss Plasse's Complaint.

On January 24, 2005, TEC filed a Motion to Dismiss Plasse's Complaint as a sanction for Plasse's repeated and willfully false deposition testimony and his fabrication of the resume and cover letter he claimed to have just "discovered."  As detailed above, Judge Ponsor denied TEC's motion without prejudice, but held that TEC could renew the motion if it could obtain additional evidence of wrongdoing by Plasse.  Judge Ponsor suggested that TEC could pursue its request to inspect Plasse's computers and that he would be inclined to compel an inspection if Plasse continued to object.

### H.     TEC's Second Request to Inspect Plasse's Computers.

Immediately after the hearing on TEC's motion to dismiss, and in accordance with Judge Ponsor's suggestion, TEC's counsel sent a letter to Plasse's counsel requesting production of relevant computers and media storage devices and proposing a protocol for an inspection of same by a computer expert retained by TEC.  *See Exhibit L.*  TEC also requested that Plasse submit an Affidavit identifying the computers he used to create the various resumes and cover letters at issue, so that the computer inspection could go forward properly.  *See id., p. 3.*

TEC also requested that Plasse allow an ink dating expert retained by TEC to conduct an analysis of the original resume and cover letter that Plasse claimed to have "discovered" after the first day of deposition (Plasse Deposition Exhibit 9).  *See id., p. 5.*  At the hearing on the motion to dismiss, Plasse's counsel exhibited this original document.  The cover letter is signed in ink by Plasse, and thus may be amenable to ink dating analysis to determine if it was prepared in July 2000 (as Plasse claims) or some time in the Fall of 2004 (as TEC contends).

- 10 -

Plasse's counsel initially rejected TEC's proposal on various grounds, all of which TEC submits are specious. *See Exhibit M.* In order to avoid the Court's involvement, TEC's counsel sent another letter to Plasse's counsel explaining in detail the basis for each and every request (and also agreeing to bear the cost of the expert inspections, despite the fact that TEC maintains that Plasse should bear the cost of these inspections). *See Exhibit N.* Plasse's counsel did not respond to that letter, until June 2, 2005, the evening before the Court's June 3rd status conference. It now appears that Plasse consents to the ink dating analysis and computer inspection, but disagrees with TEC's proposed protocol.

### III.  Argument

A.  **Requesting Plasse to Produce His Computer for TEC's Expert to Inspect is Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

TEC moves to compel Plasse to produce certain computers and media storage devices and to permit TEC to conduct a narrowly crafted search for a small number of extremely critical documents. TEC has no interest in conducting the proverbial fishing expedition in Plasse's computers and has proposed a protocol that will protect Plasse's privacy interests and also protect TEC's right to obtain relevant discovery. As fully explained below, TEC's motion to compel should be granted.

1.  **Standards Regarding Electronic Discovery.**

It is now well settled that computerized and other electronically stored data is discoverable if relevant. *See Anti-Monopoly, Inc. v. Hasbro, Inc.,* 1995 WL 649934, *2 (S.D.N.Y. November 3, 1995). As this Court itself has observed, "[E]lectronically stored information [is] generally subject to document disclosure requirements under the Federal Rules of Civil Procedure." *Williams v. Massachusetts Mutual Life Insurance Company,* 226 F.R.D. 144, 146 (D. Mass. 2005) (Mag. Neiman) (citing *Rowe Entertainment, Inc. v. The William*

*Morris Agency, Inc.,* 205 F.R.D. 421, 428 (S.D.N.Y. 2002)). Data in computerized form is discoverable even if paper copies have already been produced because the electronic version of a document may contain valuable information that the hard copy does not provide. *See Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1280 (D.C. Cir. 1993), *rev'd on other grounds,* 90 F.3d 553 (D.C. Cir. 1996), *cert. denied,* 520 U.S. 1239 (1997).

Access to hard drives containing deleted information is especially appropriate where a party is attempting to discover evidence of intentional wrongdoing or bad faith. *See Rowe,* 205 F.R.D. at 428; *Simon Property Group L.P. v. mySimon, Inc.,* 194 F.R.D. 639, 642 (S.D. Ind. 2000). Courts have routinely held that information available on electronic storage media is also discoverable, whether readily available or "deleted" but recoverable. *See, e.g., Playboy Enterprises, Inc. v. Welles,* 60 F.Supp.2d 1050 (S.D. Cal. 1999).

