UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE<br><br>              Plaintiff,<br><br>vs.<br><br>TYCO ELECTRONICS<br>CORPORATION,<br><br>              Defendant. | Civil Action No. 04-CV-30056-MAP |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND FOR SANCTIONS**

**I.     INTRODUCTION**

Defendant Tyco Electronics Corporation ("TEC") renews its Motion to Dismiss the Complaint of Plaintiff James M. Plasse ("Plasse") as a sanction for Plasse's repeated and egregious discovery abuses and consequent fraud on the court. TEC also respectfully requests reimbursement for substantial attorneys' fees and expert costs that Plasse's on-going wrongful conduct has caused TEC to incur.

TEC's computer expert has recently completed an analysis of a laptop computer, eight floppy disks and 13 CD-ROMs produced by Plasse on July 26, 2005 pursuant to the Court's July 6, 2005 order that Plasse produce "all computers and media storage devices presently in his possession." *See Report of EvidentData and Expert CV, attached as Exhibit A.* This examination has revealed a startling and systematic attempt by Plasse to conceal and destroy highly relevant evidence during the course of this litigation, going beyond the inexcusable false testimony and document manipulation that were the basis of TEC's original motion. Specifically:

- TEC's expert has recovered a deleted resume on a floppy disk Plasse produced that is identical in content to the resume contained in Plasse's personnel file at TEC. This discovery confirms TEC's prior contention that Plasse submitted a resume to TEC, in connection with his hiring, in which he misrepresented his educational credentials by falsely claiming to have an MBA. Worse, this resume was apparently deleted from Plasse's floppy disk even while TEC's Motion to Compel Computer Production was pending, a patently outrageous act of discovery misfeasance.

- TEC's expert has determined that numerous other relevant files that are now deleted or otherwise made unavailable by Plasse – including resumes and cover letters – were repeatedly viewed on Plasse's laptop at various times during the discovery period in this case, including: late on the very night after Plasse's November 29, 2004 deposition; while TEC's Motion to Compel Computer Production was pending; and even after TEC's Motion to Compel was granted, but before the actual production occurred. Despite the highly relevant nature of these files, and despite the fact that they were recently viewed on Plasse's computer, none of the actual files were found on the laptop or floppy disks Plasse produced. Clearly, they were deleted from the laptop shortly prior to its production and/or stored on floppy disks that Plasse withheld from production in violation of the Court's Order.

- TEC's expert has confirmed that documents entitled "resume" and "cover letter" not only have been deleted or concealed since June 18, 2005, but also that Plasse engaged in manipulation of the computer's dating function, apparently in an attempt to electronically backdate relevant documents.

2

The egregiousness of this misconduct cannot be overstated. Combined with Plasse's other flagrant discovery abuses, including false deposition testimony and fabrication of documents, any remaining doubt about the appropriate sanction for Plasse's discovery misconduct and fraud on the court has been removed. As detailed fully within, Plasse's Complaint should be dismissed entirely and with prejudice. TEC also requests that the Court order reimbursement of TEC's attorneys' and expert fees incurred in connection with Plasse's fraud on the court and discovery misconduct.

## II.   BACKGROUND

### A.   Plasse's Allegations

TEC hired Plasse in or about July 2000 as a Controller in its Printed Circuit Group in Stafford, Connecticut. TEC terminated Plasse's employment in February 2003. Plasse claims he was discharged in retaliation for raising internal concerns about accounting practices at TEC. *See Exhibit B.* TEC, on the other hand, maintains that Plasse was terminated following a pattern of inappropriate conduct, including disclosing confidential information to his subordinates without authorization. *See Exhibit C.*

Plasse instituted this action in February 2004. In Count I of his Complaint, Plasse alleges that his termination was in retaliation for his complaints about TEC's accounting practices and in violation of public policy. Count II of Plasse's Complaint makes a similar claim based on promissory estoppel, alleging that he relied on a promise that he would not be terminated if he reported allegedly unethical or illegal conduct.

### B.   Plasse Misrepresented His Educational Credentials When Hired by TEC[1]

Plasse's personnel file at TEC contains three critical documents: a cover letter and resume that Plasse submitted to TEC in July 2000 in connection with his application for

---

[1] The discussion in Sections II.B-II.E of this Memorandum is a condensed version of the evidence presented to the Court in connection with TEC's original Motion to Dismiss.

