UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE )<br>      Plaintiff   )<br>)<br>vs.                          )<br>)<br>TYCO ELECTRONICS  )<br>CORPORATION,      )<br>      Defendant  )  | Civil Action No. 04-CV-30056-MAP |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## RENEWED MOTION TO DISMISS

Now comes the plaintiff and opposes the defendant's Renewed Motion To Dismiss. Defendant retained two experts to examine the plaintiff's computer records and the original document in question. The computer expert finds no evidence of the creation or editing of a document from November 28, 2004, to December 9, 2004, and no evidence is presented from the document expert at all. Furthermore, defendant, in an attempt to bolster its claims, misrepresents to the court the evidence in the expert's report.

### I.  The Defendant Misrepresents The Evidence To The Court

In its renewed motion to dismiss, the defendant asserts that their expert "has recovered a deleted resume on a floppy disk Plasse produced that is identical in content to the resume contained in Plasse's personnel file at TEC." (Def. Brief at p. 2). This assertion, that the resume from the personnel file (Def. Exh. D) and the "recovered" resume (Def. Exh. 1) "match" and are "identical" is repeated three more times at p. 10 and p. 12 of the brief. On this basis, Tyco

1

accuses Mr. Plasse of "intentionally deleting this resume in an effort to cover up his original lie to TEC that he held on MBA." (Def. Brief p. 10).[1]

These statements are patently false. The "recovered" resume that is attached as Def. Exh. 1 to the expert's report is *not* in fact identical at all to the resume Tyco claims was in their personnel file (Def. Exh. D). This misrepresentation is clear from an examination of the documents, and it does not appear to be an innocent or inadvertent misrepresentation.

Exhibit 1 of the expert's report and Exhibit D of Tyco's renewed motion (identified by Tyco as the resume from Tyco's personnel file) are not at all the same document and not identical in content even though the expert's report deceptively suggests that they are. Comparison of the two documents (Def. Exh. 1 and Def. Exh. D) shows there are well over 35 differences in form, text and tense. Defendant's Exh. 1 is 3 pages, Def. Exh. D is 2 pages. The very top and heading of each page are different. In one, the heading "Confidential Resume" is above the lines and in the other it is included in them. Exhibit 1 only has Mr. Plasse's address in the heading while Exhibit D has phone numbers as well. Exhibit 1 has a total of 75 lines of text, Exhibit D has 72 lines. In each of the sections under the references to different employers, there are multiple differences in the text. For instance, the first bullet under Tubed Products in Exhibit 1 has a reference to $100 million dollars not present in Exhibit D. The third, fourth, fifth and tenth bullets differ in language and the sixth and ninth bullets are completely different in text.

Under the Spaulding section, there are 9 bullets in Exhibit D and 11 bullets in Exhibit 1. In multiple bullets under Spaulding, Exhibit 1 uses present tense descriptions and Exhibit D uses

---

[1] Even a deletion of a resume that really was identical to Exhibit D would be meaningless. Mr. Plasse already knows the defendant has a copy of such a resume.

past tense descriptions. At least three of the bullets (first, second, and fourth) have different text, aside from the tense.

The second pages of the resumes begin differently, both in the content of the heading and the start of the text. Under the Ampad section, Exhibit D has 7 bullets and Exhibit 1 has 6 bullets. Again, under the Ampad sections, at least four bullets have different text and four have different tense.

Under the Sealed Air Corporation section, Exhibit 1 described the job as Plant Accounting Manager and Exhibit D describes it as Plant Controller/Accounting Manager. The second bullets in each of these documents are different. In the remaining bullets, there are differences in text and four differences in tense.

In total, there are a minimum of 35 differences in these two documents, which the defendant repeatedly represents to the court as "identical". Plaintiff points to these multiple differences because it demonstrates that this is not an innocent or inadvertent misrepresentation. Exhibit 1 and Exhibit D share a superficial similarity, but if one examines them, the differences are evident. The defendant did examine them. In footnote 4 of their brief, the defendant asserts that there are "telling discrepancies" between Exhibit D and Exhibit 1 on the one hand and Deposition Exhibit 9 (which Tyco claims is the forged resume) in that Exhibit 1 and Exhibit D are present tense and Deposition Exh. 9 is past tense, supposedly, showing that Mr. Plasse must have slipped up and used past tense because he did this in 2004. Footnote 4 demonstrates two important points: first, it shows that Tyco's misrepresentations about Exhibit 1 and Exhibit D are not inadvertent. One can readily see the differences in Exhibits 1 and D by examining them. In footnote 4 the defendant states that they have examined them - in detail - right down to tense

3

comparisons. How then could they not be aware of the dozens of differences in Exhibit D and 1 when they claim to have combed through them to find alleged differences with Deposition Exhibit 9?

