UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE,<br><br>        Plaintiff,<br><br>vs.<br><br>TYCO ELECTRONICS CORPORATION,<br><br>        Defendant. | Civil Action No. 04-CV-30056-MAP |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FOR SANCTIONS**

### I.  INTRODUCTION

Embracing the adage "the best defense is a good offense" to distract from the now undeniable evidence of false and misleading testimony, discovery abuse, and document manipulation and destruction, Plasse has responded to TEC's Renewed Motion to Dismiss largely by accusing TEC (and its counsel) of "openly attempting to deceive the court about the evidence." This baseless and desperate claim is unfair and untrue. Indeed, Plasse's resort to this diversionary tactic, combined with his feckless response to the findings of TEC's forensic computer expert and his cryptic Affidavit, confirms that Plasse truly has no credible answer to the overwhelming evidence that he deliberately concealed and destroyed evidence, as recently as days before the Court ordered production and inspection of his computer and floppy disks, in an effort to cover up his previous discovery misconduct.

The evidence of Plasse's fraud on the court is now overwhelming. TEC has attached as Exhibit 1 to this Reply Memorandum a chart summarizing the clear and convincing evidence, with citation to the record, showing that Plasse (1) testified falsely in his deposition; (2)

fabricated a resume to support his false testimony;  (3)  testified falsely that neither his computer nor disks contained "anything that was Tyco-related;"  (4)  knew that TEC sought, and the Court approved, inspection of the computer and disks for documents relating to resumes, cover letters to TEC, and other communications with TEC;  and (5)  nevertheless chose to delete (and in some cases conceal by non-production) disks, files and documents.

In short, rather than take responsibility for a false claim about his education and simply proceed on the merits of the case (including TEC's defense based on after-acquired evidence of resume fraud, among other strong defenses), Plasse instead chose to follow a pattern of fraud on the court intended to prevent TEC from presenting such a defense.  TEC respectfully suggests that enough is enough, and that the clear and convincing evidence of Plasse's fraud on the Court and abuse of discovery rules warrants the sanction of dismissal and reimbursement of TEC's costs and fees.

## II.   ARGUMENT

### A.   TEC's Forensic Analysis Has Revealed Numerous and Egregious Attempts to Conceal and Destroy Relevant Evidence;  Plasse Has Utterly Failed to Rebut this Evidence or Explain His Outrageous Behavior

#### 1.   Plasse Now Admits That He Recently Deleted The Resume That Was Recovered by TEC's Expert as Well as Other Documents and Files Following His November 2004 Deposition

TEC's forensic computer expert found that from November 2004 (the time of Plasse's deposition) through at least June 28, 2005 (while TEC's Motion to Compel Computer Production was pending), Plasse viewed many relevant files on his computer and floppy disks that have since been deleted or concealed. (EvidentData Report, §§3.1, 3.2, 4.3, 4.4, and 4.5).  The names of the files strongly suggest that the deleted/missing documents included the cover letter and resume Plasse sent to TEC in July 2000.  For example, Windows Shortcuts reveal that Plasse

recently viewed files named "Tyco.doc" and "Cover letter-jp.doc," which were saved in a folder called "Resume," as well as documents called "_ESUME.LWP," "_ESUME2.LWP," "_ESUME.DOC," and "thankyoutyco.doc." (EvidentData Report, §§4.3, 3.2).

EvidentData was able to recover only one of the deleted resumes, "_ESUME.LWP," which is attached as Exhibit 1 to the EvidentData Report. (EvidentData Report, §3.1). A file with the same name was deleted on or after June 28, 2005, when the document was last accessed. (EvidentData Report, §3.2). The deleted (but recovered) resume described Plasse as having an MBA degree. (EvidentData Report, Ex. 1). The deleted (but recovered) resume was created on January 26, 2000, on a computer owned by Tubed Products, Inc., Plasse's employer immediately before TEC. (EvidentData Report, Ex. 2). EvidentData correctly concluded that "[t]he 'Education' section of the recovered resume from Mr. Plasse's floppy disk, including the MBA reference, matched the equivalent section from the resume EvidentData was advised came from Tyco's personnel file."

