UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE<br><br>               Plaintiff,<br><br>vs.<br><br>TYCO ELECTRONICS CORPORATION,<br><br>               Defendant. | Civil Action No. 04-CV-30056-MAP |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RENEWED
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Tyco Electronics Corporation ("TEC") respectfully submits this Supplemental Memorandum in support of its Renewed Motion to Dismiss Plaintiff's Complaint, as permitted by the Court at the hearing conducted on November 16, 2005. As summarized below, it is now clear that Plasse has both destroyed relevant evidence and fabricated evidence in an attempt to stymie TEC's defenses in this case, defenses Plasse knew were potentially fatal to his claims. We respectfully submit that the only appropriate sanction for this malfeasance, which Plasse clandestinely pursued even after this Court ordered him to produce his computer for inspection, is dismissal of his Complaint and an award of attorney's fees and expert costs.

    **A.**    **It is Now Undisputed That Plaintiff Intentionally Deleted Relevant Files From His Computer and Other Media Storage Devices Before, During and After TEC's Motion to Compel Computer Production Was Pending, and That Plaintiff Has No Credible Explanation for This Misconduct**

Plasse's counsel made at least two significant concessions during the November 16 hearing on TEC's Renewed Motion to Dismiss. First, he conceded that Plasse deleted documents – including a 2000 resume – recently, well after TEC raised the resume and MBA

1

issues in this litigation.  Second, when pressed, the only explanation for these deletions that counsel could offer was that Plasse's actions were "stupid" acts by a "layperson."  Therefore, it is now undisputed that Plasse intentionally deleted numerous files from his laptop and floppy disks after this litigation was filed, including while TEC's Motion to Compel Computer Production was pending and even after the Court granted TEC's Motion to Compel.  There is also no dispute about the nature of files that Plasse spoliated.  EvidentData's report confirms that Plasse viewed and deleted (or otherwise concealed from TEC) files named:

- "_ESUME.LWP," which had been saved on a floppy disk. (See EvidentData Report, §3.1 and Ex. 1).
- "Tyco.doc" and "Cover letter-jp.doc," which had been saved in a folder called "Resume" on Plasse's laptop. (See EvidentData Report, §4.3 and Ex. 7).
- "Cover Letters," which had been saved in a folder called "Jim Plasse" on Plasse's laptop. (See EvidentData Report, Ex. 7)
- "_ESUME2.LWP" and "_ESUME.DOC," which had been saved on floppy disks. (See EvidentData Report, §3.2)
- "thankyoutyco.doc" and "cover letter.doc," which had been saved on floppy disks. (See EvidentData Report, §§4.1-4.3, and Ex. 5 and 7).

Especially outrageous, and also now admitted, was Plasse's deletion, on or after June 28, 2005 – two weeks after TEC filed its Motion to Compel Computer Production – of the document "_ESUME.LWP."  EvidentData was able to recover this deleted resume, which misrepresents that Plasse holds an MBA degree, just like the resume found in Plasse's TEC personnel file.  Moreover, the resume's recovered metadata reveals that it was created in 2000, prior to Plasse's hiring by TEC.  The existence of this resume strongly corroborates TEC's claim that Plasse did submit to TEC the false resume found in his TEC personnel file and did misrepresent to TEC that he held an MBA degree.  (See EvidentData Report, §§3.1 and 3.2, and Ex. 1 and 2).

Plasse now admits all of this, but denies any wrongdoing. Plasse's explanation at the hearing for this outrageously improper behavior is implausible: Plasse is just a "layperson" who did a "stupid" thing; he was just clearing out old files on his computer to free up disk space.

2

This explanation is so absurd that it strengthens rather than alleviates the inference of deliberate malfeasance.

Is it plausible that this "layperson" – who like clockwork searched his computer and deleted documents with names like "cover letter" and "resume" after each occasion when the authenticity of Deposition Ex. 9 (the resume and cover letter Plasse produced at the second day of deposition) was questioned – did not know these computer files were relevant and should be preserved? Is it plausible that this "layperson" did not understand that when his own attorney instructed him at his deposition to preserve his computer, he was not to delete files that were directly related to his employment at TEC?[1] Is it plausible that this "layperson" was innocently manipulating the system date on his computer just two days before he was to turn his computer over for the court-ordered inspection?

Plasse is not oblivious to the issues in this case. It is beyond debate that the files he deleted were manifestly relevant to this litigation and that he knew full well this was the case. For Plasse to now claim that his targeted and persistent deletion activity was a "stupid" mistake simply provides further proof that Plasse has no respect for this Court or the integrity of the judicial process. There is only one possible conclusion the Court can reach based on all of the undisputed facts: Plasse intentionally destroyed and/or concealed from TEC relevant evidence in an effort to thwart TEC's defenses.

