**Page 380**

1  attorney produced to us. So in other words, it's a
2  resume you gave to him, and he then produced to us, if
3  that helps you orient which one this is. You'll notice
4  that this resume at the top has Tyco Electronics on it
5  as a past -- or a present place of employment. That may
6  help you orient yourself as to when this resume was
7  created.
8        Let me ask you what computer did you use to
9  create this resume?
10 A  This would have had to have been the Tyco computer.
11    Because at the time I provided this to my attorney, I
12    didn't own that laptop at that time or my Toshiba.
13 Q  So you did not print this out from a computer when you
14    produced it to your attorney?
15 A  No, I did not. I may have had it in one of my file
16    folders at work and I -- he asked for a resume. And I
17    grabbed a resume, and I provided it to him. I didn't
18    print it out.
19 Q  So we will not find a copy of this on your current
20    Toshiba laptop?
21        MR. CAHILLANE: Objection. You're
22    obviously -- now you're asking him the contents of
23    what's on his present computer. That's definitely not
24    within the scope of the order.

**Page 381**

1        MS. MARTIN: Are you instructing him not to
2  answer?
3        MR. CAHILLANE: On that I will.
4  Q  So let's go on to the next one. Now I'm going to show
5     you what's been marked before as Exhibit No. 9. Take
6     your time and take a look at it.
7        (Witness peruses the document.)
8  Q  I'm going to represent to you that this is a document
9     that we received through your attorney during the last
10    round of depositions. On the front page it says, to
11    Leslie Locke from Jim Plasse, and then there's a note in
12    the corner that says, faxed 7/26/00. What computer, if
13    any, is this information stored on?
14 A  This would have had to have been back when I was at
15    Tubed Products.
16 Q  So what does that mean? What computer does this
17    document come from?
18 A  If I can recall, we had all Hewlett Packard I believe
19    computers. They're all desktops. So it would have been
20    on a desktop computer that I was -- had in my office
21    when I was working for Tubed Products.
22 Q  So on your -- again, you did not print this document out
23    from any computer that you currently own or use?
24 A  No, I did not.

**Page 382**

1  Q  Now, this next one is a thick one. So it's Exhibit No.
2     15. Now, actually what I'd like to do with this one is
3     turn to a specific set of pages. The last time this
4     exhibit was used the court reporter numbered each of the
5     pages. You'll see that at the bottom. And if you can
6     turn to Page 44?
7  A  15-44?
8  Q  That's right. And then look at 44, 45 and 46. Those
9     are the three pages.
10       (Witness peruses the documents.)
11 Q  Which computers or computer did you use to create these
12    documents?
13       MR. CAHILLANE: Objection. I'm going to
14    instruct him not to answer. This is just another
15    back-door way of trying to repeat the prior deposition
16    which he was extensively questioned about these
17    documents. This is not a question about what computers
18    did you own, have access to. It's a question about what
19    do you do on those computers, and did you do this or
20    that. Since we actually, it's clear from the prior
21    depositions, don't even know the origin of these
22    documents, the question additionally is a
23    when-did-you-stop-beating-your-wife-type question. But
24    the sole purpose of the deposition is to identify

**Page 383**

1  computers and media storage devices that Mr. Plasse had
2  control of and access to. And you can pick the relevant
3  time period. But it doesn't allow you to do anything
4  else. And we've had two days of deposition on these
5  documents.
6       MS. MARTIN: We're very close to the end.
7  Q  This is all I'm asking, again, like with all of the
8     other documents, and this is the last set I'm asking,
9     which computers did you use to create these documents.
10       MS. MARTIN: Now I think that's a perfectly
11    reasonable question as a way to identify which are the
12    relevant computers that need to be examined.
13       MR. CAHILLANE: But the back-door question
14    here is whether or not he created this particular
15    document in the form that it's in. And there's really
16    no reason in terms of the Court's order for you to talk
17    about particular documents and their content. You can
18    ask him what computers he had control and access of
19    during the time period that these documents are dated.
20       MR. CLEMENTS: I want to interject. We have
21    very serious disagreement about the scope of the order.
22    And why don't we take a break and go off the record and
23    decide what to do about it. Because this deposition is
24    not going to be completed, and we're going to end up