COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO: 03-3584

DAVID COVUCCI,
Plaintiff

vs.

KEANE CONSULTING GROUP, INC.,
KEANE, INC. and LINDA TOOPS,
Defendants

## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR SANCTIONS

The plaintiff, David Covucci ("Covucci"), asserts claims of age discrimination and retaliation against his former employer, Keane Consulting Group, Inc. ("Keane"), and its President Linda Toops ("Toops"). The defendants have filed a motion to dismiss the complaint as a sanction for the intentional spoliation of material evidence by Covucci. Covucci filed a cross-motion for sanctions. An evidentiary hearing was held on September 27, 2005, at which Covucci testified. On October 26, 2005, the parties submitted post-hearing memoranda and a Joint Appendix, containing copies of depositions and other relevant documents, some of which had been marked in evidence at the hearing. I have reviewed and considered those documents.

Based on the evidence and reasonable inferences drawn therefrom, I find that defendants have proved by clear and convincing evidence[1] that plaintiff intentionally and in bad faith

---

[1] I have found no Massachusetts case that directly addresses the standard of proof applicable to a judge's finding of intentional and bad faith spoliation of material evidence warranting dismissal of the complaint. Under established case law, the applicable standard appears to be a preponderance of the evidence. See *e.g., Judge Rothenberg Educational Center, Inc., v. Commissioner of the Dep't of Mental Retardation*, 424 Mass. 430, 443 (1997) (burden of proving civil contempt is on the complainant to prove its case by a preponderance of the evidence); *Cepeda v. Kass*, 62 Mass. App. Ct. 732, 740 (2004) (judge hearing Rule 12(b)(2)

engaged in a pattern of conduct that encompassed the destruction of evidence relating to the creation of an e-mail that is the central document in this case, provided false and misleading testimony at his deposition and at an evidentiary hearing, and that his conduct was calculated to interfere with the judicial system's ability impartially to adjudicate this case. I further find that the plaintiff's misconduct has prejudiced the defendants in their ability to defend against these claims and that dismissal of the complaint is warranted. Lastly, I find that Covucci's cross-motion for sanctions is without merit and is denied.

## FINDINGS OF FACT

1. Keane is a management consulting company headquartered in Chicago, Illinois, with offices in Boston.

2. In September, 2000, Covucci was hired as a Senior Vice President assigned to the Boston Office. Covucci's immediate supervisor was Keane's President Toops whose office was in Chicago.

3. On Friday, October 19, 2001, Toops met with Covucci at the Boston office to discuss his performance which she viewed as unsatisfactory. The two principal criticisms she discussed with Covucci at the meeting were his failures to produce sales and to mentor the staff in the Boston office. In connection with the latter, Toops stated that Covucci had to be available in the office to build relationships with staff members. She noted Covucci's unexplained absence from the Boston office after he returned from New York in September of 2001, where he had met with the families of Keane employees killed in the September 11, 2001 terrorist attack. At the meeting Covucci responded to that criticism by stating that, as a result of experiences he had had in the past which he described as personal and confidential, he had reacted emotionally to the events in New York and needed time away from the office.

4. On Saturday, October 21, 2001, at his home, Covucci drafted a document which he

---

motion to dismiss for lack of personal jurisdiction makes factual findings and determines whether plaintiff has met its burden of proof by a preponderance of the evidence). In contrast, the standard for proving a fraud on the court is clear and convincing evidence. *Rockdale Management Co. v. Shawmut Bank, N.A.*, 418 Mass. 596, 598-599 (1994). The evidence of the intentional concealment and destruction of material evidence and false testimony by Covucci satisfies the more stringent standard.

named "Linda.doc" on his personal laptop computer using Microsoft Word. In the document, Covucci summarized and responded to the topics he and Toops had discussed at the meeting.

5.  After creating the document named Linda.doc at home on his personal laptop, Covucci e-mailed the document to his Keane e-mail account (Lotus Notes) using AOL shortly after midnight on October 21, 2001.

6.  Covucci went to his office on October 21, 2001, where he opened the document by accessing his e-mail. He made changes to the document and then cut and pasted it into a Lotus Notes e-mail and made formatting changes.

