UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JAMES M. PLASSE,                )
            Plaintiff           )
                                )
            v.                  ) CIVIL ACTION NO. 04-30056-MAP
                                )
TYCO ELECTRONICS CORP.,         )
            Defendant           )

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
RENEWED MOTION TO DISMISS AND FOR SANCTIONS
(Dkt No. 36)

September 7, 2006

PONSOR, D.J.

I. INTRODUCTION

    Plaintiff James M. Plasse brought suit against Defendant
Tyco Electronics Corp. ("Tyco") in February 2004, alleging
that he was wrongfully terminated after he raised concerns
about accounting practices at Tyco.

    On January 24, 2005, Tyco filed a Motion to Dismiss,
alleging fraud on the court.  This court denied the motion
without prejudice on April 28, 2005, finding that the
evidence was not sufficiently clear to justify the grave
sanction of dismissal, and inviting Defendant to renew its
motion following an inspection of Plasse's personal
computer.

Defendant has now filed a renewed motion to dismiss, alleging that Plaintiff destroyed relevant evidence and fabricated other evidence in an attempt to stymie Tyco's potential defenses in this case. As a sanction for these alleged abuses, Tyco requests that the court dismiss the case and award fees and costs.

For the reasons set forth below, Defendant's motion will be allowed.

## II. BACKGROUND

### A. Plaintiff's Employment at Tyco.

Plasse was hired by Tyco in August 2000 and terminated in February 2003. Plaintiff alleges that he was discharged in retaliation for raising internal concerns about accounting practices; Defendant contends that Plasse was discharged following a pattern of inappropriate conduct, which included disclosing confidential information without authorization.

Plaintiff filed suit against Tyco in state court in February 2004. Defendant removed the case to federal court on March 22, 2004.

### B. Misrepresentation of Educational Credentials.

-2-

Plasse's personnel file at Tyco contains a cover letter and resume submitted in July 2000 ("Personnel File Resume") in connection with his application for employment, and a signed, handwritten employment application completed in August 2000. (Dkt. No. 37, Exs. D, E.) In his resume, Plasse claimed that he had received a Master's in Business Administration (MBA) degree from Western New England College (WNEC). Plasse made the same claim on his handwritten application, where he wrote that he attended WNEC from September 1992 to May 2000, pursued a course in business, and received an MBA.

It is undisputed that Plaintiff does not have an MBA from any institution. Moreover, Plasse appears to have attended WNEC only briefly, completing three courses as a "Graduate Non-Degree" student between 1988 and 1990. (See Dkt. No. 37, Ex. I, WNEC Transcript.)

When the parties exchanged initial disclosures, Plaintiff produced a more recent resume ("Disclosure Resume"), apparently used in connection with his post-Tyco job search. This resume also states that Plasse holds an MBA from WNEC.

C.  <u>Plaintiff's Deposition Testimony</u>.

Plasse was deposed on November 19, 2004, and November 29, 2004.  On the first day of his deposition, Plasse admitted that he did not hold an MBA.  He also denied that he had ever claimed to have an MBA.  (Dkt. No. 30, Ex. G, Plasse Dep. 9:10-12[1] ("Have you ever claimed to have gotten an MBA?  No.").)  Instead, he explained that on his resume he would describe himself as an MBA "candidate."[2]  (Id. at 9:12-13.)  Plasse again denied claiming an MBA on the second day of his deposition. (See id. at 254:21-23 ("Q: Did you send a resume to Tyco Electronics that stated that you had an MBA?  A: No."); see also id. at 261:13-17 (denying that he would have described himself as an MBA in any resumes submitted to Tyco).)

On the first day of his deposition, Plasse was also asked several questions about the Disclosure Resume, which states that he received an MBA from WNEC in the fall of

---

[1] Citations to pages 1-235 refer to first day of the deposition, November 19, 2004.  Citations to pages 236-363 refer to the second day, November 29, 2004.

[2] Plasse claims that he is a "candidate" for an MBA, based on a combination of his WNEC credits and those received at other institutions.  In support of this claim he submits only a Westfield State College transcript, the cover letter for which explains that all listed coursework was at the undergraduate level.  (Dkt. No. 39, Ex. 7.)

