UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE,<br><br>    Plaintiff,<br><br>vs.<br><br>TYCO ELECTRONICS CORPORATION,<br><br>    Defendant. | Civil Action No.  04-CV-30056-MAP |

DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION
FOR FEES AND COSTS

## I. INTRODUCTION

By Opinion and Order dated September 7, 2006, this Court granted the Motion of defendant Tyco Electronics Corporation's (TEC) to Dismiss the Complaint of Plaintiff James Plasse (Plasse) as a sanction for Plasse's egregious pattern of evidence concealment and destruction.  The Court further ordered that "Defendant may submit its application for costs and attorney's fees, with supporting affidavits, by September 29, 2006."

TEC now submits this Memorandum of Law in support of its application for fees and costs.  Also submitted herewith are Affidavits from TEC's counsel in this matter (Jeff Clements, Mark Diana, Lynelle Slivinski and Ingrid Martin) documenting the services and expenses for which compensation is sought, and describing counsels' credentials and experience. Additionally, submitted herewith are Affidavits from counsel not involved in this litigation (Douglas Seaver and Kenneth Bello) attesting to prevailing rates in the local market for attorneys of reasonably comparable skill, experience and reputation.

Based on these submissions, TEC respectfully requests that the Court award attorney's fees in the amount of $79,524.07 and costs in the amount of $20,472.32.

## II. FEE AWARD STANDARDS

The general standards governing attorneys' fees awards in this Circuit are well settled. As this Court stated in Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC, 140 F.Supp.2d 111 (D. Mass. 2001), aff'd, 259 F.3d 25 (1st Cir. 2001), abrogated on other grounds, Invessys, Inc. v. McGraw-Hill Companies, 369 F.3d 16 (1st Cir. 2004):

> Courts in this Circuit must apply the "lodestar" approach to calculation of fee awards: a determination of the hours reasonably spent on this case, multiplied by a reasonable rate. See Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997). To determine the hours reasonably expended, courts typically look at the actual hours spent by counsel as established by adequate contemporaneous billing records, then "subtract from that figure hours which were duplicative, unproductive, excessive or otherwise unnecessary." Grendel's Den v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). A reasonable rate is "that prevailing in the community for similar work." Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir.1983).
>
> …
>
> After the billing records are examined and a lodestar has been identified, courts may raise or lower the award in certain circumstances. Coutin, 124 F.3d at 337. For example, courts may exercise discretion "to tailor fee awards in light of the behavior of the parties during litigation." Lotus, 140 F.3d at 76, n. 5; see also Matthew Bender & Co., Inc. v. West Pub. Co., 240 F.3d 116, 124 (2d Cir. 2001). Judges may also look to the level of success the prevailing party obtained: the more impressive the results, the more reasonable the hours expended on the case will be. See Hensley, 461 U.S. at 435, 103 S.Ct. 1933 (1983).

Id. at 123; see also Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (discussing fee award standards); Blum v. Stenson, 465 U.S. 886, 895 (1984); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## III. TEC'S PROPOSED FEE AND COST AWARD IS REASONABLE

TEC requests a lodestar fee award in the amount of $79,524.07 and costs in the amount of $20,472.32. TEC's request is manifestly reasonable under the governing standards.

### A. The Proposed Hourly Rates are Reasonable

"To determine a reasonable rate of payment, courts generally begin with the fee application itself," that is, the rates actually charged by counsel in the case. Yankee Candle, 140 F.Supp.2d at 123. In addition, "a reasonable fee must be calculated according to the prevailing market rates in the relevant community." Mountain Cable Co. v. Choquette, 53 F.Supp.2d 107, 114 (D. Mass. 1999).

Defense counsels' hourly rates in this matter are as follows:

- Jeffrey Clements, Clements & Clements    $295 per hour
- Mark Diana, Ogletree Deakins    $296 per hour
- Lynelle Slivinksi, Ogletree Deakins    $244 per hour
- Ingrid Martin, Clements & Clements    $225 per hour

These rates are certainly commensurate with counsels' level of experience, and reasonable by any fair measure. The Affidavits of counsel submitted herewith detail counsels' credentials, skills and experience. Mr. Clements and Mr. Diana, both shareholders with their respective firms, have been practicing law for nearly 20 years, and have substantial experience litigating employment disputes and other complex commercial matters. (See Clements Aff., ¶¶2-3; Diana Aff., ¶¶2-8). Ms. Slivinski and Ms. Martin have been practicing law for 7 years and 5 years, respectively, and have established themselves as talented and successful associate attorneys. (See Slivinski Aff., ¶¶2-7; Martin Aff., ¶¶3-6). We respectfully refer the Court to the accompanying Affidavits for a full statement of defense counsels' credentials.