Courts have recognized that, with regard to electronically stored data, "the only restriction in this discovery is that the producing party be protected against undue burden and expense and/or invasion of privileged matter." *Id.,* 60 F.Supp.2d at 1053. The question of whether the request would impose an undue burden is answered by weighing the benefit against the burden of the discovery. *See id.,* 60 F.Supp.2d at 1054 (citing FED. R. CIV. P. 26(b)(2)). In doing so, the court must consider "the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues. *Id.*

    **2.**    **TEC's Inspection of Plasse's Computers and Media Storage Devices is Relevant to the Claims and Defenses of this Matter.**

Based on these well-settled principles, TEC respectfully requests that its motion to compel Plasse to produce his computers and media storage devices be granted. First, it is

indisputable that each of TEC's computer inspection requests is reasonably calculated to lead to the discovery of admissible evidence. In sum:

**Requests 3 through 8** are intended to discover whether Plasse prepared a resume that he claims he did not prepare – specifically, the resume found in Plasse's TEC personnel file, which misrepresents that Plasse has an MBA.[1] Evidence that Plasse did prepare this resume is relevant for three primary reasons. First, Plasse denied at his deposition that he prepared this resume. Evidence that Plasse did prepare this resume is therefore relevant to TEC's motion for sanctions. Second, evidence that Plasse prepared this resume supports TEC's after acquired evidence argument; TEC maintains that it would have terminated Plasse for this flagrant misrepresentation of credentials had it been discovered during his employment. Third, evidence that Plasse has prepared a resume falsely claiming to have an MBA seriously affects his credibility, which is especially critical in this case, where Plasse's credibility is so contested.

**Request 1** is intended to discover whether Plasse prepared another resume he claims he did not prepare – specifically, the resume Plasse produced in his Initial Disclosures, which falsely states that he received an MBA in the Fall of 2001. *See Exhibit F*. Evidence that Plasse did prepare this resume is relevant for three primary reasons. First, Plasse denied at his deposition that he prepared this resume and, thus, evidence that Plasse did prepare this resume is relevant to TEC's motion for sanctions. Second, evidence that Plasse prepared this resume corroborates TEC's claim that Plasse also prepared and submitted the resume found in Plasse's personnel file, which contains the same misrepresentation, which in turn supports TEC's after acquired evidence defense. If TEC can establish that Plasse has another resume on his computer

---

[1] Because there are multiple copies of the same resume and cover letter in Plasse's TEC personnel file, TEC prepared a separate Request concerning each of them. All of the copies contain the same false MBA claim.

- 13 -

that falsely states he has an MBA – a resume that Plasse indisputably produced to TEC in his Initial Disclosures – a jury could reasonably find that he did submit to TEC the resume found in his TEC personnel file. Third, evidence that Plasse has prepared a resume falsely claiming to have an MBA seriously affects his credibility.

**Requests 2, 9 and 11** are intended to discover whether Plasse prepared the "newly discovered" cover letter and resume on the date Plasse claims he prepared it, or whether Plasse fabricated these documents after the fact. As detailed above, after his first day of deposition on November 19, 2004, Plasse produced a cover letter and resume that he claimed he submitted to TEC in July 2000 in connection with his hiring. *See Exhibit H*. Unlike the resume found in his TEC personnel file and the resume he produced with his Initial Disclosures (which both falsely state that Plasse has an MBA), this resume states merely that Plasse is an "MBA Candidate" (which is also false, as detailed above). TEC has significant reason to believe that Plasse fabricated this document well after July 2000, perhaps in November 2004, and that Plasse lied at his deposition about the date he created this document. Thus, TEC is entitled to inspect the computer on which this document was created, as well as all computers Plasse had access to in July 2000 and the October-December 2004 time frame, in order to determine when this document was really created. Evidence that Plasse fabricated this document is relevant for all the reasons set forth above: to support TEC's sanctions motion, to support TEC's after acquired evidence defense, and to impeach Plasse's credibility.

The Request to inspect all computers Plasse had access to in the October-December 2004 time frame (Request 11) is also intended to discover evidence that Plasse may have attempted to conceal the post hoc creation of Plasse Deposition Exhibit 9, for example, by using software designed to delete or "wipe" all or some portion of his computer's hard drive.