3

employment, and a hand-written application Plasse completed for TEC in July 2000. *See Exhibits D and E.* In both the resume and the hand-written application, Plasse represented that he held an MBA degree from Western New England College (WNEC). In preparation of its defense to this case, however, TEC discovered that Plasse does not have an MBA degree from any institution.[2]

TEC contends that Plasse intentionally misrepresented to TEC in connection with his hiring that he held an MBA degree, and that this misconduct: (1) at a minimum, is highly relevant to his credibility; (2) is sufficient to support an "after-acquired evidence" defense to damages under the principles articulated in *McKennon v. Nashville Banner Pub'g Co.,* 513 U.S. 352 (1995); and (3) may be a complete bar to liability. *See, e.g., Lewis v. Fisher Service Co.*, 495 S.E.2d 440, 444 (S.C. Sup. Ct. 1998) (the rationales underlying *McKennon* are inapplicable in employment contract cases and, therefore, after-acquired evidence of misconduct may be proffered as a complete bar to liability in an employee handbook breach of contract action); *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Col. Sup. Ct. 1997) (*en banc*) (after-acquired evidence of resume fraud may provide an employer with a complete defense to claims for breach of implied contract and promissory estoppel); *McDill v. Environamics Corp.,* 144 N.H. 635, 640-41, 757 A.2d 162 (2000) (applying after-acquired evidence doctrine as bar to employee's recovery on contract and as limitation on damages in tort in New Hampshire).

---

[2] In addition to the documents found in Plasse's personnel file, Plasse himself produced a more recent resume (apparently used by Plasse in his job search efforts after his termination from TEC) that also contains the false claim that Plasse has an MBA degree. *See Exhibit L, p. 2.* There is no dispute that this resume was produced by Plasse and that this resume misrepresents that Plasse has an MBA degree. At the time Plasse produced this resume with his Initial Disclosures, Plasse did not know that TEC had discovered the truth about his educational credentials.

4

### C. Plasse Lied at His First Day of Deposition in an Attempt to Cover Up the Prior Misrepresentation of His Educational Credentials

Plasse was deposed on November 19 and 29, 2004. At his first day of deposition, Plasse admitted that he does not hold an MBA degree. *See Exhibit F, pp. 9-10, 14, 254.*[3] However, Plasse denied that he ever represented to TEC that he did have an MBA degree. *See id., p. 9.*

When asked to explain why the resume he produced to TEC with his Initial Disclosures falsely states that he has an MBA, Plasse offered a hodgepodge of reasons. First he testified, "I don't know where this came from." *See id., p. 10.* Then he testified, "This was actually from a recruiter." *See id., p. 11.* Then he testified, "It must have come from me to give to my attorney." *See id.* Then he testified it "possibly" came from his computer. *See id.*

Plasse further testified that all resumes he ever prepared simply said he was a "candidate" for an MBA and insisted that he never told TEC or any other employer otherwise. *See id., pp. 9-22, 254-255.* Again and again, Plasse testified that he had never submitted a resume to TEC, or any other employer, in which he falsely claimed to have an MBA, and that all of his resumes stated that he was a "candidate" for an MBA. *See id., pp. 11-14, 22.*

It is TEC's contention that the foregoing deposition testimony was willfully false. Specifically, it is TEC's position that Plasse intentionally lied under oath: (1) when he denied submitting a resume to TEC that stated he had an MBA; and (2) when he denied preparing the resume produced with his Initial Disclosures that falsely represented that he had an MBA.

### D. Plasse Fabricated Documents Prior to, and Then Lied at, His Second Day of Deposition in an Attempt to Cover Up His Prior Misrepresentation of His Educational Credentials

Between the first (November 19, 2004) and second (November 29, 2004) days of his deposition, Plasse produced a document that he claimed was a true copy of the cover letter and

---

[3] Only excerpts of the Plasse deposition transcripts are provided with this memorandum. The entire transcripts were provided as an exhibit to TEC's Motion to Compel.