Secondly, footnote 4 is itself a misrepresentation. Deposition Exhibit 9 (Def. Exh. G) has both past and present tense (see section under Tubed Products) and as noted above, Exhibit D and Exhibit 1 have multiple differences between past and present tense. Obviously, Mr. Plasse has numerous variations of his resume, and this includes differences in tense that have no apparent logic to them. Yet Tyco misrepresents the evidence to the court once again - building another misrepresentation on top of their original one.

One other point shows that the defendant paid careful attention to detail, but misrepresented the facts anyway. In his report, the expert leads one to think that Exhibit 1 and Exhibit D are the same, but cleverly words the report to only say that the "Education" sections of the two documents are the same. There is no real reason to point out that a few lines of each document are the same unless one is trying to persuade someone (here, the court) that the two documents are the same, all the while knowing that they are not. The expert does not literally lie, he merely tells a tiny, deceptive portion of the truth. This certainly puts into question the fairness and accuracy of the entire report and procedures utilized, most of which concern technical matters that cannot be verified on the fact of the report (See Pl Exh. 1).

There are other reasons to question the behavior of the defendant in this matter. When defendant originally filed this motion, they presented an affidavit from Mary Ann Ayala. Ms. Ayala swore under oath that she had made a true and complete copy of Mr. Plasse's personnel file (Pl. Exh. 2). After plaintiff pointed out in his opposition to the Motion To Dismiss, that the

resume in the copy she swore to did not, in fact, match the resumes in the copy of the personnel file Tyco presented at Mr. Plasse's deposition, she then filed a second affidavit explaining that the first affidavit was not correct (Pl. Exh. 3). She essentially admits in her deposition that she "misunderstood" the time and must have removed or not copied all the resumes (Pl. Exh. 4, pp. 70-83).

In further reviewing the documents in light of the defendant's misrepresentations, plaintiff notices something very peculiar about Def. Exh. D. This document has been presented each time in this case as a two page resume stapled to a cover letter. But the staple marks on the cover letter do not align with the crease on the resume - they cut across the crease. The resume now attached to Def. Exh. D could not have been the one originally stapled to it. Furthermore, when plaintiff originally requested and received his personnel file and gave it to counsel, it did not contain a resume at all, but it did have the cover letter (Pl. Exh. 5). The staple on *that* cover letter copy is in still another location, and it too would not align with the creases on the resume in Def. Exh. D. It is obvious that at one or more times different documents have been stapled to the cover letter of Def. Exh. D, and they were not the same copy that is now presented as the attachment. One explanation for these events is that Mr. Plasse's accurate, faxed resume (Deposition Exh. 9) was left out of the copying.

Defendant also makes a curious admission at p. 4, n. 2 of their brief. Defendant claims it knew Mr. Plasse did not have an MBA prior to his deposition and prior to receiving his resume in plaintiff's automatic disclosure. If so, how could the defendant know this if they only had Def. Exh. D in their file . Mr. Plasse produced evidence he had faxed Tyco a resume that only said candidate on July 26, 2000. If Tyco still had that resume, they would have believed Mr. Plasse

did not have an MBA. Defendant should explain the source of their prior knowledge.

II.   **The Expert's Report Shows That No Relevant Document Was Either Created Or Edited At The Time Of The Plaintiff's Deposition**

The whole reason this motion to dismiss was brought was the defendant's claim that the plaintiff had forged Deposition Exhibit 9 (Def. Exh. G) sometime between the two days of his deposition. The expert's report shows that he did not. Defendant makes much of the plaintiff viewing his computer on November 29, 2004, shortly after the first day of his deposition. Of course, given that he had been confronted at the deposition on November 28, 2004, with an accusation that he had lied to Tyco, and he believed he had given them an accurate resume, it would be perfectly normal for him to search his computer for resumes. There is nothing "covert" about this - it was his computer and there is nothing "covert" or insidious about his opening it and viewing information.

The information in the Evident report shows that Mr. Plasse viewed information on November 29, 2004, but that he did not create or edit any resume or cover letter on that date or until the time of his second day of deposition (Pl. Exh. 1). Plaintiff's expert reviewed the report and confirms that this is the meaning of the information found: there is no evidence such a document was created or edited from November 28 to December 9, 2004. The report, in fact, exonerates Mr. Plasse.

Defendant can only point to and create a lot of smoke over the deletion of manifestly irrelevant documents. The resume discussed by the defendant on p. 11 of their brief - that was accessed, modified and presumably deleted on June 28, 2005, is Exhibit 1 of the report - a

resume, which as noted above, was not in the personnel file and which has never before appeared in this case and has no relevance to or relation to this case.