In his Opposition Memorandum, Plasse does not claim that TEC's export report is flawed in any way or that the expert's findings are inaccurate. Rather, he weakly asserts that the report "concerns technical matters that cannot be verified on the fact [sic] of the report." *See Plasse Brief at 4*. After this half-hearted response to EvidentData's report, Plasse grudgingly admits that:

> During the pendency of this litigation I continued to make use of my computer as I always have. Over time I have made several varying versions of a resume, sometimes changing it or sometimes deleting older ones. **Exhibit 1 [the recovered resume] and Exhibit 3 of the Evident Data report are such resumes that I may have deleted.** I did not believe they had anything to do with this case.

*Plasse Aff.* ¶5 (emphasis added). While Plasse's Affidavit obscures when he deleted these resume files, he concedes in his Opposition Memorandum that the recovered resume was "presumably deleted on June 28, 2005." *See Plasse Brief at 6.*

### 2. Plasse Offers No Credible Explanation Why He Destroyed and Concealed Relevant Resumes While TEC's Motion to Compel Was Pending

While Plasse's partial and belated admission is a notable deviation from his prior denials of wrongdoing, the rest of his Affidavit follows his familiar pattern of prevarication and back-pedaling. Plasse's suggestion that he happened to delete a copy of a resume he created in 2000, after accessing it as recently as June 28, 2005, simply because he "continued to make use of [his] computer as [he] always ha[d]," is obviously false and misleading. Plasse's new position also is at odds with his previous sworn deposition testimony that he had reviewed his computer and disks and "didn't find anything that was Tyco-related on those disks."  (Plasse Dep. at 241-43).

Plasse has long been aware that resume-related documents are relevant to this matter. Plasse was on notice that TEC had requested an inspection of his computer and disks as early as his first day of deposition in November 2004, when TEC's counsel asked Plasse to secure the information stored on Plasse's computer and disks.  (Plasse Dep. at 13). TEC made repeated efforts in the ensuing months to obtain Plasse's computer for inspection, but was stonewalled at every turn. Asking the Court to believe that -- after Plasse's deposition, after TEC's original Motion to Dismiss had been decided, and while TEC's Motion to Compel Computer Production was pending -- Plasse did not recognize that a resume he created in 2000 before he was hired by TEC, which falsely states that he held an MBA degree, just like the resume found in his TEC personnel file, "had anything to do with this case" asks far too much. Plasse's explanation is

4

absurd and incredible,. Obviously, the resume Plasse deleted is extraordinarily relevant; it refutes Plasse's claim that he never submitted a resume to TEC claiming to have an MBA.

Plasse further states in his brief that even if he did delete a resume that matched the resume found in his TEC personnel file, that destruction "would be meaningless." *See Plasse Brief at 2 n.1.* This sort of cavalier view of the issues and evidence in the case is quite startling and disconcerting. Plasse has steadfastly denied that he ever represented to TEC that he had an MBA degree, and Plasse knows that TEC maintains that he did exactly that. Deleting such a resume would be an obvious effort to interfere with TEC's defenses in this case. To now state to this Court that it would be meaningless for him to delete a resume from his computer – a resume that he created prior to his application for employment at TEC, which falsely states that he held an MBA degree, just like the resume found in his TEC personnel file – raises far-reaching concerns about every action taken and representation Plasse has made in this matter to date.

Plasse's grudging admission that he recently deleted files is quite the opposite of a burst of candor. Plasse ignores the fact that the documents he deleted included a resume stating that he had an MBA degree (a representation that Plasse has denied making to TEC or any other employer). He ignores the fact that the resume he deleted, but that EvidentData recovered, had been created in January 2000 while Plasse was at Tubed Products, his employer prior to his employment with TEC. Plasse does not explain how he had retained this file intact for more than five years before his deletion activity began following his depositions in this case. Finally, Plasse's "admission" is silent about the undisputed facts from the EvidentData report showing that the deletion activity occurred as recently as June 28, 2005, when it became apparent that Plasse's computer disks would be inspected.