**B.     TEC's Computer Expert Has Uncovered Substantial, Undisputed Evidence From Which the Court Can Conclude that Plaintiff Fabricated Deposition Ex. 9**

Although TEC's expert did not find a resume identical in all respects to Deposition Ex. 9 with metadata indicating that it was created at the time of the November 29, 2004 deposition,

---

[1] During Plasse's November 19, 2004 deposition, TEC's counsel advised Plasse's counsel that TEC would be requesting inspection of Plasse's computers and requested that same be kept secure. Plasse's counsel responded, "I can tell Mr. Plasse not to destroy any potential evidence, but I'm not taking his computer and locking it up." (Plasse dep. 12-13).

3

other compelling evidence – still tantamount to the proverbial "smoking gun" – indicates that Deposition Ex. 9 is in fact a recent fabrication.

The evidence of recent fabrication was summarized and presented to the Court as an exhibit at the November 16 hearing. (See "Summary of Record Evidence That The Resume Contained in Plasse Deposition Exhibit Is A Recent Fabrication"). We distill that evidence even further here:

- Deposition Ex. 9 (which Plasse claims he submitted to TEC when hired) differs significantly from (1) the resume and cover letter contained in Plasse's TEC personnel file and (2) the resume Plasse deleted (but which EvidentData recovered) that was created prior to Plasse's hiring by TEC. These later two resumes, which were both created prior to Plasse's hiring by TEC, are remarkably similar in content. If Deposition Ex. 9 was truly prepared prior to Plasse's hiring by TEC, one would naturally expect it to closely resemble these two other resumes that are known to have been prepared at that time.

- Deposition Ex. 9 does closely resemble a resume Plasse created on a date well after his hiring by TEC. EvidentData's inspection uncovered a resume that was first created in April 2002 and was last saved in September 2003 (several months after Plasse's termination from TEC). (See EvidentData Report, §4.1 and Ex. 3).[2] The fact that Deposition Ex. 9 closely resembles a resume known to have been recently created logically suggests that Deposition Ex. 9 was also recently created.[3]

- EvidentData did not find a resume identical in all respects to Deposition Ex. 9 with metadata indicating that it was created at the time of Plasse's hiring by TEC (as Plasse claims). If this resume was truly created back in 2000, as Plasse claims, one would expect to find proof of that on Plasse's computer and/or disks, given that other resumes created during that same time period were found on Plasse's computer and disks (including the resume Plasse deleted but which EvidentData recovered). This logically suggests that Deposition Ex. 9 was not created at the time of Plasse's hiring by TEC but at a later date (and probably using a different computer or on disks that Plasse failed to produce).

- For several months, until an order of the Court, Plasse resisted repeated informal and formal requests for inspection of documents contained on his floppy disks and computers. During this same period, as previously detailed, Plasse repeatedly viewed, deleted and concealed documents and folders on his computer with names such as: "_ESUME.LWP,"

---

[2] This resume was presented at the November 16 hearing as "Hearing Exhibit 2".
[3] The specific ways in which Deposition Ex. 9 resembles the recently created resume are detailed at length in the exhibit presented at the November 16 hearing entitled, "Summary of Record Evidence That The Resume Contained in Plasse Deposition Exhibit 9 Is A Recent Fabrication." This includes numerous similarities in headings, descriptions, use of zip codes, dates of college attendance and layout.

"_ESUME2.LWP" and "_ESUME.DOC;" "Tyco.doc" and "Cover letter-jp.doc" (both in folders named "resume"); "Cover letter" as well as "thankyoutyco.doc." (EvidentData Report and Exhibits; Chronology of Events Related to Fraud on the Court). This intentional, outrageous behavior continued after TEC filed a motion to compel production of Plasse's computer and after this Court entered an order directing Plasse to produce his computer. This logically suggests that Plasse is a serial offender, who would have no concern about fabricating a document if he thought it would help him.

The foregoing undisputed forensic evidence leads clearly and convincingly to the conclusion that Plasse fabricated Deposition Ex. 9 as part of a scheme to fool TEC and ultimately the Court about his original misrepresentation to TEC about having an MBA. Plasse most likely used a computer other than his personal laptop to create Deposition Ex. 9 which explains why EvidentData did not find any remnants of the document. Nonetheless, the significant surrounding evidence proves that Deposition Ex. 9 is recent fabrication.[4]

**C.   It is Undisputed that Plasse Lied at his Deposition In an Effort to Conceal His Misrepresentation to TEC about his Educational Credentials**

The recent damning forensic evidence should not obscure the fact that Plasse's fraud on the court manifested itself in other ways, too. It is clear that Plasse lied at his deposition as part of his scheme to cover up his educational misrepresentations to TEC. For example:

- Plasse testified that he never represented to TEC that he had an MBA, and that he always described himself an MBA "candidate." (Plasse Dep. at 9-22, 254-255). However, it is undisputed that Plasse completed and signed a handwritten application in connection with his hiring by TEC, which states without qualification that he holds an MBA. (See TEC Renewed Motion to Dismiss, Ex. E).