7.  At 11:09 a.m. on October 21, 2001, Covucci sent the revised document to Toops via e-mail after adding the subject line, "Confidential response to our Friday Meeting." On the same date, at 2:12 p.m., Covucci sent a copy of the e-mail he sent to Toops to himself via his personal AOL account. The revised document that Covucci e-mailed to Toops contained a paragraph in which Covucci stated that he was addressing "the most uncomfortable part of our discussion," namely, Toops criticism of his absence from the office after he returned from New York where he had provided assistance to the families of two Keane employees killed in the terrorist attack. He explained that he had taken time off due to an emotional response to the tragedy which had its genesis in unresolved psychological issues arising out of the sudden death of his brother when he [Covucci] was fifteen years old and the death of his father two years later.

8.  On October 22, 2001, Toops received the e-mail and read it. She deleted the paragraph concerning Covucci's reasons for being away from the office after returning from New York to protect his privacy. In accordance with her practice,[2] Toops forwarded the e-mail to her assistant, Michelle Kerr ("Kerr"), explaining that she had deleted one paragraph concerning "a prior experience [Covucci] had in his life with an abrupt and tragic death." Kerr then printed a copy of the e-mail and maintained it in Keane's files. Kerr also forwarded the e-mail to Jennifer Hickey, who worked in the personnel department. Toops and/or Kerr had discussed concerns relating to Covucci's performance with Hickey because Toops was contemplating terminating his employment.

9.  After sending the e-mail to Toops and returning home on October 21, 2001, Covucci accessed his AOL e-mail account using his personal laptop, opened the e-mail he had sent to himself and printed a copy of the document. The following day he again opened the document and printed it. Although the original draft of the e-mail, the document named "Linda.doc" remained on the hard drive of the laptop, Covucci testified at the hearing that he took no steps to save the e-mail he sent to Toops which contained the revisions to

---

[2] Toops did not have a printer in her office. It was her practice to forward e-mails to be saved to Kerr who would print copies of the e-mails and file them.

Linda.doc he had made at his office. He stated that he did not know how to save e-mails. I do not credit Covucci's testimony that he did not attempt to save the e-mail because he believed that AOL retained copies of e-mails that had been read, but not saved, indefinitely. I do not credit his testimony that he did not know how to save an e-mail to the hard drive of a computer.

10. On November 1, 2001, Keane terminated Covucci's employment.

11. In accordance with Keane's e-mail purge procedures, all e-mails created before November 3, 2001, in users' mailboxes were deleted by March 2, 2002. Keane's back-up computer tapes that contained e-mails created before November 3, 2001 were written over by April of 2002. Keane's e-mail purge procedures were publicized throughout the company during Covucci's employment. For example, warnings were provided in advance of a purge and employees were advised to archive important e-mails and given information as to how to do so. They were warned that e-mails that were not archived would be lost. When the e-mail from Covucci to Toops was purged and written over, Keane had no reason to believe that data relating to its transmission had evidentiary significance. Covucci's testimony that he was not familiar with Keane's e-mail purge procedures is not credible.

12. On March 20, 2002, Covucci filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was fired in retaliation for complaining about age discrimination. In the description of the basis for his EEOC complaint, he stated that on a previous occasion and during his review on October 19, 2001, Toops had stated several times that she had no room to promote Vice Presidents to Senior Vice Presidents. He stated that after the meeting, he had sent Toops an e-mail that addressed the comments she made during the meeting. "Specifically, I stated I was surprised about her comments about her wanting to promote 'younger' workers."[3]

13. In its response to the EEOC complaint, Keane submitted a copy of the e-mail Toops identified as having been received from Covucci on or about October 21. The copy of the e-mail submitted by Keane contained no reference to comments by Toops to the effect that she wanted to promote younger workers. The EEOC notified Covucci that there was a discrepancy between his description of the e-mail and the e-mail actually submitted by Keane. Neither Toops nor Keane was advised of the discrepancy.