2001.  In explaining its provenance, Plasse responded:

> "I don't know where this came from."
> "I don't know why it says [degree received] fall
> 2001 on there.  All mine say candidate."
> "This was actually from a recruiter, and I don't
> know where they -- why that's on there 'cause all
> the resumes I have say candidate."
> "It must have come from me to give to my attorney."

(Plasse Dep. 10:21-22, 11:5-6, 11:14-17, 11:20-21.)  When

asked if the resume was produced on his computer, Plasse

replied, "Possibly."  (<u>Id.</u> at 11:22-23.)

Between the first and second days of his deposition,

Plasse produced an additional resume ("Deposition Resume"),

on which he made the more modest claim that he was "Pursuing

MBA/Candidate" at WNEC.  (Dkt. No. 37, Ex. G.)  Plasse

explained that after the first day of his deposition, when

he was questioned about his resume, he had searched his

files for any relevant documents and located a copy of the

original cover letter and resume that he faxed to Tyco when

he applied for the job in July 2000.  According to Plasse,

he located these documents in a folder in his old laptop

briefcase.  (Plasse Dep. 257: 6-8, 260:10-11, 270:13, 271:2-

4, 351:18-21.)  He also said that they were in a folder in a

drawer in his desk at home.  (<u>Id.</u> 355:2-8; <u>see</u> <u>id.</u> at 355:9-

10 ("Q: So it wasn't in the briefcase?  A: No."); <u>see also</u>

-5-

id. at 353:9-10 ("I may have moved it out of my desk into the briefcase or something."); id. at 353:21-354:14 (explaining the opposite, i.e., that at some point after he was terminated by Tyco, Plasse cleaned out his briefcase and put all Tyco-related matter in a folder in his office).

When he was questioned about the fact that the Deposition Resume and the Personnel File Resume also did not match, Plasse suggested the "possibility" that someone else, i.e., a recruiter or headhunter, had sent the Personnel File Resume to Tyco. (Id. at 336:10; see also id. at 337:22-23 ("plus there was an agency that may have sent one in as well"); id. at 339:1-8 (explaining that Plasse did not know whether a recruiter had actually sent a resume to Tyco).) Plasse also noted that he might have submitted his resume to Tyco several times. He suggested that Tyco might have lost his first fax, and noted that he "believed" he had been asked to fax his information a second time. (Id. at 337:13-15, 337:20-22.) He also conceded, however, that the Personnel File Resume "may have been one that I sent in early on. I don't know when they received it." (Id. at 266:14-18; see also id. 268:16-20 ("I think this may have come off of my . . . my laptop.").)

The deposition also touched on the handwritten employment application Plasse submitted to Tyco.

> Q: Please read what you wrote down under . . . graduate education in your employment application.
> A: Western New England College, major course of study business, dates attended 9/92 to 5/00, and certification[/]diploma[/]degree MBA.
> Q: You represented to Tyco Electronics that you had an MBA degree in this application, did you not?
> Well, I put there the dates that I attended the college.

(Plasse Dep. 264:14-24.) He then explained further,

> I represented that I was a candidate. I attended the -- I attended Western New England from those dates, but I would have on here MBA candidate. I wouldn't just put MBA on there if I was pursuing it.

(Plasse Dep. 265:11-15.) Plaintiff further suggested that the application might have been modified. (Plasse Dep. 265:15-16 ("I don't know if this was altered or what but . . . ").) Finally, on both days of the deposition, Plaintiff was made aware of the fact that Tyco believed that the contents of Plasse's computer were relevant to this suit. On the first day of deposition, Defendant's lawyer stated that he intended to request access to any relevant computers for inspection, and asked Plaintiff's counsel to ensure that the any computers would be secured until there was an opportunity to inspect them. (Id. 12:17-20; 13:5-12.)

-7-

On the second day of the deposition, after Plasse produced the new documents, he was asked, "Do you have any additional documents other than [those] you've produced previously [or] produced today that are related in any way to your employment with Tyco Electronics?"  He responded, "No."  (Id. at 241:12-16; see also id. at 241:19-243:7 (explaining that in preparation for the second day of deposition, Plasse reviewed his laptop and four or five disks and found nothing Tyco-related on these devices).) Despite these comments, later that same day, Plaintiff indicated that although he had given his attorney all documents relating to his employment to Tyco that he felt were relevant to this lawsuit, there might be other documents relating to Tyco that he had not turned over. (Plasse Dep. 355:11-357:3.)  Defendant's counsel once again noted that he had requested production of all documents relating to Plasse's employment at Tyco, "not to a screening based on Mr. Plasse's view of what's relevant but based on what's responsive to our request."  (Plasse Dep. 357:4-24.)