Defense counsels' rates are also clearly consistent with local markets rates – indeed, below market rates – as reflected in other fee award decisions from this Court, see Yankee

3

Candle 140 F.Supp.2d at 123-125 (Court approves $300-$320 for partners and $135-$200 for associates in 2001); Mountain Cable Co. v. Choquette, 53 F.Supp.2d 107, 114 (D. Mass. 1999) (Court approves lead counsel rate of $230 and associate rate of $200 in 1999); Stanton v. Southern Berkshire Reg. School Dis., 28 F.Supp.2d 37, 42 (D. Mass. 1998) (Court approves $250 per hour for attorney with 20 years experience in 1998), aff'd, 197 F.3d 574 (1st Cir. 1999), and other courts in this District. See Arthur D. Little Int'l, Inc. v. Dooyang Corp., 995 F. Supp. 217, 224 n.1 (D.Mass.1998) (finding rate of $325 per hour reasonable for litigation partner in large Boston firm in 1998).

Finally, it is clear from the Affidavits of Messrs. Seaver and Bello that counsels' rates in this matter are reasonable and consistent with (or below) prevailing rates for attorneys of their experience level. As set forth in Mr. Seaver's Affidavit, typical billing rates in the Boston/Springfield market for management-side employment partners with 15-20 years experience are $300-$425, partners with fewer than 15 years experience are $300-$350, Senior Associates are $250-$290, and Junior Associates are $210-$235. (Seaver Aff., ¶9). Mr. Bello provides similar market rate data. (Bello Aff., ¶8). Counsels' rates in this matter are well within (and, again, below) these ranges.

     **B.**    **The Hours Spent are Reasonable**

In calculating the number of hours reasonably spent in the litigation, "the court begins with counsel's actual billing sheets." Yankee Candle, 140 F.Supp.2d at 124. From those records, the Court should "subtract from that figure hours which were duplicative, unproductive, excessive or otherwise unnecessary." Id.

Defense counsel have submitted a detailed, itemized list of all activities, and the time associated with each activity, for which compensation is sought. (See Exhibit 1 to Clements Aff.;

4

Exhibit A to Diana Aff.). These activities fall into the following six categories, all of which are directly related to the discovery of Plasse's misconduct and litigation over sanctions for this misconduct:

1. Original Sanctions Motion To Dismiss
2. Computer-Related Discovery Prior to Motion To Compel Discovery
3. Motion to Compel Computer-Related Discovery
4. Ink Dating Analysis
5. Computer-Related Discovery After Motion to Compel Discovery
6. Renewed Sanctions Motion to Dismiss

These categories of activities are clearly compensable in light of the nature of Plasse's misconduct. See Phoenix Four, Inc. v. Strategic Resources Corp., 2006 WL 1409413 (S.D.N.Y. 2006) (citing Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68 (S.D.N.Y. 1991) (when assessing monetary sanctions for the destruction of evidence, compensation is appropriate for the "investigation and litigation of the document destruction," including motion practice over the appropriate sanction); Trigon v, United States, 234 F.Supp.2d 592 (E.D. Va. 2002) (party awarded compensation for fees and expenses "documenting the spoliation and seeking judicial redress therefrom"); Illinois Tool Works v. Metro Mark Products, Ltd., 43 F.Supp.2d 951, 962-963 (N.D. Ill. 1999) (court awards fees for time spent, inter alia, preparing for and defending computer expert deposition, motion to compel computer inspection, and motion for sanctions)

Specifically excluded from defense counsel's application are litigation activities that were not related to Plasse's misconduct. Thus, no compensation is sought for activities such as: defense counsel's initial and ongoing investigation of the allegations in the Complaint; removal of the action to the District Court; preparation of TEC's Answer; preparation of TEC's Initial Disclosures; preparation of TEC's Request for Production;[1] responding to Plasse's Request for

---

[1] However, the preparation of the separate Request for Production of computer-related information is included in the fee application.