**Request 10** is intended to discover resumes Plasse may have prepared and submitted to other employers after his termination from TEC. As detailed above, TEC maintains that Plasse misrepresented to TEC that he had an MBA degree when he applied for employment, whereas Plasse denied he did so. Evidence that Plasse may have made this same misrepresentation to other employers after his termination from TEC will powerfully corroborate TEC's claim that he made this same misrepresentation to TEC. Accordingly, TEC is entitled to inspect all computers Plasse used in connection with his job search activities after TEC to locate resumes containing the same misrepresentation.

**Requests 12-22** simply correspond to Requests 1-11. Whereas Requests 1-11 demand production of computers used to create various documents, Requests 12-22 demand production of any removable storage devices on which those same documents may be stored, as Plasse may have removed the documents from his computers but saved them elsewhere.

### 3. TEC's Computer Inspection Would Not Unduly Burden Plasse.

TEC's requests are clearly calculated to lead to the discovery of admissible evidence. Moreover, as set forth in detail in the declaration of TEC's computer expert, a forensic analysis of Plasse's computers is highly likely to find such evidence, if it exists. *See Exhibit O, ¶¶ 11-16.* Additionally, the protocol proposed by TEC's expert involves no risk of loss of evidence to Plasse and no cost to Plasse. *See id., ¶ 6.*

Submitting his computers and media storage devices for inspection by TEC's computer expert will not be unduly burdensome to Plasse. In fact, Plasse will not suffer any expense or harm. TEC's computer expert will make a mirror-image of the hard drive and use that electronic image for its investigation without having to maintain possession of Plasse's actual hard drive during the examination. *See id., ¶¶ 4, 6.* Aside from the small amount of time it would take

TEC's computer expert to make a mirror-image copy of his hard drive and storage devices, Plasse will not be inconvenienced at all. *See id., ¶ 6.* There is also no concern that Plasse's privacy will be unduly invaded given the nature of the specific information that is the subject of the search. TEC's expert will take appropriate steps to ensure there is no unwarranted inspection. *See id., ¶¶ 4, 5, 7, 23.*

This Court, as well as other courts around the country, has compelled parties to produce computers and media storage devices for forensic inspection under analogous circumstances. In *Premier Homes and Land Corporation v. Cheswell, Inc.*, 240 F.Supp.2d 97, 98 (D. Mass. 2002)(Mag. Neiman), defendant alleged that plaintiff fabricated two documents that formed the core of plaintiff's claim. Based on its belief that the documents had been fabricated, **defendant moved and was permitted** to have its computer consultants "create mirror images of plaintiff's computer hard drives, back-up tapes and other data storage devices." *Id.*

Similarly in *Munshani v. Signal Lake Venture Fund II, LP,* 60 Mass. App. Ct. 714, 716 (Mass. App. Ct. 2004), defendants moved to compel the inspection of "all of [plaintiff's] computer hard drives and related back-up tapes" because they believed a fraudulent e-mail was used in plaintiff's prosecution of his case. Plaintiff maintained that he did not tamper with the authenticity of the e-mail and even went so far as to recommend that the Superior Court judge appoint a neutral expert to investigate, which the Court did. *See id.*

Likewise, in *Simon,* 194 F.R.D. at 641, the Court ordered that plaintiff was entitled to attempt to recover deleted computer files from various computers because it had shown "some troubling discrepancies with respect to defendant's document production." The situation at bar is analogous to the above referenced cases and, as such, should reach a similar fate – *i.e.*, inspection of Plasse's computer(s) and storage devices.

This Court's decision in *Williams,* 226 F.R.D. 144, is also instructive, because the facts there stand in stark contrast to the facts of the instant case. In *Williams*, plaintiff testified at deposition that he had seen and had had in his possession a copy of a specific email that "'spelled out' a policy or practice by MassMutual of using disciplinary actions as a pretext for terminating minority employees." *Id.* at 145. Though requested by defendant, plaintiff did not produce the document and later represented, through counsel and by affidavit, that he could not find the document. *See id.* Plaintiff then moved to have a computer expert appointed to inspect defendants' computer hard drives and/or electronics communication system in an attempt to recover the email he claimed to have seen. *See id.*

Although this Court denied plaintiff's request, it was quick to point out that the issue in *Williams* centered around "the production of one document ***whose very existence is in dispute***." *Id.* at 146. The Court declined to appoint a neutral expert "to help plaintiff confirm what is at best highly speculative conjecture that the … [alleged] e-mail message … is something other than the … memorandum [of the same date] which defendants have produced." *Id.* In the Court's view, "plaintiff … presented no credible evidence that defendants [we]re unwilling to produce computer-generated documents … or that defendants … withheld relevant information." *Id.* (citing *Antioch,* 210 F.R.D. at 653; *Playboy,* 60 F.Supp.2d at 1051). In expressing its reluctance to allow plaintiff to conduct the computer inspection, the Court explained that, "[b]efore permitting such an intrusion into an opposing party's information system--particularly where, as here, that party has undertaken its own search and forensic analysis and has sworn to its accuracy--the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate." *Id.* (citing *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 641, 646 (E.D. Mich. 1989)).