5

resume he submitted to TEC in connection with his hiring in July 2000.  *See Exhibit G; see also Exhibit H, pp. 257-259.*  Unlike the resume in his TEC personnel file, and unlike the resume he previously produced – both of which falsely state that Plasse holds an MBA degree – this resume merely describes Plasse's MBA status as "Pursuing MBA/Candidate."  *See Exhibit G.*

When questioned at his November 29, 2004 deposition about the sudden discovery of this resume and cover letter, Plasse initially claimed to have found it "in his briefcase" after the first day of his deposition.  *See Exhibit H, pp. 257, 260, 270, 271, 350-354.*  Plasse then changed stories, practically without skipping a beat, claiming it was in his desk drawer.  *See id., pp. 354-355.*

Plasse was also questioned about the fact that the resume and cover letter he had just "discovered" did not match the resume and cover letter found in his TEC personnel file.[4]  Here, Plasse was evasive, inconsistent, and incredible.  First, he suggested that it was a "possibility" that someone else had sent in the resume and cover letter found in his TEC personnel file.  *See id., p. 336.*  Then, he claimed that TEC "lost" the resume that he had faxed, so he mailed an additional resume.  *See id., pp. 336-337.*  When asked whether he had any knowledge or evidence that someone at TEC lost his first resume, he admitted that he did not.  *See id., p. 340.*

It is TEC's contention that Plasse fabricated the resume and cover letter (Plasse Deposition Exhibit 9) he claimed to have "discovered" after the first day of deposition in an effort to cover up the fact that he misrepresented to TEC, when he applied for employment, that he had an MBA degree.  Plasse may have created these documents "from scratch" or he may

---

[4] Among many other telling discrepancies, both the resume in the TEC personnel file and the deleted resume that TEC's expert was able to recover from a disk produced by Plasse, contain the MBA claim and <u>present-tense</u> descriptions of Plasse's work at Tubed Products, Inc., where Plasse was employed when he applied for the TEC position in July 2000.  In contrast, Deposition Exhibit 9 (the resume that Plasse produced after the first day of his deposition) contains <u>past-tense</u> descriptions of Plasse's employment at Tubed Products, consistent with more recent resumes and with TEC's contention that Plasse modified a more recent resume to support his false testimony that he never claimed to have an MBA degree.  *Compare Exhibit G with Exhibits D and Exhibit 1 to EvidentData Report (Exhibit A).*

6

have created them by altering the original cover letter and resume that he submitted to TEC when he applied for employment in July 2000.

It is also TEC's contention that Plasse lied under oath at the second day of his deposition: (1) when he claimed to have just "discovered" the resume and cover letter in his briefcase (or anywhere else); (2) when he claimed that this was the resume and cover letter he submitted to TEC at his hiring; and (3) when he denied submitting the false resume to TEC that is found in his TEC personnel file.

### E. Plasse Lied at His Deposition When He Claimed to be an MBA Candidate

Following Plasse's deposition, TEC obtained documents from WNEC by subpoena that not only confirmed that Plasse was not a candidate for an MBA in 2000, when he applied to be a controller at TEC, but showed that he was never a candidate for an MBA. Plasse's only activity at WNEC involved attendance at three non-degree classes, more than 10 years before he applied for employment at TEC. *See Exhibit I.*

### F. TEC's Original Motion to Dismiss

Originally, it was TEC's belief that Plasse had "merely" lied at his deposition and fabricated documents in an effort to prevent TEC from proving that he misrepresented his credentials when hired by TEC. Based on such malfeasance, TEC moved on January 24, 2005, to dismiss Plasse's Complaint as a sanction for these gross discovery violations. The Court conducted a hearing on that motion on April 28, 2005. After a thorough analysis of the issues, the Court denied TEC's motion without prejudice, and invited TEC to renew its motion following an inspection of Plasse's computer. *See Exhibit J.* The Court observed:

> I am very, very concerned about this. I don't think it's frivolous. The problem I have is that at this point I'm not sure that the evidence is convincing enough and I'm not sure, depending upon what the evidence really is, that dismissal would be a measured response to the situation.