Defendant raises other collateral, irrelevant points. The "thank you Tyco" letter is a letter written in *August* to Thomas Humbert, the man who interviewed Mr. Plasse. The letter reveals nothing relevant. At the point this letter was written, Mr. Plasse had already been interviewed, had already provided resumes, and was merely thanking the person who interviewed him. The document has no relevance to the issues in this motion or this case.

Defendant also fails to point out that they have independent evidence that Mr. Plasse had a resume in circulation which said only that he was a "candidate" for an MBA well before November, 2004. Defendant subpoenaed Professional Search, Inc., who Mr. Plasse had dealt with. He produced (Pl. Exh. 6) an application and resume from Mr. Plasse from early 2003, which uses the "candidate" language with respect to his education.

Defendant also has previously claimed that Mr. Plasse was lying if he claimed to be a candidate for an MBA. Defendant here again distorts the evidence it presents to the court. Defendant claims that Mr. Plasse had only 3 post graduate course (Def. Motion To Dismiss Brief p. 8). They neglect to tell the court that in addition to subpoenaing Mr. Plasse's records from Western New England College, they also subpoenaed his records from Westfield State College (Pl. Exh. 7). Mr. Plasse had an additional 12 credits there, which he understood he could utilize. He also possessed 3 additional credits from AIC (Pl. Exh. 8). Mr. Plasse testified that he explained this whole situation to Tyco's Thomas Humbert who interviewed him. Tyco has never produced Mr. Humbert to rebut this testimony (Pl. Exh. 9, p. 255).

Defendant's contention that Mr. Plasse tried to back date documents is without merit. The expert's report does not state that any document was "back dated", indeed it shows, as noted above, that whatever was viewed in November, 2004, was not edited or created then. July 24, 2000, is not the date of any relevant document in this case. If Mr. Plasse was trying to back date a document, why would he change the computer time to 2003 or to his birthday (7/24) in 2000 and 2003? These dates have no meaning in this case.

### III. Defendant's Document Expert Found No Evidence That The Plaintiff's July 26, 2000, Resume And Cover Letter Were Created In 2004.

Defendants in this matter retained two experts. The second was a document expert whose identity and report, if any, is not disclosed. Defendant only notes in footnote 5 that their expert could not determine the date of the ink, i.e., that there was no evidence that what Mr. Plasse represented as a document from July 26, 2000, was not in fact from July 26, 2000. Since the defendant presents no report and does even disclose the identity of the expert, there is no way of knowing whether or not the expert had any more detailed finding or whether those findings might present more evidence in favor of the plaintiff. No mention is made of the fact that on the original documents that were faxed, the fax machine imprinted a red proof mark to show that they were, in fact, faxed. No evidence has been presented to dispute this. Defendant also fails to comment on the last page of that fax (Deposition Exhibit 9, Def. Exh. G) which contains a job listing from Monster.com in 2000. The document has, imprinted at the bottom, the date and time (August 17, 2000, 7:16 p.m.) that the document was printed out. How could Mr. Plasse have printed out in 2004, a Monster.com job listing from the year 2000? Such a job listing would not

8

be maintained for that period of time. The fact that no document was edited or created in November or December of 2004, the fact that the expert cannot challenge the age of Deposition Exhibit 9 as being July 26, 2000, the fact that Mr. Plasse undisputedly had in existence, at least as of early 2003, a resume which claims he was only a candidate for an MBA, and the Monster.com job listing are all affirmative evidence that Mr. Plasse did not forge any documents in November or December of 2004.

### IV.    There Are No Grounds For Dismissal. The Motion Should Be Denied.

Defendant has struck out with both its experts in attempting to show that Mr. Plasse forged a document in November or December of 2004. Despite the enormous amount of investigative leeway they have been given by the court, they have resorted to openly attempting to deceive the court about the evidence. Furthermore, defendants do not fairly present all of Mr. Plasse's testimony regarding his resumes. When questioned about his resume at the start of his deposition, before he could have known that there would be any dispute, Mr. Plasse said he did not have an MBA degree (Pl. Exh. 9, pp. 11-13). Mr. Plasse, while stating that he did not believe that he had sent Tyco a resume showing that he had an MBA, did state that he may have sent more than one resume, but defendant's may have lost one of his resumes and asked for another or that a recruiter could have sent a resume that contained the false information (Plaintiff's Deposition p. 333-339). One can conclude from plaintiff's deposition testimony that he could well have sent such a resume to Tyco saying that he had an MBA. But Mr. Plasse sent Leslie Locke of the defendant a truthful resume on July 26, 2000 (Def. Exh. G). He explained to Thomas Humbert, the man who interviewed him, exactly what his educational status was (Pl.