5

>   3.  **Plasse Offers No Credible Explanation Why He Destroyed and Concealed Other Relevant Documents Following His November 2004 Deposition**

In response to the clear and convincing evidence of widespread document destruction and/or concealment uncovered by EvidentData, Plasse simply makes a blanket assertion that any documents not produced and/or deleted were "manifestly irrelevant." *See Plasse Brief at 6.* Only where EvidentData was able to recover a deleted document in significant fragment or in whole (thus making it available to the Court and to TEC) does Plasse attempt to address any specific document. For example, Plasse claims that the "thankyoutyco.doc" that he viewed as recently as May 2, 2005 and then deleted (but which EvidentData was able to partially recover) reveals "nothing relevant." *See Plasse Brief at 7.* That determination is not for Plasse to make. Nor is it convincing. Any documents related to the circumstances of Plasse's hiring by TEC, as this letter clearly did, are potentially relevant.

Because Plasse has deleted or otherwise withheld the documents that he is now known to have viewed recently, it is impossible for the Court or TEC to determine conclusively whether the documents are relevant. Certainly, the file names of the documents – such as "Resume\Tyco.doc," "thankyoutyco.doc," "Resume\Cover Letter-jp.doc," "Resume Jim Plasse.DOC," "_ESUME2.LWP" and "_ESUME.DOC – indicate that they are relevant. *See Report Ex. 7.* Plasse's self-serving, unverifiable claim that all of these documents with relevant file names were "manifestly irrelevant" should be given no weight whatsoever.

On the contrary, the Court can and should infer that the destroyed and/or concealed documents would have shown that Deposition Exhibit 9 is not authentic and that Plasse improperly altered a pre-existing resume to support his false testimony that he did not send a resume to TEC in July 2000 in which he claimed to have an MBA degree. *See Nation-Wide*

*Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217-18 (1st Cir. 1982) ("The general principles concerning the inferences to be drawn from the loss or destruction of documents are well established. When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him.")

        **4.    Plasse Offers No Credible Explanation Why He Manipulated the System Date on His Laptop Shortly Before the Court-Ordered Computer Production Occurred**

As noted in TEC's moving brief, the system date on Plasse's laptop was repeatedly, manually changed on July 24, 2005. *See Report §4.2 and Ex. 5 to Report.* This manipulation occurred just two days prior to the Court-ordered production of the laptop to TEC on July 26, 2005. Plasse's response to this forensic finding is typically obtuse: July 24 is his birthday and he admits he "fooled around" with the computer's dates by "changing it to July 24 of different years." *Plasse Aff. ¶5.*

In addition to implying that manipulating the date on a computer is some sort of normal birthday ritual, Plasse maintains that the date July 24, 2000 has no significance in the case. This is not so. Plasse sent a cover letter and resume to Leslie Locke in TEC's Human Resources department on July 26, 2000. (Plasse Dep. at 333-334; Ex. D to Renewed Motion Brief). In its examination, EvidentData encountered unexpected dating of certain files as July 24, 2000. Inquiring further, EvidentData determined that two days before the computer was made available to EvidentData for inspection on July 26, 2005, someone had reset the system date to July 24, 2000 for a period. (EvidentData Report, §4.2).

It has now been established that Plasse recently deleted documents and files referencing resumes and cover letters. Coupled with Plasse's pattern of misleading conduct, it is difficult not to infer that Plasse attempted to manipulate his computer's system date to make it appear that certain documents were created during the time period when he sent his resume to TEC. It simply is not plausible to believe that Plasse was innocently "fooling around" with his computer's system date two days before a Court ordered production of the computer for inspection. We now know that Plasse was not born yesterday. Neither was the Court.

### 5. Plasse's Claim that He Has Been Exonerated of the Charge of Recent Fabrication Is Baseless

"According to a venerable principle of disputation, the power to frame the question includes also the power to control the answer." *Des Moines Register & Tribune Co. v. Dwyer,* 542 N.W.2d 491, 503 (Iowa 1996) (Harris, J., dissenting). In an effort to sidestep the substantial evidence of document destruction and concealment uncovered by TEC's expert, Plasse seeks to frame the issue before the Court simply as whether TEC has found evidence that he fabricated the cover letter and resume he produced at the second day of his deposition on November 29, 2004. *See Plasse Brief at 6, 8-9.* Plasse then concludes that he has been exonerated because "the computer expert finds no evidence of the creation or editing of a document from November 28, 2004 to December 9, 2004."[1] *See Plasse Brief at 6, 8-9.* Plasse is wrong on both counts: the recent fabrication charge is not the only basis for TEC's motion to dismiss, and Plasse has not been exonerated of that charge.