- Plasse's sworn testimony that he was an MBA "candidate" when he applied for employment at TEC was also false. In reality, Plasse merely took three non-degree courses at Western New England College more than 10 years before he applied for employment at TEC. Prior to that, he took four undergraduate courses at Westfield State College. (See Plasse Memorandum in Opposition to Renewed Motion to Dismiss, Ex. 7). Clearly, Plasse was not an "MBA candidate" when he applied for employment at TEC.

---

[4] At the hearing, Plasse insinuated that the ink dating analysis conducted by TEC's expert may have corroborated his claim that Deposition Ex. 9 is not a recent fabrication. As already stated in TEC's original memorandum, TEC's ink dating expert was unable to determine the date of the ink one way or the other (i.e., the ink was consistent with ink commercially available both in 2000 and 2004). If Plasse believes that ink dating will exonerate him, he could have, but has not, retained an ink dating expert of his own.

- Plasse falsely testified at his deposition that he had examined his computer and disks and did not find anything "Tyco related." (Plasse Dep. at 241-243). It is now undisputed that many "Tyco related" documents did exist on his computers and disks (which Plasse viewed and deleted, as previously detailed).

- Plasse produced Deposition Ex. 9 only shortly before the second day of his deposition, and only after the issue of his credentials was raised in the first day of his deposition, despite having produced other documents, including a resume, before the first day of deposition. (Plasse Dep. at 240-2, 256). Plasse's explanation for this newly discovered resume evasive and inconsistent. (See TEC's Memorandum in Support of Renewed Motion to Dismiss, pp. 5-7).

### D. Dismissal of Plaintiff's Complaint and an Award of Costs is the Only Appropriate Sanction for Plaintiff's Egregious Acts of False Testimony, Evidence Destruction and Evidence Fabrication

There is no question that a very severe sanction is required here. We respectfully submit that the only appropriate response to Plasse's flagrant discovery abuses and fraud on the court is to dismiss his Complaint and award TEC fees and costs. Nothing less will adequately punish Plasse, protect TEC from prejudice and preserve this Court's authority.

Destruction of evidence in the face of a discovery order or discovery request is regarded as especially egregious and routinely results in the sanction of dismissal (or default judgment when committed by defendant). *See, e.g., Israel Travel Advisory Service Inc. v. Israel Identity Tours, Inc.,* 61 F.3d 1250 (7th Cir. 1995) (counterclaim dismissed as sanction for defendant's destruction of documents after motion to compel production filed), *cert. denied,* 517 U.S. 1220 (1996); *Century ML-Cable Corp. v. Conjugal Partnership*, 43 F.Supp.2d 176 (D.P.R. 1998) (default judgment entered against defendant for destruction of computer records after entry of court order to preserve records); *Kucala Enterprises, LTD v. Auto Wax Co., Inc.,* 2003 WL 22433095 (N.D. Ill. 2003) (judgment entered in defendant's favor on declaratory judgment complaint after plaintiff used "Evidence Eliminator" software to purge computer hours before

court ordered production of computer); *Cire v. Cummings*, 134 S.W.3d 835 (Tx. 2004) (complaint dismissed as sanction for plaintiff's destruction of audio tapes after entry of court order compelling production of same); *Synanon Foundation v. Bernstein,* 503 A.2d 1254 (D.C. Ct. App. 1986) (same), *cert. denied,* 479 U.S. 815 (1986); *Long Island Diagnostic Imaging, PC v. Stony Brook Diagnostic Associates*, 728 N.Y.S.2d 781 (N.Y. App. Div. 2001) (counterclaim and third party complaint dismissed as sanction for defendant's destruction of billing records despite court orders to produce records); *QZO, Inc. v. Moyer,* 594 S.E.2d 541 (S.C. Ct. App. 2005) (judgment entered against defendant as sanction for defendant's reformatting of computer hard drive and resulting destruction of evidence after entry of order to produce computer).