14. Covucci then submitted to the EEOC investigator, whose name is Linsk, a document addressed to the EEOC entitled "Confidential Memorandum for EEOC use only." In that

---

[3]This sentence does not appear in the document named Linda.doc. Covucci testified that he added this sentence when he made revisions to the document at Keane before pasting the document into Lotus and sending it to Toops and before e-mailing it to himself at his AOL account.

memorandum, Covucci refers to a telephone conversation between the two in which he states that Linsk referred to "approaches he might deploy to support [Covucci's] circumstantial case against Keane." In the memorandum, Covucci suggests "some key points that may be important" to Linsk's investigation, including "suggestions for discovery requests," and offers his assistance "in sorting out discovery questions." In Section I of the Memorandum, entitled "Discovery items," Covucci lists with specificity the types of records Linsk should obtain in discovery, e.g., records relating to the hiring of independent contractors. The first item refers to the e-mail as follows:

> My e-mail to Linda Toops indicates I challenged Linda on her statement to make room for younger employees. I was terminated shortly after sending this e-mail.
>
> - The text of the original e-mail will validate that [Keane and Toops] "doctored" what they sent to you.

15. The complaint in this case was filed in July of 2002.

16. In September of 2003, Keane received documents from the EEOC in response to a request pursuant to the Freedom of Information Act and learned that Covucci had submitted a different version of the e-mail to the EEOC and was claiming that Toops had "doctored" the e-mail he sent her and deleted a sentence in which he referred to comments made by Toops to the effect that she wanted to promote younger workers. By September, 2003, the Keane laptop computers to and from which the e-mail had been sent from Covucci to Toops had been either reformatted or discarded in the ordinary course of Keane's business before Keane had reason to know that information of evidentiary value was on the hard drives of those computers.

17. On October 3, 2003, the defendants served a request for a forensic inspection of plaintiff's computers. By letter dated October 17, 2003, counsel for Covucci objected to the request on the grounds that it was overbroad and intruded on the personal privacy of Covucci and his family. He asked defendants to specify what documents they wanted.

18. Counsel then engaged in discussions. They agreed that defendants' forensic expert could 1) inspect Covucci's home computer; 2) make a mirror image of the hard drive to ensure that he did not modify the contents before copying information; and 3) copy all information concerning the Toops' e-mail. The agreement expressly contemplated that the mirror image would be held in escrow by counsel for Covucci.

19. By letter dated October 22, 2003, counsel for Covucci confirmed the terms of the agreement, but advised defendants that "Mr. Covucci no longer has the home computer with which he retrieved the e-mail from his AOL account, "and that Mr. Covucci "has no computer or storage device in his possession, custody or control that would contain a copy of this e-mail" and "[a]s a result he is unable to produce any such device in response

memorandum, Covucci refers to a telephone conversation between the two in which he states that Linsk referred to "approaches he might deploy to support [Covucci's] circumstantial case against Keane." In the memorandum, Covucci suggests "some key points that may be important" to Linsk's investigation, including "suggestions for discovery requests," and offers his assistance "in sorting out discovery questions." In Section I of the Memorandum, entitled "Discovery items," Covucci lists with specificity the types of records Linsk should obtain in discovery, e.g., records relating to the hiring of independent contractors. The first item refers to the e-mail as follows:

> My e-mail to Linda Toops indicates I challenged Linda on her statement to make room for younger employees. I was terminated shortly after sending this e-mail.
>
> - The text of the original e-mail will validate that [Keane and Toops] "doctored" what they sent to you.

15. The complaint in this case was filed in July of 2002.

16. In September of 2003, Keane received documents from the EEOC in response to a request pursuant to the Freedom of Information Act and learned that Covucci had submitted a different version of the e-mail to the EEOC and was claiming that Toops had "doctored" the e-mail he sent her and deleted a sentence in which he referred to comments made by Toops to the effect that she wanted to promote younger workers. By September, 2003, the Keane laptop computers to and from which the e-mail had been sent from Covucci to Toops had been either reformatted or discarded in the ordinary course of Keane's business before Keane had reason to know that information of evidentiary value was on the hard drives of those computers.