D.    First Motion to Dismiss and Motion to Compel.

On January 24, 2005, Tyco moved to dismiss this case, alleging that Plasse had lied at his deposition and

-8-

fabricated documents (i.e., the Deposition Resume) in an
effort to prevent Tyco from proving that Plasse had
misrepresented his credentials when he applied for a job at
Tyco.

On April 28, 2005, this court conducted a hearing on
Defendant's motion.  The court expressed serious concern
about the allegations, but found that at that time the
evidence was not sufficiently clear and convincing to
justify the serious sanction of dismissal.  The court
therefore denied Tyco's motion without prejudice, and
invited Defendant to renew its motion following an
inspection of Plasse's personal computer.

Tyco filed a motion to compel on June 13, 2005.  On July
6, 2005, the court granted Tyco's motion over Plaintiff's
objection, and ordered that Plaintiff: (1) submit to a
further deposition by July 22, 2005, for the sole purpose of
identifying computers and other media storage devices used
by him during relevant time periods; (2) produce, by July
29, 2005, all computers and media storage devices presently
in his possession, under his control or accessible to him,
for inspection by Defendant's expert; and (3) produce the
Deposition Resume and accompanying cover letter for analysis

by Defendant's ink-dating expert.[3]

Plaintiff submitted to this additional deposition on July 22, 2005.  On July 26, 2005, he produced what he claimed were the only computers and media storage devices in his possession: one laptop computer, eight floppy disks, and thirteen CD-ROMs.

E.    Forensic Computer Analysis.

Tyco's computer expert, EvidentData, made an image of the computer and disks on July 26, 2005, and conducted a forensic analysis of these devices, seeking: (1) documents related to Plasse's application for employment to Tyco; (2) all resumes; and (3) any contextual evidence regarding these documents, including alterations and deletions.

EvidentData issued its report on August 18, 2005.  (Dkt. No. 37, Ex. A, EvidentData Report.)  Among the findings in this report are the following:

1) Deleted resume:  On floppy disk 7, EvidentData retrieved a resume originally created in January 2000 on a computer that belonged to Plasse's

---

[3]  The ink-dating analysis was inconclusive, because Defendant's expert found that the ink used was consistent with ink that was commercially available in both 2000 and 2004.

-10-

previous employer.  The "Education" section on this resume is identical to the "Education" section on the Personnel File Resume, and claims that Plasse holds a WNEC MBA.

File "metadata" (background information about a file) revealed that the retrieved file was accessed and modified on June 28, 2005, then deleted at some unknown date between June 28, 2005, and the date on which the computer was produced, July 26, 2005.  (Id. § 3.1.)[4]

2) <u>Unretrievable deleted resumes</u>: EvidentData found several partially overwritten and unrecoverable resume files on disks 4 and 7.  (Id. § 3.2.)

3) <u>System date and time manipulation</u>: During its analysis of Plasse's computer, EvidentData "identified unexpected date and time file system attributes associated with some files relevant to the scope" of its review.  The laptop's security log revealed that on July 24, 2005, the system date

---

[4] Coincidentally, on June 27, 2005, one day before this deleted document was last accessed and modified, Tyco filed its reply memorandum in support of its motion to compel, arguing that Plasse's expressed willingness to produce his recently purchased computer would be insufficient, because Defendant believed that floppy disks and other storage media would likely contain relevant evidence.  (See Dkt. No. 35, Def.'s Reply.)

on the laptop was changed to July 24, 2003, July

24, 2000, February 24, 2003, February 25, 2003, and

then back to July 24, 2005.[5]  EvidentData therefore

warned that these dates were unreliable indicators

of the actual date on which a file was accessed or

modified.  (<u>Id.</u> § 4.2.)

4) <u>Potentially relevant documents accessed as late

as July 2005</u>: "Internal Shortcut Metadata" and the

"Most Recently Used" lists showed that a number of

documents with the words "resume," "cover letter,"

or "Tyco" in the title were accessed at different

times in the period between November 29, 2004, and

July 16, 2005.  With the exception of one file, the

resume retrieved from floppy disk 7, EvidentData

was unable to locate any of these files on

Plaintiff's laptop or floppy disks. (<u>Id.</u> §§ 4.3,

4.4.)