5

Production; preparing for and taking Plasse's two-day deposition;[2] preparing four TEC witnesses for deposition and defending those depositions; and preparing TEC's Motion for Summary Judgment (which TEC was not ultimately required to file). Literally hundreds of hours were devoted to these activities, at great expense to TEC, but no compensation is sought for them in this application.

Again, the activities for which TEC does seek compensation are described at length in the time summaries submitted herewith.[3] It will be noted that counsel from Clements & Clements and Ogletree Deakins worked collaboratively on many of the activities for which compensation is sought. Given the complexity and novelty of the issues involved, such collaboration was entirely reasonable.[4] Also, although all of counsels' time devoted to the foregoing six categories was eminently justified, in order to address any possible concerns about excessiveness or duplication of activities, we have applied an across-the-board 10% reduction to the total fees sought. See Yankee Candle, 140 F.Supp.2d at 124-125 (applying 10% discount to entire fee application to account for "excessive hours, duplication of services and fruitless pursuits"). Also, TEC has not sought compensation for the preparation of this fee application, although that

---

[2] However, the taking of Plasse's subsequent deposition, as permitted by the Court to obtain computer-related discovery, is included in the fee application.

[3] In Gay Officers, in lieu of contemporaneous time records, the First Circuit approved counsel's submission of "synthesized, excerpted and reproduced entries" from their time records, which were submitted in an effort "to segregate time spent on unsuccessful, unrelated claims and to create a more intelligible format for judicial consideration" of the fee application. 247 F.3d at 297. TEC's counsel have adopted this same approach. In lieu of their actual time records, defense counsel have excerpted those time entries for which compensation is sought, and have organized those entries into the above-described categories. However, should the Court prefer that counsel submit their actual time records, they will be provided upon request.

[4] As the Court held in Gay Officers: "Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. Consequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working together on a single issue." 247 F.3d at 297 (citations omitted). This is such a case.

would have been justified. In sum, TEC has shown great restraint in making this application, and thus we submit no further reductions are justified.

We note too that the fees sought by TEC are consistent with the fee awards other courts have recently allowed as a sanction for the destruction of evidence or other fraud on the court. For example, in Leon v. IDX Systems Corp., ___ F.3d ___, 2006 WL 2684512 (9th Cir., Sept. 20, 2006), a discrimination and whistleblower suit, the Court of Appeals for the Ninth Circuit affirmed the District Court's dismissal of plaintiff's Complaint and the award of $65,000 in fees as a sanction for plaintiff's deletion of evidence from his laptop computer. This award reflected all of counsel's fees, without any reductions, incurred investigating and litigating the issue of plaintiff's spoliation. See Leon v. IDX Systems Corp., 03-cv-1158, Order Dismissing Plaintiff's Claims Due to Plaintiff's Spoliation of Evidence (dated September 30, 2004) (attached as Ex. E). In Munshani v. Signal Lake Venture Fund, II, LP, 2001 WL 1771982, *1 (Mass. Super. 2001), aff'd, 60 Mass. App. Ct. 714 (Mass. App. Ct. 2004), where the Court found that plaintiff had manufactured evidence to support his claims, the Court awarded defense counsel $122,667.30 for its fees and costs incurred investigating plaintiff's fraudulent conduct. In Trigon v, United States, 234 F.Supp.2d 592 (E.D. Va. 2002), the Court awarded counsel $179,725.70 in fees, without any reductions, incurred in the discovery of spoliation, coordination with forensic experts and litigation over the appropriate sanctions.

What is clear from these cases is that a plaintiff, who commits the sort of egregious fraud on the court that Plasse committed, must bear the financial responsibility reasonably incurred by the defendant investigating the misconduct and litigating its consequences. TEC's fee application seeks no more than that (and arguably less than that, given the voluntary reductions

proposed). In light of the seriousness of Plasse's behavior, and the expense TEC was forced to incur to address it, we respectfully request that the Court grant all fees sought herein.