The case at bar is wholly distinguishable from *Williams* because here, TEC has presented significant evidence that Plasse's computers do, in fact, contain relevant evidence and there is no potential intrusion into Plasse's privacy given the protocol proposed by TEC. Clearly, the present situation is starkly different from that of *Williams* and warrants a different result.

### 4. A Court-Appointed Expert is Not Warranted.

Plasse's suggestion that the court appoint an "independent expert" to conduct the computer inspection, rather than permit TEC to hire its own expert, should be rejected. TEC is entitled to examine Plasse's computer(s) at its own expense using its own expert. *See Ty, Inc.,* 2000 WL 1015934 at *1 (N.D. Ill. June 1, 2000). Though there are situations where a court-appointed expert may be appropriate, such an approach is not warranted here. Clearly, the presumption in any case is that each party is responsible for retaining its own expert and that holds true with respect to computer experts. *See, e.g., Premier,* 240 F.Supp.2d at 98; *Rowe,* 205 F.R.D. 421.

Court-appointed experts have been used as part of a protocol designed to protect the affected party's privacy and attorney-client privilege. *See Playboy,* 60 F.Supp.2d at 1054; *Antioch,* 210 F.R.D. at 653-54; *Simon,* 194 F.R.D. at 641. In the case at bar, there is no need to have the court appoint an expert because TEC's expert's proposed protocol will adequately address Plasse's privacy and attorney-client privilege concerns. *See Exhibit L, pp. 3-5; see also Exhibit O, ¶¶ 4, 7-10, 23.* For example, the expert will be conducting specific word searches – such as "MBA" – to locate the relevant documents; there would be no fishing expedition that would uncover the types of documents that could raise concerns for Plasse.

Plasse is, of course, free to retain his own expert. However, there is simply no basis to require TEC to agree to a "joint expert" in this matter. TEC is entitled to retain its own expert, at its own cost, to conduct the inspection.

### B.     Plasse's Deposition Should be Compelled.

TEC seeks to depose Plasse on the sole issue of determining which computers and media storage devices he used during the relevant time periods. It is likely that Plasse used several different computers and media storage devices given the span of years involved. A short deposition is necessary to ensure that an inspection of all potentially relevant computers is conducted.

### C.     Requesting Plasse to Permit TEC's Expert to Conduct Ink Dating Analysis on the Recently Discovered Resume and Cover Letter is Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

TEC also moves to compel Plasse to produce the original resume and cover letter he claims he recently discovered and to permit TEC to have same analyzed by an ink dating expert. *See Exhibit H.* Plasse's counsel seems to now consent to this analysis, *see Exhibit P*, but in the event this is not the case, TEC requests that it be compelled.

### IV.     Conclusion

For the foregoing reasons, defendant Tyco Electronics Corporation respectfully requests that the Court compel plaintiff James Plasse: (1) to submit to deposition to identify computers accessible to and used by him during relevant time periods; (2) to produce certain computer(s) and other media storage devices in his possession for inspection by TEC's computer expert; and (3) to produce an original document in his possession for inspection by TEC's ink dating expert.

Respectfully submitted,

TYCO ELECTRONICS CORPORATION,

By its attorneys:

/s/ Jeffrey D. Clements

_____

| | |
|---|---|
| Jeffrey D. Clements, BBO #632544 | Mark Diana, *pro hac vice* |
| Clements & Clements LLP | Ogletree, Deakins, Nash, |
| 50 Federal Street | Smoak & Stewart, P.C. |
| Boston, MA 02110 | 10 Madison Avenue |
| (617) 451-1802 | Morristown, NJ 07960 |
| | (973) 656-1600 |

## **CERTIFICATE OF SERVICE**

I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on June 13, 2005.

/s/ Jeffrey D. Clements

_____

1337439-5