> It's easy as pie to go into the computer and find out when this document [Plasse Deposition Exhibit 9] was created. I mean I just had a case that went on for a long, long time. Anybody who knows anything about a computer can open the computer up and see when the document was created.
>
> I'm inclined to deny the motion without prejudice, but I can say that if there's a motion to compel to require Mr. Plasse to produce his computer for an investigation, I would be inclined to allow it.
>
> It's just you can't do a thing on a computer that isn't as plain as day to somebody who really knows what they're doing later on, and so I mean that seems to me to be a possible next step here.
>
> If he created that document, he knows whether he did or not, then I'm really very concerned about this. I mean, I'm not sure the case is going to survive if it turns out that he doctored the document. I'm about to send somebody off to jail for a couple of years for doctoring a document in a situation that is not a whole lot different from this. He's got some real problems if he fabricated that document. It's very easy to find out whether he did. Just take a look in the computer and there it is. It's there or not. *See Exhibit J, p. 19-21*.

The Court then held:

> The picture that emerges from the presentation is not sufficiently clear from my point of view to justify what I consider to be the very stringent sanction of dismissal, and so based upon what we have here I'm going to deny the motion to dismiss.
>
> I'm going to leave the issue of the inspection of the computer for another day rather than dealing with it on the fly except to make a couple of general comments. The defense can file a formal motion to compel. The defense can refer to the remarks that I am making now at this hearing in that motion if they wish to. The defense can make a written proposal with regard to that, and the plaintiff can oppose or respond with its own suggestion.
>
> The whole matter can be supervised by Magistrate Judge Neiman who handles these types of discovery issues very, very ably, and whatever approach can be worked out that is appropriate I'm sure can be worked out before him. *See Exhibit J, p. 23-24*.

### G.    TEC's Motion to Compel Production of Plasse's Computer

On June 13, 2005, after Plasse declined to voluntarily identify all of his computers, disks or other storage media under oath and declined TEC's proposed protocol for its expert inspection of the computer and disks at issue, TEC moved to compel Plasse: (1) to submit to

8

deposition for the purpose of identifying computers (and other media storage devices) used by him at certain relevant times; (2) to produce certain computers (and media storage devices) in his possession for inspection by TEC's computer expert; and (3) to produce certain original documents in his possession for inspection by TEC's ink dating expert. Over Plasse's objections, the Court granted TEC's motion. *See Exhibit K*.[5]

Plaintiff submitted to the Court-ordered deposition on July 22, 2005. On July 26, 2005, Plaintiff produced for inspection what he claimed were the only computers and media storage in his possession: one laptop computer, eight floppy disks and 13 CD-ROMs.[6]

TEC's computer expert, EvidentData, made an image of the computer and disks on July 26, 2005, and subsequently analyzed them for documents related to Plasse's application for employment with TEC, resumes, and contextual evidence regarding these documents, including evidence of alterations and deletions. *See Exhibit A, p.2*.

EvidentData issued its report on August 18, 2005. The results of EvidentData's analysis are startling in that it now appears beyond doubt that Plasse's manipulation of relevant evidence continued throughout the period of the Court's consideration of TEC's fraud on the court motion and related issues, even up to the eve of the computer inspection itself. *See Exhibit A (hereafter "Report")*. It is now clear beyond any question that Plasse has attempted to conceal and destroy highly relevant evidence of his false MBA claims and of his fraud on the court. Based on this newly acquired evidence, as well as the previously presented evidence of

---

[5] TEC also requested an opportunity for an ink-dating expert to assess whether the date of the ink on the signature contained on the original document produced by Plasse after his first day of deposition and marked as Deposition Exhibit 9 in his second day of deposition could be determined. Because the expert analysis was unable to determine the date of the ink one way or the other (i.e., the ink was consistent with ink commercially available both in 2000 and 2004), that analysis is not a subject of this renewed motion.

[6] Based on Plasse's testimony that he did not use his workplace computer for any personal matters, Plasse's counsel requested that Plasse's workplace computer not be subject to the examination. Because of the potential privacy and competitive information concerns of third parties such as Plasse's current employer, TEC agreed to refrain from including the workplace computer in the initial examination, reserving its right to return to the issue of necessary.

9

discovery misconduct by Plasse, TEC respectfully renews its Motion to Dismiss Plasse's Complaint.

### III.    ARGUMENT

**A.    TEC's Forensic Analysis Has Revealed Numerous and Egregious Attempts to Conceal and Destroy Relevant Evidence**

EvidentData's Report documents a disturbing tale of flagrant and egregious discovery abuse. The "highlights" are discussed below.