9

Exh. 8, 9, p. 255). Defendant produces no evidence from either Leslie Locke or Thomas Humbert that they were ever deceived by Mr. Plasse. The job in question undisputedly did not require an MBA.

The cases cited by the defendant stand in marked contrast to this one. In *Aoude* v. *Mobil Oil Corp.*, 892 F2d. 1115 (1st Cir. 1989) the court held that dismissal was an "extreme" remedy and not to be "lightly engaged":

> "where it can be demonstrated clearly and convincingly that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

*Aoude*, at 1118

In *Aoude* the court found clear and convincing evidence because the party *admitted* fabricating a bogus purchase agreement, which went to the heart of the case. *Aoude* at 1116-1117. In *Premium Homes and Land Corporation* v. *Cheswell, Inc.*, 240 F. Supp. 2d 97 (D. Mass. 2002), the plaintiff *admitted* fabricating an e-mail that was a document that "formed the core of Premier's claim". *Premier* at 98-99. In *Rockdale Management Co.* v. *Shawmut Bank*, 418 Mass. 596, 638 N.E. 2d, 29 (1994), the plaintiff *admitted* forging a letter to prove damages. *Rockdale* at 598-599. And in *Munshani* v. *Signal Lake Venture Fund, II, LP*, 60 Mass. App. Ct. 714 (2004) an e-mail was presented to remove a claim from the Statute of Frauds. *Munshani* at 716. After a claim of forgery, the court appointed an expert to investigate while the plaintiff maintained authenticity. When the expert concluded there was a forgery, the plaintiff took the Fifth Amendment in response. *Munshani* at 716-717. All of these cases involve both material,

core issues and admitted fraud. In this case the defendant's experts have found no forgery.

Defendant asserts that if there had been a misrepresentation, it would entitle the defendant to dismissal. Even while asserting this proposition, the defendant admits that Massachusetts courts have refused to hold that after acquired evidence could be used to dismiss a wrongful termination case. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 815-817 (1991)[2]; *Prozinski v. Northeast Real Estate Services, LLC*, 59 Mass. App. Ct. 599, 610-612 (2003).

Even if the defendant could show it had "after acquired evidence" of resume fraud, there is no reason to believe it would be grounds to dismiss the case and bar liability based on cases outside Massachusetts. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) stands firmly for the proposition that after acquired evidence only affects the remedy and does not bar liability. *McKennon* at 358. Beyond this, defendant can only cite cases where a few states have held that after acquired evidence could bar liability in breach of contract claims, not claims for discharge in violation of public policy. *Lewis v. Fisher Service Co.*, 495 S.E. 2d 440, 444 (S.C. Sup. Ct. 1998); *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P. 2d 540 (Cal. Sup. Ct. 1997). For instance, in citing *McDill v. Enviroamics Corp.*, 757 A.2d 162 (N.H. 2000) defendant neglects to note that the court held that after acquired evidence could *not* be used to bar liability for a tort action for wrongful termination such as the present case. *McDill* at 166 and See *O'Day v. McDonnell Douglas Helicopter Co.*, 191 Ariz 535, 959 P. 2d 792, 797

---

[2] Notably, the court in *Flesner* chides the defendants for raising the issue in a summary judgment context when the underlying facts were clearly disputed and there was "at the very least" a dispute as to whether it would have caused Flesner's discharge. *Flesner* at 815-816. Here all the underlying facts are disputed and defendants present no evidence at all that they would have terminated Mr. Plasse, or that any Tyco employee had ever been terminated for this reason.

11

(1998) (employee still entitled to a remedy as a result of employer's tortious conduct). Even in *Lewis* v. *Fisher Service Co.*, 495 S.E. 2d 440 (S.C. Sup. Ct. 1988) the court held that there could be a bar to liability in a breach of contract case only where there was clear and convincing evidence that the employee engaged in activity "of such severity" they would have been terminated on those grounds alone. *Lewis* at 445.

For these reasons, the Motion should be denied.

THE PLAINTIFF, JAMES PLASSE
BY HIS ATTORNEY

Dated: September 26, 2005

*/s/ Maurice M. Cahillane*
Maurice M. Cahillane, Esq., BBO# 069660
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 26th day of September, 2005, on all parties, by First Class Mail, postage prepaid, to:

Jeffrey D. Clements
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110

*/s/ Maurice M. Cahillane*
Maurice M. Cahillane

11094-030300\98700.wpd