---

[1] Apparently, Plasse intended to focus the Court's attention on the time period between the first and second days of his deposition. If so, he has his dates wrong. The first day of Plasse's deposition was November 19, 2004 and the second day was November 29, 2004.

8

As set forth in TEC's moving brief and in the Table attached hereto as Exhibit 1, Plasse has engaged in repeated false testimony and a variety of discovery abuses in addition to the cover letter/resume fabrication, including:

- Lying at his deposition when he denied submitting a resume to TEC that stated he had an MBA (Plasse Dep. at 9, 13, 22, 254-55, 261, 265);

- Lying at his deposition when he claimed to be an MBA candidate (Plasse Dep. at 22);[2]

- Lying at his deposition when he testified that he had reviewed his computer and disks and found no Tyco-related documents. (Plasse Dep. at 241-43.)

- Disregarding TEC's request and his counsel's instruction not to destroy potential evidence. (Plasse Dep. at 11-13.)

- Pervasive document destruction and/or concealment, as has now been confirmed by the EvidentData Report. (EvidentData Report, §§3.2, 4.3, 4.4, 4.5.)

Moreover, Plasse's self-declared "exoneration" of the recent fabrication allegation is absurd. On the contrary, the EvidentData Report makes even more compelling the previously convincing evidence that Plasse fabricated the resume he produced at the second day of his deposition in order to support his false claim that he did not send a resume to TEC stating that he had an MBA degree (this document was marked as Deposition Exhibit 9, and is attached to TEC's Memorandum in Support of Renewed Motion to Dismiss as Exhibit G). This evidence includes the following:

- The version of the Plasse resume found in Dep. Ex. 9, in which Plasse describes himself as an MBA "candidate" is not in the TEC personnel file. Instead, the resume that TEC received from Plasse, like his handwritten application, falsely states that he holds an

---

[2] Plasse testified under oath that he never represented to TEC when hired in 2000 that he had an MBA, only that he was an "MBA candidate." *See TEC Brief, p. 5.* This was another misrepresentation, as Plasse merely took 3 non-degree classes at Western New England College more than 10 years before he applied for employment at TEC. Plasse now claims that TEC is "distort[ing] the evidence" because he also took 4 other undergraduate courses, even longer ago, at Westfield State College. *See Plasse Brief, p. 7.* These were not graduate level courses, as the subpoena response specifically states, *see Plasse Ex. 7,* and in any event, the fact remains that Plasse had taken no courses whatsoever for more than 10 years before he applied to TEC. Clearly, he was not an "MBA candidate" in July 2000, and his reiteration of that assertion now is false.

MBA degree. (*See* Ayala Affidavits and attached copy of personnel file; submitted with TEC's Motion to Dismiss.)

- Plasse's account of where he found this newly produced resume (Dep. Exhibit 9) was evasive, inconsistent, and incredible. (Plasse Dep. at 257, 260, 270, 271, 352-55.)

- EvidentData recovered a resume that Plasse created in January 2000 (before he applied to TEC), that Plasse recently deleted, that had an identical MBA claim as that on the resume Plasse sent to TEC and that is in Plasse's personnel file. (EvidentData Report, §3.1.)

- The font, style, word tense, and text of the resume Plasse produced as part of Dep. Ex. 9 are more consistent with Plasse's more recent, post-TEC employment resume, than with either the Plasse resume in the TEC personnel file, or the resume that EvidentData has recovered from its recently deleted state (both of which date from 2000 and contain the MBA misrepresentation). (Compare the Plasse resume in the TEC personnel file, Ex. D to Renewed Motion Brief, and the recovered resume from 2000 that Plasse tried to delete, Ex. 1 to EvidentData report, with the post-TEC resume that Plasse produced as part of his initial disclosures, Ex. L to Renewed Motion Brief.)

- While EvidentData found a resume from 2000 that closely resembled the resume in the TEC personnel file, EvidentData found no resume from 2000 that resembled the resume Plasse produced in Dep. Ex. 9 (which he represented was created in, and unchanged since, 2000).