Likewise, dismissal as a sanction for the fabrication of evidence is well supported. *See, e.g., Premier Homes and Land Corporation v. Cheswell*, 240 F.Supp.2d 97 (D. Mass. 2002) (Neiman, USMJ) (complaint dismissed and fees and costs awarded to defendant when plaintiff filed a fabricated document to support its claim); *Derzack v. County of Allegany,* 173 F.R.D. 400 (W.D. Pa. 1996) (relying on *Aoude*, court dismisses complaint as sanction for plaintiff's fabrication of tax return, finding such conduct to be fraud on the court), *aff'd,* 118 F.3d 1575 (3d Cir. 1997); *Rockdale Management Co., Inc. v. Shawmut Bank, N.A.,* 518 Mass. 596, 597, 638 N.E.2d 29, 31-32 (1994) (dismissal warranted where plaintiff forged letter on issue of damages, referenced it in his answers to interrogatories, and lied about its genuineness at his deposition); *Munshani v. Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. 714, 805 N.E.2d 998 (Ma. Ct. App. 2004) (dismissal and attorneys' fees and costs warranted where plaintiff manufactured evidence and swore to its authenticity in order to avoid a statute of frauds defense).

Plasse's behavior here is every bit as reprehensible as the behavior at issue in these cases. Also, we again refer to the Court of Appeals decision in *Hull v. Municipality of San Juan*, 356

F.3d 98 (1st Cir. 2004), which removes any doubt that dismissal is the proper remedy here.  In *Hull*, Chief Judge Boudin affirmed the District Court's finding, based on circumstantial not direct evidence, that the plaintiff had intentionally withheld relevant evidence in a personal injury suit (evidence of prior injuries).  Here as there, "the inference of deliberate deceit is hard to escape." *Id*. at 101.  The *Hull* Court found "a broader pattern of deceit," which supported the ultimate finding that the plaintiff's misrepresentation was not innocent.  *Id.*  Also, the *Hull* Court found that plaintiff "was not a neophyte." *Id.*   Here too, Plasse knew full well the evidence he destroyed was highly relevant to the case.  As to his fabrication of evidence, obviously, the only purpose of that misconduct was to hamper TEC's defenses.

Most critically, the *Hull* Court affirmed the District Court's dismissal of the suit as a sanction for plaintiff's fraud on the court.   Relying on its prior decision in *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), the *Hull* Court held, "Although not so terrible as attempted bribery of a judge, [plaintiff's] conduct fits within the *Aoude* category. It was deliberate, broad enough to constitute a scheme, unconscionable, and calculated to enhance damages, thus unfairly hampering the defense." *Id*. at 102. The *Hull* Court also rejected plaintiff's claim that the District Court was required to impose a lesser sanction if it is available.  Although a District Court should *consider* lesser available sanctions, the Court is free to dismiss plaintiff's Complaint:

> [T]he sanction was obviously severe and lesser sanctions were available. For example, the court could have debarred Andrew from presenting certain claims of injury, underscored the jury's ability to draw negative inferences from his deceits, or both. And while the deceits imposed extra expenses on the defense, an award of attorney's fees and costs could have been treated as sufficiently offsetting this damage.
>
> On the other hand, dismissing only the affected claims of injury would have wiped out most of the main damage claims anyway, while inference drawing would be available without a sanction and could be pretty mild in effect if

8

>Andrew were nimble on cross-examination. His deceits were substantial, deliberate, and went to the heart of the case. And since not everyone will be caught, the penalty needs to be severe enough to deter. In the choice of remedy, there was no abuse of discretion…. *Id*. at 102-103.

In sum, any sanction less than dismissal is insufficient here. First, TEC has been irreparably prejudiced by Plasse's evidence destruction. TEC can never show a jury the evidence that Plasse destroyed. Even a strongly worded adverse inference instruction cannot substitute for the certainty of an incriminating document. Second, anything short of dismissal is simply too lenient for the infraction. Among other things, Plasse intentionally destroyed evidence at a time when he knew TEC was seeking a court order to get that evidence. By his disdain for the sanctity of the judicial process, Plasse has lost the right to use the judicial process. The Court is also dealing with a situation of repeated and premeditated misconduct, not an isolated occurrence. And third, the Court must send a message to Plasse and other would be violators that serious misconduct has serious consequences. Our system of justice requires fair play above all else and the public's trust in the system's integrity can only be assured when efforts to manipulate the system are dealt with harshly. We respectfully submit that the Court can and should dismiss Plasse's Complaint and award TEC attorney's fees and expert costs.

Respectfully submitted,

TYCO ELECTRONICS CORPORATION,

By its attorneys:

/s/ Jeffrey D. Clements
Jeffrey D. Clements, BBO #632544
Ingrid S. Martin, BBO #653632
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
(617) 451-1802

Mark Diana, *pro hac vice*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue, Suite 402
Morristown, NJ 07960
(973) 656-1600

**CERTIFICATE OF SERVICE**

I, Ingrid S. Martin, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on December 2, 2005.

/s/ Ingrid S. Martin
_____