17. On October 3, 2003, the defendants served a request for a forensic inspection of plaintiff's computers. By letter dated October 17, 2003, counsel for Covucci objected to the request on the grounds that it was overbroad and intruded on the personal privacy of Covucci and his family. He asked defendants to specify what documents they wanted.

18. Counsel then engaged in discussions. They agreed that defendants' forensic expert could 1) inspect Covucci's home computer; 2) make a mirror image of the hard drive to ensure that he did not modify the contents before copying information; and 3) copy all information concerning the Toops' e-mail. The agreement expressly contemplated that the mirror image would be held in escrow by counsel for Covucci.

19. By letter dated October 22, 2003, counsel for Covucci confirmed the terms of the agreement, but advised defendants that "Mr. Covucci no longer has the home computer with which he retrieved the e-mail from his AOL account, "and that Mr. Covucci "has no computer or storage device in his possession, custody or control that would contain a copy of this e-mail" and "[a]s a result he is unable to produce any such device in response

to your request for inspection." Before the letter was sent, Covucci had falsely told his attorney that he no longer had the laptop in question.[4] Covucci received and read a copy of this letter when or shortly after it was sent.

20. After receiving this letter, defendants unsuccessfully attempted to obtain information from AOL to determine the authenticity of the disputed e-mail, i.e., whether Covucci had edited the document and added the reference to Toops comments about younger workers after the e-mail was sent to Toops.

21. In October of 2003, Covucci asked Edward Hastings ("Hastings"), a professional acquaintance who was knowledgeable about computers, how one could prove that an e-mail was authentic.[5] Hastings described the kinds of information that can be discovered by examining electronic data that may not appear on the printed copy of an e-mail. In particular, he explained that the deletion of a document from a computer does not remove the underlying data from the hard drive. The "pointers," i.e., file names, are removed, but the data itself is accessible until it is written over.

22. In October of 2003, Hasting visited Covucci at home. Covucci showed Hastings a Norton software product he had purchased. When Hastings asked Covucci what he wanted to do with the program, Covucci stated that he wanted to delete files so that the electronic data could not be retrieved. Hastings told Covucci that he used a product called "BC Wipe" to shred electronic data so that data from deleted documents could not be retrieved from the hard drive and recommended BC Wipe to Covucci. Covucci's personal laptop already contained a program named "Incinerator" which Covucci had used to delete electronic files.

23. BC Wipe is advertised on its website as a program that "completely remove[s] all traces

---

[4] "I do not credit Covucci's testimony that he told his attorney only that the computer was "inaccessible." Acknowledging that he lied to his attorney as to whether the laptop could be produced, Covucci denied that he did not correct the false representation in his attorneys' October 22nd letter concerning the availability of the computer because he did not want the defendants to look at the hard drive of his computer. He testified that reason he did not tell his attorney that the representation was inaccurate was because "I presumed this issue was put to rest by the letter, that we had met your demands by allowing you to have all my e-mails from AOL." Covucci Dep. at 328. I do not credit this testimony.

[5] Covucci initially testified that this conversation took place in October of 2003, which is consistent with Hastings' memory that it took place before their conversation about the use of BC Wipe to delete files. At the hearing, Covucci testified that the conversation took place in February of 2004. I find that the conversation took place in October before Covucci downloaded BC Wipe. I note that in either event the conversation took place before Covucci acknowledged that he still had the laptop and relinquished control over it.

of previously deleted files" and makes it "impossible to restore any data that has been properly wiped."

24. As of November 2003, Covucci had three computers: the laptop computer on which he composed the document named Linda.doc and, on October 21 and 22, opened the e-mail he had sent to himself from Keane; a desktop computer purchased in August or September, 2003; and a second laptop called the RSVI computer which Covucci had received from a client in July of 2002. On November 1, 2003, Covucci downloaded and installed BC Wipe on his desktop computer and used BC Wipe's automatic function to delete files by "cleaning" the open or unallocated spaces on the hard drive.

25. On November 6, 2003, Covucci signed an authorization for defendants to obtain information concerning his account from AOL. On Nov. 18, 2003, the defendants sent the request for access to AOL; AOL did not respond to this request.