EvidentData's analysis revealed that on November 29,

2004, Plasse accessed "Cover Letter-jp.doc" and "Tyco.doc,"

two documents located in a folder called "Resume."  The

_____

[5] Plasse's laptop was manufactured on November 27, 2002.

-12-

"last accessed" dates for other potentially relevant
documents are April 29, May 2, June 18, 19, and 28, and July
16, 2005.  Files were modified on April 29, May 2, June 18,
and June 20.  (Id. at Ex. 7.)

        Moreover, certain documents may have been accessed as
late as July 24, 2005, two days prior to production of the
laptop.  According to laptop metadata, files named "Cover
Letter.doc," "thankyoutyco.doc," and "Resume Jim
Plasse.DOC," were accessed on July 24, 2000, or July 24,
2003.  As indicated above, both these dates are unreliable
indicators of when a document was viewed, and in fact
suggest that these documents were accessed on July 24, 2005,
the date the system clock was changed to these other dates.[6]
Because these documents were unavailable when Plaintiff
produced his computer and disks two days later, it appears

---

        [6] Other dates associated with these documents provide
further evidence that the "last accessed" date is unreliable.
For example, the shortcut for the file "Cover Letter.doc" was
created on May 2, 2005, showing that "Cover Letter.doc" was
first copied to a particular location, in this case Plaintiff's
laptop, on that date.  However, despite the fact that the
document was apparently first copied to the laptop on May 2,
2005, metadata reveals that Plaintiff last opened this file on
his laptop almost five years earlier, on July 24, 2000, a
chronology that obviously makes no sense.  The metadata for the
file "thankyoutyco.doc" reveals a similar pattern.  (See
EvidentData Report Ex. 7.)

that these documents were destroyed or otherwise concealed
between July 24 and July 26, 2005. (See id.)

    5) <u>Document fragments</u>: EvidentData recovered
fragments of a document entitled "Thankyoutyco"
from Plasse's laptop.  Evidence demonstrated that
the document had been opened on May 2, 2005, but
EvidentData could not find a complete version of
this document on either the laptop or disks.  (<u>Id.</u>
§ 4.5.)

    6) <u>E-mail references</u>: EvidentData retrieved a
fragment of text on Plasse's laptop that showed an
e-mail attachment named "Resume James Plasse-
Email.DOC."  EvidentData also found several other
references to resumes in the "sent" file in
Plaintiff's e-mail program, but the company was
unable to locate either the e-mails or the
attachments.  (<u>Id.</u> § 4.6.)

    7) <u>Undeleted resume</u>: EvidentData apparently
recovered a single undeleted resume on Plaintiff's
computer.  This is a post-Tyco resume, which
includes a section on his employment at Tyco.  This
resume states that Plasse is a candidate for an MBA

-14-

at WNEC.  (EvidentData Report § 4.1; <u>id.</u> at Ex. 3.)

F.   <u>Plaintiff's Affidavit</u>.

Plaintiff submitted a brief affidavit responding to the forensic evidence.  He first confirmed that he had provided Defendant "all data storage devices" in his "possession or control."  (Dkt. No. 38, Ex. 8, Pl.'s Aff. ¶ 2.)  He also denied Defendant's charge that he fabricated the Deposition Resume prior to the second day of his deposition.  (<u>Id.</u> at ¶ 4.)

Finally, Plaintiff offered an explanation of the findings in the EvidentData Report.

> During the pendency of this litigation, I continued to make use of my computer as I always have.  Over time I have made several varying versions of a resume, sometimes changing it or sometimes deleting older ones. [The two deleted resumes identified by EvidentData] are such resumes that I may have deleted.  I did not believe they had anything to do with this case
> . . . .  I did also fool around with the computer's dates, changing it to July 24 of different years. July 24 is my birthday.  It is not to my knowledge the date of any document relevant to this case.  I did not "back date" or attempt to "back date" any document.  I would not even know how to back date a document by changing the date of the computer.

(<u>Id.</u> at ¶ 5.)

### III.  <u>DISCUSSION</u>

Defendant has now filed a renewed motion to dismiss

-15-

Plaintiff's complaint, alleging that Plasse: (1) testified falsely during his deposition; (2) fabricated a resume to support his false testimony; and (3) deliberately deleted, destroyed, or concealed documents after he was put on notice that such documents were relevant.  Tyco argues that the only appropriate sanction for Plaintiff's acts is dismissal of his complaint and an award of attorney's fees and expert costs.