### C. The Lodestar Reflects a Reasonable Fee Award

TEC's proposed lodestar award is $79,524.07   Although the Court has the discretion to adjust this figure up or down based on various considerations, Yankee Candle, 140 F.Supp.2d at 123, we submit that no adjustment in either direction is required here. Although an upward adjustment could be justified given the extraordinary result obtained and as a deterrent to other litigants, TEC submits that a lodestar award is fair and reasonable under all of the circumstances.

### D. Counsels' Alternative Fee Arrangements Do Not Impact Calculation of the Lodestar

As explained in the accompanying Affidavits of Mark Diana and Jeffrey Clements, both defense counsel firms have (in the case of Ogletree Deakins) or had (in the case of Clements & Clements) alternative fee arrangements with TEC. These arrangements do not alter the lodestar calculation set forth above.

#### 1. Clements & Clements' Fee Arrangement

TEC was initially represented in this matter solely by Clements & Clements. Clements & Clements billed TEC on an hourly basis at a partner rate of $295 and an associate rate of $225. However, under an alternative fee arrangement with TEC, Clements & Clements agreed that TEC would retain 20% of the amount due to Clements & Clements based on hourly charges each month until the conclusion of the matter.[5] At the conclusion of the matter, TEC and Clements & Clements will agree upon payment of 0% to 200% of the "hold-back" amount, with the final amount determined based on factors such as client satisfaction and results. TEC has recently

---

[5] In effect then, TEC paid Clements & Clements a partner hourly rate of $236 and an associate hourly rate of $180.

8

confirmed that, based on client satisfaction and results, it will pay at least 100% of the hold-back amount for services rendered by Clements & Clements prior to January 1, 2005. Thus, for services rendered to TEC by Clements & Clements prior to January 2005, Clements & Clements' actual hourly rates are $295 (partner) and $225 (associate). (Clements Aff., ¶5).

Effective January 2005, Ogletree Deakins became national labor and employment counsel for Tyco International ("Tyco"), including TEC. Thus, beginning in or about January 2005, Ogletree Deakins commenced its representation of TEC in this matter, but retained Clements & Clements as its local counsel. Under this arrangement, Ogletree Deakins is responsible for all fees charged by local counsel after January 1, 2005, including the fees charged by Clements & Clements. Thus, all fees charged by Clements & Clements after January 1, 2005 have been paid by Ogletree Deakins. Ogletree Deakins has paid Clements & Clements at the rates of $295 (partner) and $225 (associate), without any "hold-back." (Clements Aff., ¶5; Diana Aff., ¶¶9, 12).

Thus, Clements & Clements' rates of $295 (partner) and $225 (associate) are appropriately considered their actual rates in this matter for purposes of the lodestar calculation.

### 2. Ogletree Deakins' Fee Arrangement

As noted, Ogletree Deakins became national labor and employment counsel for Tyco International ("Tyco"), including TEC, effective January 2005. Under its arrangement with Tyco, Ogletree Deakins is paid a flat fee each month by Tyco for all employment and labor law services, which includes all fees for services rendered in this matter.[6] The monthly fee negotiated between Tyco and Ogletree Deakins was intended to compensate Ogletree Deakins for the reasonably anticipated monthly volume of work at Ogletree Deakins' standard rates as of

---

[6] The original arrangement between Tyco and Ogletree Deakins was for a period of 18 months, with 1/18th of the total flat fee paid to Ogletree Deakins each month.

January 2005, discounted by 6%. Thus, Mr. Diana's time is "billed" to Tyco at an hourly rate of $296 (6% discount off his 2005 standard rate of $315) and Ms. Slivinski's time is "billed" to Tyco at an hourly rate of $244 (6% discount off her 2005 standard rate of $260). (Diana Aff. ¶10).

Although Ogletree Deakins is paid a flat fee each month, the arrangement requires that Ogletree Deakins' attorneys keep track of their time, and submit their time on monthly statements, just as if the firm were billing Tyco for time on an hourly basis. This arrangement allows Tyco to allocate legal expenses to the proper business units, and affects the percentage of the flat fee that must be paid by TEC and the other business units each month. It also allows Ogletree Deakins attorneys to measure their productivity under a customary billable hours framework. (Diana Aff. ¶11).