**1.    A Recently Deleted Resume Matching the Resume in Plasse's Personnel File Has Been Recovered**

TEC's expert has recovered a deleted resume on a floppy disk Plasse produced that is identical in content to the resume contained in Plasse's personnel file at TEC. The discovery of this resume confirms TEC's prior contention that Plasse misrepresented his educational credentials by falsely claiming to have an MBA at the time of his hiring by TEC. This resume was apparently deleted from the floppy disk while TEC's Motion to Compel Computer Production was pending. The only reasonable inference that can be drawn from these facts is that Plasse intentionally deleted this resume in an effort to cover up his original lie to TEC that he held an MBA.

The facts here are clear and irrefutable. EvidentData's inspection revealed the following critical information regarding the existence, origin and content of the recovered resume:

- A deleted file named "_ESUME.LWP" was located on Floppy Disk 007. *See Report §3.1.*
- EvidentData was able to recover this deleted file. *See Report §3.1.*
- The recovered file is a copy of Plasse's resume. *See Report §3.1 & Ex. 1 to Report.*
- The recovered resume misrepresents that Plasse has an MBA. Specifically, it states "MBA, Western New England College, Springfield, MA." *See Ex. 1 to Report.*
- Significantly, the recovered resume is identical in content to the resume found in Plasse's TEC personnel file, which also falsely states "MBA, Western New England College." *See Exhibit D.*

10

- Metadata from the recovered resume indicates that it was created in January 2000 using a computer owned by Tubed Products, which was Plasse's employer prior to his hiring by TEC. *See Ex. 2 to Report*.

EvidentData's inspection also revealed the following information regarding the timing of this file deletion:

- System information indicates that a file on Floppy Disk 007 named "_ESUME.LWP" was accessed and modified on June 28, 2005. *See Report §3.2*.
- In order for a file to be opened and modified, the file must be available on the floppy disk or computer in an undeleted state.
- Either on or after June 28, 2005, the file named "_ESUME.LWP" was deleted from Floppy Disk 007 so that it was in a deleted state when EvidentData obtained the disk on July 26, 2005.
- TEC filed its Motion to Compel Computer Production on June 13, 2005.
- The June 28, 2005 date of access and modification is the day after TEC filed its Reply Brief in Support of Motion to Compel Computer Inspection, in which TEC maintained that Plasse's expressed willingness to produce his more recently acquired computer alone was not sufficient because floppy disks and other storage media would likely contain relevant evidence.

A picture of intentional destruction of evidence plainly emerges from these facts. After consistently denying under oath that he submitted a resume to TEC with the false MBA claim and then resisting for months TEC's request to produce his computer and floppy disks, Plasse realized he would shortly be forced to turn over incriminating evidence. While TEC's Motion to Compel was pending, Plasse searched his floppy disks, found the fraudulent resume he originally submitted to TEC in July 2000, and deleted it. This was a calculated and egregious attempt to prevent TEC from mounting a defense to his lawsuit, and to cover up his lies at deposition.

### 2.     Other Relevant Files Were Recently Viewed But Not Produced

Numerous files that have "resume," "cover letter," and other relevant names were viewed on Plasse's laptop on multiple occasions after Plasse's November 29, 2004 deposition, and even while TEC's Motion to Compel Computer Production was pending, but the actual files were not found on (or recovered from) Plasse's laptop or the disks he produced. *See Report §4.3*. Again, the only reasonable inference is that Plasse undertook a systematic search and destroy mission of

11

relevant files designed to cover up his perjurious deposition testimony and prevent TEC from asserting its meritorious defenses.

EvidentData's report explains and reveals the following:

- A computer running a Windows operating system automatically generates "shortcut" files which act as pointers to recently used applications or recently viewed documents.
- "Windows shortcuts" store information that allows a forensic examiner to identify the name and source of files that were viewed on a computer. *See Report §4.3 and Ex. 6 to Report*.
- A number of documents that were stored on Plasse's laptop hard drive ("C drive" files) and on floppy disks ("A drive" files) were viewed in and after November 2004. *See Ex. 7 to Report*.
- These files have names relevant to the issues in this case, including resumes and cover letters. *See Ex. 7 to Report*.
- A file named "Tyco.doc," which was stored in a folder called "Resume" was viewed within hours after Plasse's deposition on November 29, 2004. *See Ex. 7 to Report*.
- Numerous other relevant documents were viewed after TEC filed its Motion to Compel Computer Production on June 13, 2005. *See Ex. 7 to Report*.
- Most Recently Used (MRU) lists further reveal that at least one of these files ("resume.lwp") was last viewed on June 28, 2005, which is the day after Tyco filed its Reply Brief in Support of Motion to Compel Computer Production. *See Report §4.4*.
- Although these files were viewed on Plasse's laptop on and after November 29, 2004, the actual files were not found on the laptop or any of the disks Plasse produced. While TEC's expert was able to recover a deleted copy of resume.lwp that matches the resume in the TEC personnel file (see point 1 above), other relevant files recently viewed on Plasse's computer appear to have been: (1) deleted and/or overwritten and/or (2) contained on floppy disks that Plasse has since destroyed or concealed, both in defiance of discovery rules and the Court's order allowing TEC's motion to compel production. *See Report §4.3*.

EvidentData's inspection further revealed the following:

- Examination of the "Windows Swap File" revealed that a document called "thankyoutyco.doc," which was stored on a floppy disk, was last viewed on Plasse's laptop on May 2, 2005. *See Report §4.5*.
- Although the actual document was not found on Plasse's laptop or floppy disks (even though it was viewed as recently as May 2, 2005), EvidentData was able to extract fragments of the document. *See Report §4.5 and Ex. 9 to Report*.

One file that was recently viewed but is now missing deserves particular mention. On June 18, 2005, just days after TEC filed its Motion to Compel Computer Production, Plasse

12

viewed "A:\ Cover Letter.doc," a document named "Cover Letter." *See Report §4.3 and Ex. 7 to Report*. He later (only days before his court-ordered production of the disks and computers) attempted to electronically backdate a "Cover Letter" document to July 24, 2000, the time period of his application to TEC. *See Report §4.2 and Ex. 7 to Report.*[7] Plasse ultimately decided to delete the "Cover Letter" documents altogether (or to conceal and to withhold the disk or disks on which he had been viewing and manipulating the documents), as no document entitled "Cover Letter" exists in an undeleted state on the computer and disks that he produced to EvidentData.

As noted above, Plasse's personnel file contains the cover letter and resume Plasse submitted in connection with his application for employment (said resume making the misrepresentation that Plasse holds an MBA). In light of the fact that Plasse's cover letter and resume are at the heart of the issue concerning Plasse's fraud on the court, it is troubling that Plasse viewed and decided to delete documents named "cover letter" and "resume," even as parties were filing motions and memoranda concerning the fraud on the court issues. Plasse's attempt to purge all traces of relevant cover letters and the resumes is an additional egregious fraud on the court.

In sum, after Plasse's November 29, 2004 deposition – at which time serious questions had been raised about misrepresentations he made to TEC when hired, but which he denied under oath – Plasse began a covert search of his laptop and computer disks for incriminating documents. Over the ensuing weeks and months, he viewed documents with names such as "coverletter" and "Thankyoutyco," which were clearly relevant to the issue of Plasse's communications with TEC about his employment application. Although these documents were viewed and thus existed just recently, none of these documents were produced or can now be

---

[7] The subject of Plasse's improper date manipulation on his laptop computer prior to its production is explained further below, at p. 13-14.

found on Plasse's laptop or disks. Clearly, they have been improperly destroyed and/or concealed.

### 3. Other Relevant Files Were Recently Deleted But Were Not Recoverable

EvidentData's inspection also proves that other relevant files that have resume names ("_ESUME2.LWP" and "_ESUME.DOC") were deleted from floppy disks Plasse produced (Floppy Disk 004 and Floppy Disk 007) sometime prior to their court-ordered production to TEC on July 26, 2005. *See Report §3.2*. EvidentData was unable to recover these files, so their content is unknown. Certainly, however, the fact that files with a clear connection to this case were deleted is further evidence of Plasse's egregious attempt to commit a fraud upon the court by interfering with TEC's legitimate discovery efforts.