- EvidentData uncovered extensive evidence of Plasse's recent efforts to destroy and conceal resumes, cover letters, and other documents after TEC requested inspection of his computer. (EvidentData Report, Ex. A to TEC Mem. in Support of Motion to Dismiss.)

- Plasse deleted numerous files named "resume" ("_ESUME.LWP," "_ESUME2.LWP," and "_ESUME.DOC") the contents of which could not be recovered. (EvidentData Report § 3.2.)

- Plasse accessed files and documents since his deposition in November 2004 that included resumes (including "Tyco.doc"); cover letters (including "Cover Letter-jp.doc") and correspondence with TEC ("thankyoutyco.doc"). Plasse deleted or concealed these documents since November 2004, and did so as recently as June 28, 2005. EvidentData was able to recover only fragments of some of these documents. (EvidentData Report, at §§ 3.2, 4.3, 4.4, and 4.5.)

Given Plasse's admitted computer file deletion and concealment activity, EvidentData's inability to locate the modified resume on the computer or disks that Plasse chose to provide for inspection far from exonerates him. Indeed, even the resume that Plasse produced as Dep. Exhibit 9 was not found, even though other resumes from 2000 were found. In light of the

10

evidence described above, it is far more likely than not that Plasse recently fabricated the document, and either used a different computer (such as his workplace computer, which was not inspected), a floppy disk that he did not produce, or another "successful" strategy of avoiding detection of the document.[3]

Plasse makes several other points in support of his claim that he has been exonerated of the recent fabrication allegation. He notes that TEC makes no mention of the alleged "red proof mark" on the documents allegedly confirming that the documents were faxed in July 2000. *See Plasse Brief at 8.* Plasse has never offered any support, other than his own self-serving statement in his Affidavit, that this red mark was generated by a fax machine or even that a fax machine is capable of making such a mark. Even if a fax machine could make such a mark (a proposition for which Plasse provides no support), there is no proof that the document was faxed in July 2000 as Plasse claims. He could have run the document through a fax machine in November 2004 before he produced the document in order to create the mark. Plasse also notes that TEC fails to mention the August 2000 monster.com job posting attached to the resume and cover letter he produced at his November 29, 2004 deposition. *See Plasse Brief at 8.* Certainly that does not exonerate Plasse. Plasse could have simply attached the monster.com document to the resume and cover letter before he produced the document at his second day of deposition in November 2004.

---

[3] Plasse also makes reference to TEC's inability to establish recent fabrication by ink dating. As set forth in TEC's moving brief, TEC's ink dating expert was unable to determine the date of the ink one way or the other (i.e., the ink was consistent with ink commercially available both in 2000 and 2004). Again, that is certainly not an exoneration of Plasse, especially in light of his admitted improper behavior. If Plasse believes that ink dating will exonerate him, he could have, but has not, retained an ink dating expert of his own.

### 6. TEC Has Not Misrepresented the Nature of the Deleted Resume that Was Recovered by TEC's Expert

In TEC's Memorandum in Support of its Renewed Motion to Dismiss, TEC discussed the striking similarity between the resume that Plasse deleted (and that EvidentData recovered) on one hand, and the resume found in Plasse's TEC personnel file on the other. This similarity is highly significant because both resumes date from 2000, both contain the MBA misrepresentation that Plasse denied making, and both depart in significant (but similar) ways from the "MBA/Candidate" resume that Plasse produced in Dep. Ex. 9. This remarkable similarity, and the common ways that the resumes from 2000 deviate from the resume produced at his deposition in 2004, are clear upon examination. (See TEC Memorandum in Support of Motion to Dismiss, at Exhibit A(1) [the recovered resume], Exhibit D [the resume from the personnel file], and G [the resume in Dep. Ex. 9]).

Showing a certain chutzpah, Plasse attacks TEC at length for its description of the resume that he tried to destroy and delete as "identical in content" to the resume in his TEC file. *See Plasse Brief at 1-3.* Plasse is correct that there are certain format differences between the two resumes, and several language differences. If TEC's use of phrasing such as "identical in content" is an overstatement of the remarkable similarity between the two documents, the undersigned counsel takes full responsibility for that shortcoming, and assures the Court that such phrasing was in no way intended to be misleading.