26. On Thanksgiving Day, November 27, 2003, Covucci downloaded BC Wipe on his personal laptop computer at 4:00 p.m. and used the automatic function to delete files. Covucci did not delete the initial word draft of the October 21 e-mail. That document can still be retrieved. On the same date at 4:18 p.m., Covucci downloaded BC Wipe onto his RSVI computer and used the automatic function to delete files.[6]

27. At some point before making the laptop available, Covucci intentionally deleted electronic information from a sub-folder named Covucci.doc within a folder named Keane using BC Wipe. Covucci used BC Wipe to delete large numbers of files automatically, but at least one document in the Keane folder was specifically targeted for deletion.[7]

28. Covucci never performed a search to determine whether there was pornography on the computer so that he could delete it. Any pornography on the hard drive that was deleted was deleted by using the automatic function on BC Wipe. When Covucci finally produced the laptop for examination, there was pornography on the laptop that had been

---

[6] Covucci testified that the reason he sought information from Hastings about deleting files and obtained BC Wipe was that at some point in the future if RSVI paid his invoices and requested the return of the computer, he would have to return the RSVI computer and wanted to delete personal information, e.g., AOL e-mail that he had opened and read on that computer, before returning it. By November 27, the invoices had not been paid and RSVI had not made a request for or indicated in any way that it was seeking the return of the RSVI computer.

[7] I do not credit Covucci's testimony the document related to his benefits under COBRA.

-7-

viewed after January 31, 2004, the last time Covucci ran BC Wipe on the computer.[8]

29. On January 23, 2004, defendants filed a Motion for Letters Rogatory, seeking an out-of-state subpoena compelling AOL to produce e-mails contained on Covucci's e-mail account. The motion was granted and the subpoena issued.

30. AOL then responded by letter dated January 23, 2004, addressed to defendants' counsel, stating that it does not archive e-mail and does not have access to e-mail that is not currently accessible to a member in his online mailbox. The letter contained the following information: An online mailbox generally retains an e-mail for only two days after the e-mail has been read. The e-mail is then automatically deleted. Unread and sent e-mail is preserved for twenty seven days. E-mail deleted by a member is automatically deleted after twenty four hours from AOL systems. Members with the latest AOL upgrade (August 2003) can save e-mail into a Saved AOL folder if they choose. Members can, of course, save e-mail to their own hard drive. A copy of this letter was sent to attorneys for Covucci. Covucci read the letter shortly after it was received.

31. After reviewing the letter from AOL, Covucci contacted AOL by telephone and e-mail to find out how he could obtain access to the Personal Filing Cabinet ("PFC") on his personal laptop. He wanted to "figure out" what was in that folder and, in particular, to determine whether the e-mail he sent to Toops could be retrieved from the computer. After obtaining the information from AOL, Covucci opened the PFC on the personal laptop computer and determined that it contained only a list of e-mails dating back to September of 2002. Before opening the PFC, Covucci changed the settings on the computer to expand the space allotted to that folder "to ensure documents were not inadvertently destroyed."

32. When he attempted to and did open the PFC, Covucci knew that he had an obligation to produce the computer and had lied about his ability to do so. He knew that the defendants had requested a forensic examination of the computer to see if the document he was looking for and electronic information relating to its creation could be retrieved. He described it as a document "crucial to [his] case." He testified that it was "very difficult" to open the PFC folder and that he had to "use the computer extensively to open that folder." Nonetheless, according to Covucci, he did not disclose the continued existence of the computer until he had determined that the document and/or information relating to it was *not* in the PFC folder. Nor did he seek professional assistance to ensure that he did not inadvertently destroy this "crucial" document or information relating to it if it did reside in the PFC.

---

[8]Based on the evidence, I find that the suggestion that Covucci lied to his attorneys about the availability of the laptop and purchased and used BC Wipe on the laptop because he was concerned that plaintiffs would discover that he had viewed pornography on the laptop and use that fact against him in the litigation is not true.

-8-

33. On January 31, 2004, after opening the PFC folder, Covucci again ran BC Wipe on his personal laptop.

34. In February of 2004, Covucci sent a copies of the original draft of Linda.doc from his laptop computer to his desktop computer and to his attorney.