"Although dismissal need not be preceded by other, less drastic sanctions, it is an extreme remedy, and should not lightly be engaged."  Aoude v. Mobil Oil Corp, 892 F.2d 1115, 1118 (1st Cir. 1989) (citations omitted).  Therefore, "a district court may dismiss a case only when circumstances make such action appropriate."  Id. (citation and quotation omitted).  One "potential basis" for applying this remedy, is a finding that a party has engaged in "fraud on the court," that is,

> a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.

Hull v. Municipality of San Juan, 356 F.3d 98, 102 (1st Cir.

-16-

2004).  For example, dismissal is warranted where a plaintiff vigorously prosecutes a suit based upon a document he fabricated, <u>Aoude</u>, 892 F.2d at 1118-19, or where a plaintiff deliberately conceals evidence of prior injury in order to enhance damages, <u>Hull</u>, 356 F.3d at 102-03. Evidence of such misconduct must be "clear and convincing." <u>Hull</u>, 356 F.3d at 101.

Clear and convincing evidence demonstrates that Plaintiff has engaged in extensive and egregious misconduct in this case.  First and foremost, he deleted or otherwise failed to produce documents that were potentially relevant to this litigation.  The forensic analysis of Plaintiff's computer and electronic storage devices showed that a number of files with titles containing the words "resume," "cover letter," or "Tyco," existed as recently as November 2004, and have simply disappeared during the course of this litigation.  Although EvidentData managed to retrieve certain resume files, which Plaintiff now concedes he "may have deleted," the remaining documents are simply unavailable.

Not only have these documents been rendered no longer accessible, but they disappeared during a period when

Plaintiff must have been aware of their relevance.
Plaintiff was put on notice, as early as November 2004, that
various versions of his resume might become an issue in this
litigation, and that Defendant was interested in the
contents of his computer.

Even if Plaintiff was uncertain about whether the
contents of his computer would become an issue in this
litigation, any doubt on that subject should have been
erased at least as of April 28, 2005, when this court
explicitly invited Defendant to seek further discovery
regarding Plaintiff's computer and files.  Nonetheless,
there is no doubt that on April 29, Plaintiff modified
potentially relevant files; a number of other files were
modified on May 2, 2005.

It should also have been crystal clear after June 13,
2005, when Defendant filed a motion to compel production of
Plaintiff's computer and electronic storage media, that
Plaintiff's computer would be subject to some scrutiny.  Yet
Plaintiff unquestionably modified files again on June 18,
20, and 28.  On July 6, 2005, the court allowed Defendant's
motion, and unbelievably, Plaintiff continued to access and
modify files.  It appears that several files were accessed

as late as July 24, 2005; these files were no longer
available two days later when Plasse produced his computer
and other electronic storage devices.

Plaintiff's explanation for this behavior is more than
unconvincing; it verges on the absurd.  While it is
understandable that a litigant might find it useful to
review potentially relevant information in the course of
preparing his lawsuit, Plaintiff's behavior goes far beyond
this.  As Plaintiff himself admits, he continued to "make
use" of his computer to modify and delete resumes and other
documents, long after he must have been aware of the
interest in such documents.  In particular, he has now
admitted that he "may have deleted" a resume created in
January 2000, six months before he applied to work at Tyco,
which, like the Personnel File Resume, states that Plaintiff
has an MBA.  As the forensic report makes clear, not only
did Plaintiff delete this file, but he did so at some point
between June 28, 2005, and July 26, 2005, well after
Defendant had filed its June 13 motion to compel, and
possibly after the court allowed the motion on July 6.

Plaintiff's explanation that he continued to "make use"
of his computer also fails to account for the systematic

-19-

destruction of files.  The forensic analysis recovered <u>one</u>
undeleted resume on Plasse's laptop.  All other files with
names containing the words "resume," "cover letter," or
"Tyco," have disappeared.  Normal use does not explain the
systematic elimination, while this litigation was pending,
of virtually all potentially relevant files.