Although TEC thus does not technically pay Ogletree Deakins for its services on an hourly basis (but rather on a flat fee basis), the actual hours devoted by Ogletree Deakins' counsel in this matter, at the discounted rates, are the appropriate considerations for the lodestar calculation. The situation at hand is conceptually similar to an award of fees to a prevailing plaintiff under a fee shifting statute when plaintiff's counsel has a contingency fee arrangement with the plaintiff. The existence of a contingency agreement (as opposed to an agreement for compensation on an hourly basis) does not preclude plaintiff's right to a statutory fee award using the lodestar calculation method. As stated by the Court in <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989):

> [Section 1988's fee shifting provision] contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount.
> 	…

10

> Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel. The contingent-fee model, premised on the award to an attorney of an amount representing a percentage of the damages, is thus inappropriate for the determination of fees under § 1988. The attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable under § 1988.

Id. at 93-94, 96; see also Szczepanski v. Newcomb Medical Center, 141 N.J. 346, 358 (1995) (adopting Blanchard and observing "the [contingency] agreement determines the fee payable by the prevailing party to counsel.…The statutory-fee award determines the fee payable by the unsuccessful party to the prevailing party").

Here too, the fact that TEC and Ogletree Deakins have negotiated an alternative fee arrangement does not impact TEC's right to an attorney's fees award. The Court's task in calculating a fee award simply requires "a determination of the hours reasonably spent on this case, multiplied by a reasonable rate." Yankee Candle, 140 F.Supp.2d at 123. Further, since the amount of compensation in fact paid by TEC to Ogletree Deakins for this and all matters is derived from the firm's standard rates as of January 2005 discounted by 6%, those rates ($296 for Mr. Diana and $244 for Ms. Slivinksi) should serve as the proper reference for the lodestar calculation.[7]

---

[7] Significantly, because Mr. Diana's and Ms. Slivinski's rates in this matter already include a negotiated discount with TEC of 6% off their standard 2005 hourly rates, plaintiff is already the beneficiary of below standard rates. Although TEC does not request that the hourly rate adopted by the Court be increased above the actual rates charged, given the discount already applied, we respectfully submit that no rate reduction is warranted either.

11

### E.   The Costs Sought are Reasonable

TEC is also entitled to reimbursement of the costs it incurred in connection with Plasse's destruction and concealment of evidence. Specifically, TEC seeks reimbursement for the following three categories of expenses: (1) the fees paid to TEC's computer expert EvidentData; (2) the court reporter/transcript fees associated with Plasse's court ordered deposition on computer discovery issues; and (3) the fees paid to TEC's ink dating expert.

TEC engaged EvidentData in May 2005 to perform a forensic examination of Plasse's computer(s) and to prepare a report of its findings. As the Court is aware, EvidentData conducted a thorough inspection and analysis and prepared a detailed report, which revealed Plasse's egregious misconduct. TEC paid EvidentData a total of $17,293.32 for these services. TEC seeks full reimbursement of these fees. (See Diana Aff., Ex. B).

TEC deposed Plasse in July 2005, pursuant to the Court's order allowing TEC to conduct computer-related discovery (following the denial without prejudice of TEC's original Motion to Dismiss). TEC incurred a total of $179 in court reporter/transcript costs in connection with this deposition. (See Diana Aff., Ex. C).

TEC also retained an ink dating expert to examine the resume cover letter Plasse belatedly produced in discovery, to opine on the veracity of Plasse' claim that the cover letter was created in 2000, not 2004 when it was produced. Although the results of the examination were inconclusive, TEC would not have been required to engage an ink dating expert if Plasse had not falsely denied at deposition that he had submitted the cover letter and resume found in his TEC personnel file. TEC paid the ink dating expert $3000 for his services. (See Diana Aff., Ex. D).

TEC thus respectfully request that the Court award it a total of $20,472.32. in costs.

## IV. CONCLUSION

For all of the foregoing reasons, TEC respectfully requests that the Court award attorney's fees in the amount of $79,524.07 and costs in the amount of $20,472.32.

Respectfully submitted,

TYCO ELECTRONICS CORPORATION,

By its attorneys:

/s/ Jeffrey D. Clements
Jeffrey D. Clements, BBO #632544
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
(617) 451-1802

Mark Diana, *pro hac vice*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue, Suite 402
Morristown, NJ 07960
(973) 656-1600

### CERTIFICATE OF SERVICE

I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the plaintiff on September 28, 2006.

/s/ Jeffrey D. Clements
_____

4377443.1