### 4. The System Date on Plasse's Laptop was Manipulated Shortly Before the Court-Ordered Computer Production Occurred

EvidentData's inspection revealed yet another apparent attempt by Plasse to confound TEC's computer inspection. The system date on Plasse's laptop was repeatedly, manually changed on July 24, 2005. *See Report §4.2 and Ex. 5 to Report*. This manipulation occurred late at night just two days prior to the court-ordered production of the laptop to TEC on July 26, 2005.[8]

As seen in Exhibit 5 to the Report, the system date was initially turned back to July 24, 2000. This date is significant because it corresponds within days to the date of Plasse's employment application to TEC, and the date of his cover letter and resume in his TEC personnel file. As discussed above, several of the Windows shortcuts relating to the viewing of

---

[8] A user named "Sid Amasya" was logged on at the time the date manipulation occurred. Sid Amasya is the prior owner of the laptop, and from whom Plasse asserts that he purchased the laptop in March or April 2003. Plasse admitted at his deposition that "Sid Amasya" is still the user name created in his laptop and that he never changed it after he bought the laptop from Amasya.

14

documents named "Cover Letter" and "Resume" reflect the July 24, 2000 electronic backdating attempts. This tampering is further evidence of Plasse's apparent willingness to fabricate documents and evidence to support his false claim that the resume and cover letter that he found after his deposition-- but that are not found in his personnel file at TEC-- are authentic.

Other possible motivations for Plasse's system date manipulation are unclear, but certainly any alteration of the laptop whatsoever after the Court had ordered its production, and just days before the actual production occurred, is itself a sanctionable discovery violation and leads to an inference that Plasse attempted to and succeeded in altering relevant evidence.

> **B.	Plasse's Complaint Should Be Dismissed as a Sanction for His Egregious Discovery Misconduct and Fraud on the Court**

TEC's original Motion to Dismiss sets forth this Court's substantial authority and discretion to punish discovery abuses of the kind proven here. *See, e.g., Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004) (affirming dismissal of personal injury claim where the plaintiff failed to reveal prior material injuries despite questioning in depositions and interrogatories); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (Fraud on the court warranting dismissal occurs where party "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."); *Premier Homes and Land Corporation v. Cheswell*, 240 F.Supp.2d 97 (D. Mass. 2002) (Neiman, USMJ) (court dismissed a complaint and awarded fees and costs to the defendant after finding that the plaintiff filed a fabricated document to support its claim); *see also Rockdale Management Co., Inc. v. Shawmut Bank, N.A.,* 518 Mass. 596, 597, 638 N.E.2d 29, 31-32 (1994) (dismissal warranted where plaintiff forged letter on issue of damages, referenced it in his answers to interrogatories, and lied about its genuineness at his deposition); *Munshani v. Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. 714, 805 N.E.2d 998 (2004) (dismissal and attorneys' fees and costs warranted where plaintiff manufactured evidence and swore to its authenticity in order to avoid a statute of frauds defense).

Dismissal of Plasse's Complaint is the only appropriate sanction. TEC has established by clear and convincing evidence that Plasse lied at his deposition and then systematically set about to cover his tracks by concealing and destroying relevant evidence on his laptop and computer disks. This misconduct occurred before, during and after TEC's Motion to Compel Computer Production was pending. TEC has been "forced to spend many months to untangle a deceitful discovery response from an untruthful plaintiff." *Aastra Technologies v. Jones*, 2005 WL 300059 (D.N.H. 2005). This is exactly the sort of "pattern of deceit" described by the *Hull*

Court. Plasse has "defile[d] the judicial system." *Aoude,* 892 F.2d at 1118. Such behavior is the epitome of fraud on the court and calls for the most severe sanctions possible.

### IV.    CONCLUSION

For the foregoing reasons, TEC respectfully requests that the Court dismiss Plasse's Complaint as an appropriate sanction and as a deterrent to other litigants. TEC also requests that the Court order reimbursement of TEC's attorneys' and expert fees incurred in connection with Plasse's fraud on the court and discovery misconduct.

> Respectfully submitted,
>
> TYCO ELECTRONICS CORPORATION,
>
> By its attorneys:
>
> /s/ Jeffrey D. Clements
>
> _____
> Jeffrey D. Clements, BBO #632544
> Clements & Clements, LLP
> 50 Federal Street
> Boston, MA 02110
> (617) 451-1802
>
> Mark Diana, *pro hac vice*
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 10 Madison Avenue, Suite 402
> Morristown, NJ 07960
> (973) 656-1600

Dated:  September 6, 2006

## CERTIFICATE OF SERVICE

 I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on September 6, 2005.

         /s/ Jeffrey D. Clements
         _____