As made clear in TEC's brief, the significance of the recovered resume is in its misrepresentation of Plasse's educational credentials. TEC's intention was to stress that both the recovered resume that Plasse deleted and the resume in Plasse's personnel file misrepresent – identically – that Plasse holds an MBA degree. This is significant because Plasse has not only denied that he ever claimed to have an MBA, but he unconscionably accused TEC human

12

.

resources personnel, such as MaryAnn Ayala, of somehow "planting" the MBA resume in his personnel file. Indeed, even now, after being caught destroying the evidence that proves the folly of his wrongheaded attack on Ms. Ayala, Plasse reprises that attack, and adds a new but incomprehensible musing at length about the copy of the staple on the resume and cover letter found in his TEC personnel file. *See Plasse Brief at 5.*[4]

### B. Plasse's Complaint Should Be Dismissed as a Sanction for His Egregious Discovery Misconduct and Fraud on the Court; Plasse's Attempt to Distinguish the Cited Authorities Fails

Plasse once again emphasizes his view that dismissal is only warranted if a litigant admits to fabrication and destruction of evidence. *See Plasse Brief at 10-11.* In effect, Plasse asks to be rewarded for choosing a strategy of stonewalling, false denials, and evidence destruction over a strategy of candor. Contrary to Plasse's view, the law does not punish candor and reward obstruction. None of the cases cited by TEC or Plasse stands for the proposition that an admission is required before a court will dismiss a case for fraud on the court. Instead, dismissal is proper where clear and convincing evidence demonstrates a party's fraud on the court, and that is exactly what TEC has uncovered here.

In his citation to case law, Plasse completely ignores the recent First Circuit Court of Appeals case of *Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004). In *Hull*, the Court of Appeals made clear that dismissal for fraud on the court is not limited to fraudulent filings with the court, but may also be proper where the fraudulent conduct occurred in discovery. The plaintiff in *Hull,* who brought a personal injury action, failed to reveal prior material injuries despite questioning in depositions and interrogatories. The Court of Appeals affirmed dismissal of the action, holding:

---

[4] Plasse's point about this is far from clear, but the explanation for the different "staple lines" is obviously that the document has been stapled and unstapled several times for copying purposes in this litigation.

13

> We find no clear error in the district court's finding that [Plaintiff's] fraud was proved by clear and convincing evidence. It is easy enough to forget details of one's past; and possibly [Plaintiff] did suffer some impairment in the fall affecting his memory. **But the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless**.

356 F.3d at 101-02 (emphasis added). Plasse's discovery abuses and false testimony are at least as serious, if not more so, and every bit as clear as plaintiff's were in *Hull*, and made worse by on-going evidence destruction even as the fraud on the court motions were pending and argued.

Finally, Plasse misstates the basis for TEC's dismissal request. TEC does not argue, in this sanctions motion, that dismissal is justified under the after-acquired evidence doctrine. The after-acquired evidence doctrine may provide a defense to Plasse's damages claims based upon the misrepresentation of his educational credentials. That will be the subject of a separate motion or an issue at trial, if necessary. Rather, TEC seeks dismissal as a sanction for Plasse's fraudulent misconduct, which was intended to prevent the fair presentation of the after-acquired evidence issue to the Court and jury. That is exactly the kind of conduct that the doctrine of fraud on the court is intended to address.

14

### III.  CONCLUSION

For the foregoing reasons, TEC respectfully requests that the Court dismiss Plasse's Complaint as an appropriate sanction and as a deterrent to other litigants.  TEC also requests that the Court order reimbursement of TEC's attorneys' and expert fees incurred in connection with Plasse's fraud on the court and discovery misconduct.

    Respectfully submitted,

    TYCO ELECTRONICS CORPORATION,

    By its attorneys:

    /s/ Jeffrey D. Clements
    Jeffrey D. Clements, BBO #632544
    Clements & Clements, LLP
    50 Federal Street
    Boston, MA 02110
    (617)  451-1802

    Mark Diana, *pro hac vice*
    Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
    10 Madison Avenue, Suite 402
    Morristown, NJ 07960
    (973) 656-1600

**CERTIFICATE OF SERVICE**

    I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on October 7, 2005.

                                /s/ Jeffrey D. Clements
                                _____