35. In March of 2004, Covucci downgraded AOL on his personal laptop from AOL 7.0 to AOL 5.0 because the personal laptop did not have Windows 98. During that process, AOL automatically established a saved personal file cabinet ("PFC") on the computer.

36. On September 21, 2004, Covucci was deposed. During his deposition he testified that the personal laptop was in existence and in his possession. At the end of that day, the deposition was suspended. Counsel for defendants requested that "you please preserve the laptop and not do anything, touch or access [the original e-mail].

37. On the same date (September 21), defendants served a second request for a forensic examination of the laptop, and, in particular, any documents contained on the hard drive relating to the Toops' e-mail. Plaintiff refused to permit an inspection asserting that attorney client communications were stored on the hard drive. On October 19, 2004, the parties agreed to an examination, including mirror imaging of the hard drive.

38. Before filing this complaint, Covucci was involved in three prior legal disputes, including two claims he brought against former employers. As reflected in his memorandum to Linsk of the EEOC, he was somewhat sophisticated about discovery requirements and procedures. I do not credit his testimony that he did not understand that the purpose of the defendants' October 3, 2003 request for access to his computers was to ascertain the circumstances surrounding the creation of the two versions of the e-mail.[9] Covucci

---

[9]For example, Covucci was asked:
   Q And did you know that--did you suspect at that time [October 2003] that one of the things the defendants were seeking to do was ascertain the circumstances surrounding the creation of Exhibit 11 [the original draft]?
   A No. I assumed that the defendant had all the information they needed to ascertain the circumstances around that e-mail. I couldn't imagine why they would want to see anything on my computer. My computer had nothing to do with the sending of this e-mail to Linda Toops.
Covucci Dep. at 310-311.
   Covucci went on to deny that he was aware in October of 2003 that one of the principal issues of conflict in the case was which of the two e-mails was correct. *Id.* at 312. He testified that he presumed the e-mails were identical, *Id.* at 313, notwithstanding that, at some point between March of 2002 and July of 2003, he had sent a memorandum to the EEOC stating "[t]he text of that original e-mail will validate that they 'doctored' what they sent you."

-9-

reviewed the October 22, 2003, letter drafted by his attorney confirming the agreement between counsel at the time it was sent or shortly thereafter. That letter states that the parties had agreed that the purpose of the examination was to "copy all information concerning the Toops' e-mail."

39. I draw the inference from Covucci's concealment of the laptop and the elaborate steps that he took over a period of months to cleanse the hard drive of the laptop that it contained information relevant to the e-mail he sent to his AOL account and to the creation of the document he now claims he sent to Toops and that his efforts were designed to and did destroy that relevant evidence because it would not have supported his claims.

## CONCLUSIONS OF LAW

1. A litigant has a duty to preserve evidence. *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 549-50 (2002).

2. Spoliation of evidence occurs when there has been negligent or intentional destruction of evidence which results in unfair prejudice to the opposing party. *Kippenham v. Chaulk Services, Inc.*, 428 Mass. 124, 127 (1998).

3. Sanctions for spoliation of evidence include dismissal of the case, the exclusion of evidence, or a jury instruction on the adverse inference to be drawn from spoliation. *Keene v. Brigham & Women's Hospital*, 439 Mass. 223, 235-236 (2003). As a rule, a judge should impose the least severe sanction necessary to remedy the prejudice to the nonspoliating party. *Keene, supra*, 439 Mass. at 235.

4. "A 'fraud on the Court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim

or defense." *Rockdale Management Co., supra,* 418 Mass. at 598, quoting *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989). See *Munshani v. Signal Lake Venture Fund II, LP.,* 60 Mass. App. Ct. 714, 718-721 (2004).