Significant evidence also suggests further misconduct on
Plaintiff's part.  The forensic analysis revealed that he
changed the system date on his laptop computer on July 24,
2005.  Plaintiff claims that, since this date was his
birthday, he was just "fooling around" with the dates, not
deliberately attempting to back-date documents.  However,
forensic analysis suggests that several documents were
opened while the system date was altered.  Moreover,
regardless of whether laptop date manipulation is some sort
of birthday fun for Plaintiff, it is clearly an exercise he
should have known to avoid <u>two days</u> before the deadline for
production of his laptop.

With respect to the deposition testimony, again, the
evidence of misconduct is compelling.  Plaintiff lied when,
asked directly whether he had ever claimed to have received
an MBA, he replied, "No."  At least three sources directly

contradict this statement.  First, his handwritten, signed employment application[7] lays claim to an MBA.  Second, the Disclosure Resume states that he has an MBA.  Third, the Personnel File Resume makes the same claim.  Even though Plasse suggested that this resume could have been sent in by a recruiter, he later conceded that it "may have been one that I sent in early on."

Other deposition testimony is inconsistent or evasive at best.  For example, Plaintiff first testified that he had no Tyco-related documents on his laptop or computers, and that he had reviewed these sources in anticipation of the second day of the deposition.  He later stated only that he had no other relevant Tyco-related documents.  In fact, the forensic analysis clearly shows that he still had many Tyco-related documents at this point: several files on Plasse's laptop or disks contained the word "tyco" in the title.

Plaintiff was also evasive when asked about the Disclosure Resume.  He claimed some degree of ignorance,

---

[7] During his deposition, Plaintiff also misrepresented the dates of his attendance at WNEC.  On his employment application, he wrote that he studied business at WNEC from 1992 through 2000.  At his deposition, he twice confirmed that these were the dates he attended WNEC.  His WNEC transcript confirms that Plasse took three courses at WNEC between 1988 and 1990.

stating first that he did not know where it came from, then
claiming that it was actually from a recruiter, and finally
that he must have given it to his attorney.  Although
Plaintiff's similar claims of ignorance are somewhat
plausible with respect to the Personnel File Resume, his
inability to explain the source of a resume provided by him
or his attorney to Defendant at some point during the seven
months between the filing of his complaint and his
deposition is incredible.

    Plaintiff's response to the serious evidence showing a
pattern of significant misconduct is similarly remarkable.
Plaintiff argues that the inaccessible documents are not
relevant and their deletion would therefore be meaningless.
As the documents have disappeared, the court is in no
position to assess this claim; the systematic destruction of
these documents certainly suggests otherwise.  See Nation-
Wide Check Corp. v. Forest Hills, 692 F.2d 214, 217-18 (1st
Cir. 1982) (Breyer, J.) (loss or destruction of documents
"is sufficient by itself to support an adverse inference
even if no other evidence for the inference exists," so long
as a "party had notice that the documents were relevant at
the time he failed to produce them or destroyed them.").

In addition, Plaintiff contends that the forensic analysis actually exonerates him, because it provides no direct evidence that he fabricated the Deposition Resume. This allegation was at the heart of Defendant's original motion to dismiss, and the parties continue to dispute the significance of circumstantial evidence suggesting that the resume was or was not fabricated. Plaintiff's focus on the fabrication allegation ignores the much more direct evidence of misconduct extensively outlined in the forensic analysis.

Plaintiff's egregious behavior in this case warrants the imposition of a heavy sanction. "[W]henever a judge imposes the harshest sanction," the First Circuit advises that "lesser remedies ought to be considered, where reasonably available." Hull, 356 F.3d at 103. In this case, neither party has proposed an alternative to dismissal and the court can conceive of none. More importantly, through his conduct, Plaintiff has consistently demonstrated an unwillingness to proceed fairly and openly in this litigation, and has directly flouted this court's authority by destroying or modifying documents after the court specifically invited Defendant to obtain an inspection of Plaintiff's computer and disks. Plaintiff not only concedes

that he "may have" deleted one such document, but appears to believe that his actions were insignificant.  Under these circumstances, dismissal is the appropriate sanction.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss and for Sanctions (Dkt. No. 36) is hereby ALLOWED. Plaintiff has destroyed or concealed evidence, engaging in an egregious pattern of misconduct that has hampered the proceedings in this case.  Defendant may submit its application for costs and attorney's fees, with supporting affidavits, by September 29, 2006.  Plaintiff may oppose by October 20, 2006.

It is So Ordered.


<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U. S. District Judge