5. In *Rockdale,* the Supreme Judicial Court identified the following conduct as warranting dismissal for fraud on the Court: creating and presenting false evidence in support of a claim or defense; destroying evidence and otherwise impeding the discovery process; offering false and misleading testimony and falsifying past deposition testimony. *Id.* at 599-600. (citations omitted). To warrant dismissal, the moving party must show through clear and convincing evidence that a party's fraudulent conduct is part of a *pattern* or *scheme* to defraud. *Id.*

## DISCUSSION

The evidence detailed above establishes that in October of 2003, the defendants requested access to Covucci's personal laptop computer which contained information concerning the creation of a document which both parties agree is the "crucial" document in this case. In response, Covucci caused his attorneys to falsely represent that he no longer had the computer and could not produce it. Covucci then investigated the kinds of information about the creation of a deleted document that can be discovered by a forensic examination of the hard drive of a computer. After learning that electronic information concerning the creation of the document and the document itself could be retrieved even if the document had been deleted, Covucci investigated products that could be used to delete such information from the hard drive. After downloading such a product onto his personal laptop, he used it to clean the open spaces on the hard drive and to delete information relating to several documents from a folder that contained

-11-

JUN-05-2006  01:41PM  FROM-LAWYERS WEEKLEY                +6172188116            T-338  P.012  F-569

documents relating to his employment at Keane. After learning that AOL had not preserved his e-mails, he again lied to his attorneys telling them that he might be able to find the laptop and would search for it. He then communicated with AOL by telephone and e-mail to find out how to open the personal filing cabinet on the computer to determine whether his October 21 e-mail to himself was in the folder. After opening the PFC folder, he used BC Wipe again on January 31, 2004. He did not acknowledge that he still had the computer until he was deposed in in September, 2004. Covucci thus concealed the existence of a computer that was the subject of a discovery request until he had eliminated the possibility that any relevant evidence concerning the creation of the document that he relies on and describes as "crucial" to his case could be retrieved from the hard drive. He made numerous false statements at his deposition and during the evidentiary hearing which are detailed, in part, in the Defendants' Post-Hearing Memorandum at pp. 13 to 24.

I have considered the range of sanctions that are available and determined that dismissal is the only appropriate sanction given Covucci's bad faith and the egregious nature of his misconduct. This case does not involve a single hasty act. Covucci lied to his attorneys and caused them to make false representations to defendants. He then engaged in the systematic destruction of material evidence over a period of months. He has deprived the defendants of evidence concerning the creation of the "crucial" document in the case.[10] He provided false

---

[10] Covucci's argument that there is no evidence that relevant information was on the computer when he used BC Wipe depends on his claim that he did not save the e-mail he sent to his AOL account on October 21. I do not believe his testimony. Further, I draw the inference from his false representation that he did not have the computer and the elaborate steps that he took over a period of months to cleanse the hard drive of the laptop that it contained information relating to the e-mail sent to his AOL account and to the creation of the document he now claims he sent to Toops and that his efforts were designed to and did destroy that relevant evidence. See Keene, 439 Mass. at 237. See Pelletier v. Magnusson, 195 F. Supp. 2d 214, 235 (D. Me. 2002).

JUN-05-2006 01:42PM   FROM-LAWYERS WEEKLEY            +6172188116      T-338   P.013   F-569

testimony at his deposition and at the hearing on this motion. Whether described as a persistent bad-faith repudiation of discovery obligations, compare *Partlow v. Hertz Corp.* 370 Mass. 790-791 (1976), the intentional spoilation of evidence, *Keene*, 439 Mass. at 223, or a fraud on the court, *Rockdale Management*, 418 Mass. at 599-600, and all three descriptions apply to Covucci's conduct, dismissal is the only appropriate remedy for his misconduct.

## CONCLUSION AND ORDER FOR JUDGMENT

For the reasons stated herein, it is ordered that defendants' motion for sanctions is allowed. The complaint is dismissed with prejudice. It is further ordered that Covucci's cross-motion for sanctions is denied.[11]

Dated: May 26, 2006

Diane M. Kottmyer
Justice of the Superior Court

---

[11] Covucci's cross-motion for sanctions is without merit. It is undisputed that Keane's purge procedures were in effect before Covucci's employment was terminated and that his e-mail to Toops was purged and the laptop computers from and to which the e-mail was sent were discarded and reformatted in the ordinary course of business long before Keane learned that the authenticity of the e-mail it had produced was disputed.