## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JAMES M. PLASSE,

                    **Plaintiff,**

**vs.**                                        Civil Action No.  04-CV-30056-MAP

TYCO ELECTRONICS
CORPORATION,

                    **Defendant.**

## AFFIDAVIT OF MARK DIANA

I, Mark Diana, depose and state as follows:

1.    I am counsel for Defendant Tyco Electronics Corporation ("TEC") in the above-captioned litigation. I was admitted to appear in this matter pro hac vice pursuant to Local Rule 83.5.3(b).  This Affidavit is offered in support of TEC's Application for Attorneys Fees and Costs made in connection with the Court's September 7, 2006 Memorandum and Order allowing TEC's Motion to Dismiss and For Sanctions.

2.    I am a shareholder with the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., in Morristown, New Jersey.  Ogletree Deakins is a national labor and employment law firm with approximately 325 attorneys and offices in 25 cities throughout the United States. Ogletree Deakins' practice is limited to the representation of management in labor, employment, employee benefits and immigration law maters.   I serve as Managing Shareholder of the Morristown, New Jersey office.

3.    I am admitted to practice law in New Jersey, the United States District Court for the District of New Jersey, and the United States Court of Appeals for the First and Third

Circuits.  I have also been admitted to practice pro hac vice in various other courts around the country.

4.      I am a graduate of the University of Delaware (1985) and Suffolk University Law School (1988).   After a one year judicial clerkship with the New Jersey Superior Court, Appellate Division (1988-1989), my practice has been limited exclusively to the representation of management in employment and labor matters.

5.      Over the past 17 years, I have represented employers in hundreds of employment litigations, including discrimination, retaliation, whistleblower, wrongful termination and other related suits in state and federal courts and before administrative agencies in New Jersey and various other states.  I have performed the full range of litigation activities, including discovery, motion practice, trial work and appellate practice.   Several of the matters for which I have been retained have resulted in reported decisions.

6.       I have been a member of the New Jersey Supreme Court Committee on Model Civil Jury Charges, Employment Law Subcommittee, since 1998.  I am also a member of the Executive Board of the Labor and Employment Law Section of the New Jersey State Bar Association.  I am a frequent lecturer on employment law matters for the New Jersey Institute for Continuing Legal Education and other organizations, and frequently contribute articles to various employment law publications.

7.      I am listed in the Best Lawyers in America publication for 2006 and 2007, and the New Jersey Super Lawyers publication for 2005 and 2006, for employment law.

8.      My current (2006) standard rate for new matters is $350 per hour.

9.      In or about March 2004, TEC retained the law firm of Clements & Clements to represent it in this matter.  Effective January 2005, Ogletree Deakins became national labor and

2

employment counsel for Tyco International ("Tyco"), including TEC. Thus, beginning in or about January 2005, Ogletree Deakins commenced its representation of TEC in this matter, but retained Clements & Clements as its local counsel.

10.     Under its arrangement with Tyco, Ogletree Deakins is paid a flat fee each month by Tyco for all employment and labor law services, which includes all fees for services rendered in this matter.[1] The monthly fee negotiated between Tyco and Ogletree Deakins was intended to compensate Ogletree Deakins for the reasonably anticipated monthly volume of work at Ogletree Deakins' standard rates as of January 2005, discounted by 6%. Thus, my time is "billed" to Tyco at an hourly rate of $296 (6% discount off my 2005 standard rate of $315) and Ms. Slivinski's time is "billed" to Tyco at an hourly rate of $244 (6% discount off her 2005 standard rate of $260).

11.     Although Ogletree Deakins is paid a flat fee each month, the arrangement requires that Ogletree Deakins' attorneys keep track of their time, and submit their time on monthly statements, just as if the firm were billing Tyco for time on an hourly basis. This arrangement allows Tyco to allocate legal expenses to the proper business units, and affects the percentage of the flat fee that must be paid by TEC and the other business units each month. It also allows Ogletree Deakins attorneys to measure their productivity under a customary billable hours framework.

12.     Under its arrangement with Tyco, Ogletree Deakins is responsible for all fees charged by local counsel after January 1, 2005, including the fees charged by Clements & Clements in this matter. Thus, all fees charged by Clements & Clements in this matter after January 1, 2005 have been paid by Ogletree Deakins.

---

[1] The original arrangement between Tyco and Ogletree Deakins was for a period of 18 months, with 1/18[th] of the total flat fee paid to Ogletree Deakins each month.

13.    Attached hereto as Exhibit A is a summary of all activities that Ms. Slivinski and I have performed in this matter pertaining to the investigation of and litigation concerning Mr. Plasse's acts of evidence concealment and destruction. I prepared the attached summary by duplicating our actual invoices, deleting entries that did not pertain to Mr. Plasse's misconduct, and then reorganizing the remaining entries into the following six categories: (1) Original Sanctions Motion To Dismiss; (2) Computer-Related Discovery Prior to Motion To Compel Discovery; (3) Motion to Compel Computer-Related Discovery; (4) Ink Dating Analysis; (5) Computer-Related Discovery After Motion to Compel Discovery; and (6) Renewed Sanctions Motion to Dismiss.

14.    Tyco requires that Ogletree Deakins utilize task billing (rather than block billing), so in almost all cases the time entries were easily segregated into the foregoing categories. A very small number of entries (fewer than 10), included activities that did not exclusively fall into one of these six categories. In those cases, the inapplicable activities were omitted and a commensurate time reduction was made.

15.    Specifically excluded from the attached time summary are litigation activities that were not related to Plasse's misconduct. Thus, excluded from the time summary are activities such as: investigating of the allegations in the Complaint; preparing four TEC witnesses for deposition and defending those depositions; numerous strategy conferences with co-counsel and the client regarding the litigation; and preparing TEC's Motion for Summary Judgment (which TEC was not ultimately required to file).

16.    I recognize that the Court's task in reviewing a fee application is to subtract from the claimed hours time which the Court finds to be "duplicative, unproductive, excessive or otherwise unnecessary." I have carefully reviewed our time records to eliminate any entries that

might arguably be characterized as such.   In addition, in order to remove any doubt whatsoever, I have applied an additional 10% reduction to the total fees claimed. In total, we request reimbursement of fees totaling $47,032.92.

17.    Although I have submitted the attached time summary as a convenience to the Court, if the Court would prefer that our actual time records be submitted, they will be promptly supplied upon request.

18.    In addition to the attorney's fees described on the attached time summaries, TEC has incurred various expenses directly attributable to Mr. Plasse's misconduct.   These expenses fall into the following three categories:  (1) the fees paid to TEC's computer expert EvidentData; (2) the court reporter/transcript fees associated with Plasse's court ordered deposition on computer discovery issues; and (3) the fees paid to TEC's ink dating expert.

19.    Attached as Exhibit B are the invoices submitted by EvidentData, totaling $17,293.32.  These sums have all been paid to EvidentData.

20.    Attached as Exhibit C is the invoice submitted by the court reporter for the court-ordered deposition of Mr. Plasse pertaining to computer discovery issues.  This sum, $179, has been paid to the reporter.

22.    Attached as Exhibit D is a check stub reflecting payment to TEC's ink dating expert in the amount of $3,000.00.  This sum has been paid to the expert.

23.    All of these expenses were incurred as a direct result of Mr. Plasse's misconduct and TEC's efforts to discover and remedy same.  As such, we request full reimbursement of these expenses, totaling $20,472.32.

5

24.    Attached hereto as Exhibit E is the decision in  Leon v. IDX Systems Corp., 03-cv-1158, Order Dismissing Plaintiff's Claims Due to Plaintiff's Spoliation of Evidence (dated September 30, 2004).

Signed under the pains and penalties of perjury.

_____
Dated  September 28, 2006                                    Mark Diana

4381543.1

# EXHIBIT A

| 1. Original Sanctions Motion To Dismiss | | | | |
|---|---|---|---|---|
| **Date** | **Atty** | **Activity** | **Time** | **Fee** |
| 3/1/2005 | MD | Review and revise reply brief in support of motion for sanctions. | 0.5 | 148 |
| 3/8/2005 | MD | Review Reply Brief and supporting affidavits in support of motion for sanctions. | 0.3 | 88.8 |
| 3/15/2005 | MD | Review and respond to email from local counsel, Jeff Clements, regarding motion hearing. | 0.3 | 88.8 |
| 3/18/2005 | MD | Conduct conference call with Mr. Clements regarding strategy. | 0.5 | 148 |
| 4/12/2005 | MD | Telephone conference with local counsel, Jeff Clements regarding motion and discovery strategy. | 0.3 | 88.8 |
| 4/13/2005 | MD | Telephone conference with Mr. Post and Mr. Clements regarding status of case and future motion strategy. | 0.5 | 148 |
| 4/13/2005 | LJS | Conference call with Mark Diana, Jeff Clements, and Charlie Post regarding depositions, pending motion to dismiss, and summary judgment. | 0.5 | 122 |
| 4/27/2005 | MD | Review motion papers in connection with motion to dismiss hearing. | 0.7 | 207.2 |
| 4/28/2005 | MD | Review file in preparation for hearing on sanctions motion. | 3 | 888 |
| 4/28/2005 | MD | Telephone conference with local counsel Mr. Clements regarding preparation for hearing; attend hearing. | 4 | 1184 |
| **TOTAL** | | | **10.6** | **3111.6** |

ODNSS Fees

## 2. Computer-Related Discovery Prior to Motion To Compel Discovery

| Date | Atty | Activity | Time | Fee |
|---|---|---|---|---|
| 4/15/2005 | LJS | Revisions to correspondence with plaintiff's counsel regarding defendant's position on outstanding discovery disputes. | 0.2 | 48.8 |
| 4/28/2005 | MD | Draft outline of computer inspection request letter to plaintiff's counsel. | 2 | 592 |
| 4/29/2005 | MD | Draft letter to plaintiff's counsel regarding computer inspection and original document request. | 2.7 | 799.2 |
| 5/2/2005 | MD | Review and revise Ms. Martin's comments on computer inspection/request letter. | 1.2 | 355.2 |
| 5/4/2005 | MD | Telephone conference with Mr. Post and Mr. Clements regarding status of discovery and sanctions motion. | 1 | 296 |
| 5/4/2005 | LJS | Preparation for and participation in conference call with Charlie Post, Jeff Clements, and Mark Diana. | 1.3 | 317.2 |
| 5/6/2005 | MD | Telephone conference with Ms. Martin and computer expert Mr. Spenser regarding computer inspection issues. | 0.5 | 148 |
| 5/6/2005 | MD | Revise letter to plaintiff's attorney regarding computer inspection. | 0.4 | 118.4 |
| 5/6/2005 | LJS | Conference call with Mark Spencer, Ingrid Martin, and Mark Diana regarding use of computer expert. | 0.5 | 122 |
| 5/12/2005 | MD | Review correspondence from Mr. Cahillane regarding computer inspection. | 0.4 | 118.4 |
| 5/12/2005 | MD | Draft response to letter from Mr. Cahillane regarding computer inspection. | 2.1 | 621.6 |
| 5/13/2005 | MD | Continued drafting reply letter to Mr. Cahillan regarding computer inspection. | 3.6 | 1065.6 |
| 5/25/2005 | MD | Review computer expert engagement information supplied by Ms. Martin. | 0.5 | 148 |
| 6/6/2005 | MD | Review expert engagement letter; execute same. | 0.2 | 59.2 |
| **TOTAL** | | | **16.6** | **4809.6** |

ODNSS Fees

| 3. Motion to Compel Computer-Related Discovery | | | | |
|---|---|---|---|---|
| **Date** | **Atty** | **Activity** | **Time** | **Fee** |
| 5/16/2005 | MD | Email to Ms. Martin regarding discovery motion procedure. | 0.2 | 59.2 |
| 5/17/2005 | MD | Gather materials for motion to compel computer inspection. | 3.2 | 947.2 |
| 5/17/2005 | LJS | Review of sample motions to compel computer inspection. | 0.8 | 195.2 |
| 5/18/2005 | MD | Compile materials for Motion to Compel computer inspection and conduct research regarding motion to compel computer inspections. | 3.2 | 947.2 |
| 5/23/2005 | MD | Draft outline of Motion to Compel computer inspection. | 0.5 | 148 |
| 5/23/2005 | LJS | Conference with Mark Diana regarding motion for computer inspection. | 0.3 | 73.2 |
| 5/25/2005 | MD | Email to Ms. Martin summarizing computer inspection motion strategy. | 1.8 | 532.8 |
| 5/26/2005 | LJS | Review of 4/28/05 hearing transcript. | 0.7 | 170.8 |
| 5/26/2005 | LJS | Review of caselaw regarding computer inspections. | 1.5 | 366 |
| 5/27/2005 | MD | Respond to Ms. Martin's email regarding computer inspection. | 0.3 | 88.8 |
| 5/27/2005 | LJS | Continued review of caselaw regarding computer inspection. | 1.5 | 366 |
| 5/30/2005 | MD | Draft Brief in support of Motion to Compel Computer Inspection. | 3.5 | 1036 |
| 5/30/2005 | LJS | Continued review of research regarding computer inspection. | 3.3 | 805.2 |
| 5/31/2005 | MD | Continue drafting brief in support of Motion to Compel Computer Inspection. | 5.3 | 1568.8 |
| 6/1/2005 | MD | Continued drafting of Brief in support of Motion to Compel computer inspection. | 3.7 | 1095.2 |
| 6/1/2005 | LJS | Preparation of motion to compel computer inspection. | 3.7 | 902.8 |
| 6/2/2005 | MD | Revise Brief in Support of Motion to Compel Computer Inspection. | 1 | 296 |
| 6/2/2005 | LJS | Continued preparation of motion to compel computer inspection. | 5.5 | 1342 |
| 6/2/2005 | LJS | Telephone call with Ingrid Martin regarding expert affidavit and motion to compel computer inspection. | 0.1 | 24.4 |
| 6/2/2005 | LJS | Research regarding computer inspections. | 1.3 | 317.2 |

ODNSS Fees

| 6/3/2005 | MD | Attend Scheduling Conference to discuss computer-relaetd discovery issues; conferences with Mr. Clements regarding same | 5 | 1480 |
|---|---|---|---|---|
| 6/5/2005 | LJS | Revisions to brief regarding motion to compel computer inspection. | 1.7 | 414.8 |
| 6/6/2005 | MD | Interoffice conference with Ms. Slivinsky regarding revisions to Motion to Compel Computer Inspection. | 0.5 | 148 |
| 6/6/2005 | LJS | Conference with Mark Diana regarding scheduling conference and comments on draft motion to compel brief. | 0.4 | 97.6 |
| 6/6/2005 | LJS | Preparation of email correspondence with local counsel, Ingrid Martin, regarding status of computer expert's affidavit and additional papers to be filed with brief. | 0.3 | 73.2 |
| 6/6/2005 | LJS | Revisions to brief regarding motion to compel computer inspection. | 0.8 | 195.2 |
| 6/8/2005 | LJS | Review of caselaw regarding court-appointed experts; continued revisions to brief regarding motion to compel computer inspection. | 4 | 976 |
| 6/9/2005 | MD | Review brief in support of Motion to Compel Computer Inspection. | 1.3 | 384.8 |
| 6/9/2005 | LJS | Continued review of research regarding computer inspections; Continued preparation of motion to compel. | 5.5 | 1342 |
| 6/9/2005 | LJS | Preparation of email correspondence with local counsel regarding draft revised motion papers. | 0.3 | 73.2 |
| 6/10/2005 | MD | Revise Motion to Compel Computer Inspection. | 1 | 296 |
| 6/10/2005 | LJS | Revisions to motion to compel computer inspection. | 4 | 976 |
| 6/12/2005 | LJS | Review of research articles regarding court appointed experts. | 3 | 732 |
| 6/13/2005 | LJS | Telephone call with Ingrid Martin confirming exhibits to motion. | 0.1 | 24.4 |
| 6/27/2005 | MD | Review plaintiff's opposition to Motion to Compel Computer Inspection. | 1.7 | 503.2 |
| 6/27/2005 | LJS | Review of reply to plaintiff's partial opposition to motion to compel and preparation of motion for leave to file reply. | 0.5 | 122 |
| 6/27/2005 | LJS | Preparation of email correspondence with local counsel regarding draft motion for leave to reply. | 0.2 | 48.8 |
| **TOTAL** | | | **71.7** | **19169.2** |

ODNSS Fees

| 4.  Ink Dating Analysis | | | Time | Fee |
|---|---|---|---|---|
| Date | Atty | Activity | | |
| 7/15/2005 | MD | Review original documents received from plaintiff for ink dating purposes. | 0.6 | 177.6 |
| 7/15/2005 | MD | Telephone conference with ink dating expert, [name redacted] regarding same. | 0.3 | 88.8 |
| 7/22/2005 | MD | Telephone conference with ink drafting expert [name redacted] regarding documents examination. | 0.7 | 207.2 |
| 7/22/2005 | MD | Email to Mr. Clement regarding ink dating analysis. | 0.3 | 88.8 |
| 7/26/2005 | MD | Email to ink dating expert [name redacted] regarding analysis. | 0.2 | 59.2 |
| 8/1/2005 | MD | Telephone conference with [name redacted] regarding status of ink dating analysis. | 0.3 | 88.8 |
| TOTAL | | | 2.4 | 710.4 |

ODNSS Fees

| 5. Computer-Related Discovery After Motion to Compel Discovery | | | | |
|---|---|---|---|---|
| Date | Atty | Activity | Time | Fee |
| 7/21/2005 | MD | Review outline for plaintiff's deposition regarding computer production. | 1 | 296 |
| 7/21/2005 | MD | Telephone conference with Ms. Martin regarding computer deposition. | 0.8 | 236.8 |
| 7/22/2005 | MD | Telephone conference with Ms. Martin and Mr. Clements regarding computer inspection deposition and next steps. | 0.7 | 207.2 |
| 7/27/2005 | MD | Telephone conferences with Mr. Clements and Ms. Martin regarding initial computer expert report. | 0.6 | 177.6 |
| 7/27/2005 | LJS | Confer with Mark Diana regarding preliminary analysis of computer expert. | 0.2 | 48.8 |
| 7/28/2005 | MD | Telephone conference with L.J. Slivinski regarding computer inspection outcome. | 0.5 | 148 |
| 7/28/2005 | LJS | Conference call with local counsel and computer expert. | 2.1 | 512.4 |
| 7/28/2005 | LJS | Confer with Mark Diana regarding computer expert's findings. | 0.2 | 48.8 |
| 7/29/2005 | MD | Review documents supplied from computer expert after inspection of plaintiff's computer. | 0.3 | 88.8 |
| 8/2/2005 | MD | Telephone conference with  Mr. Clements regarding computer inspection results and sanctions motion. | 0.9 | 266.4 |
| 8/5/2005 | MD | Telephone conference with Ms. Martin regarding sanctions motion and expert report and review of expert report format. | 1 | 296 |
| 8/12/2005 | MD | Multiple emails to and from local counsel (Ms. Martin) regarding forensic computer expert findings and report. | 0.5 | 148 |
| TOTAL | | | 8.8 | 2474.8 |

ODNSS Fees

## 6. Renewed Sanctions Motion to Dismiss

| Date | Atty | Activity | Time | Fee |
|------|------|----------|------|-----|
| 8/15/2005 | MD | Review expert report from forensic computer expert and summarize same for renewed sanctions motion. | 2.3 | 680.8 |
| 8/16/2005 | MD | Continued review of expert forensic report and preparation of motion outline. | 4.7 | 1391.2 |
| 8/16/2005 | MD | Draft email to Mr. Post regarding status of computer inspection and future strategy. | 0.5 | 148 |
| 8/16/2005 | LJS | Receipt and review of computer expert's Preliminary Report. | 0.3 | 73.2 |
| 8/16/2005 | LJS | Receipt and review of draft outline of brief in support of renewed sanctions motion. | 0.2 | 48.8 |
| 8/17/2005 | MD | Continued preparation of renewed motion to dismiss/sanctions motion. | 4.6 | 1361.6 |
| 8/17/2005 | MD | Telephone conference with Ms. Martin, Ms. Slivinski and Mr. Clements regarding sanctions motion. | 0.6 | 177.6 |
| 8/17/2005 | MD | Telephone conference with Ms. Martin, Mr. Spencer regarding expert report. | 1.1 | 325.6 |
| 8/17/2005 | LJS | Conference call with Mark Diana, Jeff Clements, and Ingrid Martin regarding computer expert's report and motion for sanctions. | 0.6 | 146.4 |
| 8/17/2005 | LJS | Receipt and review of transcript of plaintiff's recent deposition. | 0.5 | 122 |
| 8/17/2005 | LJS | Receipt and review of email correspondence from Jeff Clements regarding comments to draft outline for sanctions motion. | 0.1 | 24.4 |
| 8/18/2005 | MD | Continued drafting of Brief in Support of Motion to Dismiss. | 2 | 592 |
| 8/19/2005 | MD | Continue drafting Brief in Support of Motion to Dismiss. | 3.7 | 1095.2 |
| 8/19/2005 | LJS | Review of and revisions to draft brief in support of renewed motion for sanctions. | 1.5 | 366 |
| 8/22/2005 | MD | Revise sanctions motion brief. | 0.9 | 266.4 |
| 8/23/2005 | MD | Telephone conference with Mr. Clements regarding status of sanction motion filing. | 0.3 | 88.8 |
| 8/23/2005 | LJS | Exchange of emails with Ms. Martin regarding renewed motion for sanctions. | 0.5 | 122 |

ODNSS Fees

| 8/30/2005 | LJS | Review of email correspondence from Ingrid Martin regarding finalized draft of renewed sanctions motion and preparation of email correspondence with Ms. Martin advising of my revisions. | 1 | 244 |
|---|---|---|---|---|
| 9/6/2005 | MD | Telephone conference with Mr. Clements regarding filing of motion for sanctions. | 0.2 | 59.2 |
| 9/27/2005 | MD | Review plaintiff's Brief in Opposition to Motion for Sanctions. | 0.9 | 266.4 |
| 9/27/2005 | MD | Telephone conference with Mr. Clements regarding motion opposition. | 0.5 | 148 |
| 9/27/2005 | MD | Draft outline for Motion Sanctions Reply Brief. | 3 | 888 |
| 9/28/2005 | MD | Draft Reply Brief in support of Motion for Sanctions. | 7.3 | 2160.8 |
| 9/28/2005 | LJS | Receipt and review of plaintiff's expert's affidavit. | 0.1 | 24.4 |
| 9/29/2005 | MD | Continued drafting Reply Brief in support of Motion for Sanctions. | 1.7 | 503.2 |
| 10/4/2005 | MD | Review and revise reply Brief in support of sanctions. | 1 | 296 |
| 10/5/2005 | MD | Continue review and revisions to Reply Brief. | 0.3 | 88.8 |
| 10/6/2005 | MD | Finalize Reply Brief in Support of Sanctions Motion. | 6.4 | 1894.4 |
| 10/6/2005 | LJS | Receipt and review of and revisions to draft reply brief regarding renewed motion to dismiss. | 1 | 244 |
| 10/7/2005 | MD | Revise Reply Brief in support of sanctions. | 0.2 | 59.2 |
| 11/16/2005 | MD | Prepare for and conduct oral argument on Motion to Dismiss. | 5 | 1480 |
| 11/17/2005 | MD | Draft supplemental Brief in Support of Sanctions Motion. | 2 | 592 |
| 11/18/2005 | MD | Draft Supplemental Sanctions Brief. | 5.7 | 1687.2 |
| 11/21/2005 | MD | Continue drafting Supplemental Sanctions Brief. | 2.5 | 740 |
| 11/21/2005 | LJS | Research regarding dismissal as appropriate sanction for destruction of electronic evidence. | 4.1 | 1000.4 |
| 11/22/2005 | LJS | Continued research regarding dismissal as sanction. | 1.1 | 268.4 |
| 11/23/2005 | MD | Research additional case law supporting dismissal as sanction. | 3.5 | 1036 |
| 11/28/2005 | MD | Finalize Supplemental Brief in Support of Sanctions Motion. | 3.3 | 976.8 |
| 12/2/2005 | MD | Review plaintiff's Supplemental Sanctions Brief. | 0.3 | 88.8 |
| 12/2/2005 | MD | Email to Mr. Post regarding status of sanctions motion. | 0.3 | 88.8 |

ODNSS Fees

| 6/14/2006 | MD | Review recent sanctions decision from Massachusetts State Court. | 0.4 | 118.4 |
|-----------|-----|------------------------------------------------------------------|-----|-------|
| **TOTAL** | | | **76.2** | **21983.2** |

ODNSS Fees

| SUMMARY | Hours | Fees |
|---|---|---|
| 1.  Original Sanctions Motion To Dismiss | 10.6 | 3111.60 |
| 2. Computer-Related Discovery Prior to Motion To Compel Discovery | 16.6 | 4809.60 |
| 3.  Motion to Compel Computer-Related Discovery | 71.7 | 19169.20 |
| 4.  Ink Dating Analysis | 2.4 | 710.40 |
| 5. Computer-Related Discovery After Motion to Compel Discovery | 8.8 | 2474.80 |
| 6. Renewed Sanctions Motion to Dismiss | 76.2 | 21983.20 |
| Total | 186.3 | 52258.80 |
| 10% Discount | | (-) 5225.88 |
| **ENDING TOTAL BALANCE** | | **47032.92** |

# EXHIBIT B


**EvidentData**
We Find Answers
8380 Maple Place, Suite 140
Rancho Cucamonga, CA 91730
TEL: 909.948.7714  FAX: 909.948.4365

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/30/2005 | 21697 |

Bill To

Ogletree, Deakins, Nash, Smoak & Steward,
Mark Diana, Esquire
10 Madison Avenue
Suite 402
Morristown, NJ 07960

| Terms | Project | Contact |
|-------|---------|---------|
| Due on receipt | Tyco-052305 | |

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 5/23/2005 | Expert Consulting (P. Garza)<br>Worked on declaration regarding inspection of computer systems and media.  Telephone calls with M. Spencer. | 2.25 | 375.00 | 843.75 |
| 5/24/2005 | Expert Consulting (M. Spencer)<br>Assisting with P. Garza's declaration. | 0.5 | 375.00 | 187.50 |
| 5/27/2005 | Expert Consulting (P. Garza)<br>Assisting with P. Garza's updated declaration per Ingrid Martin's requests. | 0.5 | 375.00 | 187.50 |
| 6/3/2005 | Expert Consulting (P. Garza)<br>Worked with M. Spencer on revised declaration regarding inspection of computer systems and media. | 2 | 375.00 | 750.00 |
| 6/7/2005 | Expert Consulting (P. Garza)<br>Worked on draft of declaration.  Participated on a teleconference call with M. Spencer and Ingrid Martin. | 3 | 375.00 | 1,125.00 |
| 6/8/2005 | Expenses<br>Shipping Expense (P. Garza)<br>Original signed declaration sent out Federal Express overnight letter.  Tracking number 792302858086. | 1 | 13.85 | 13.85 |

| | |
|---|---|
| **Total** | $3,107.60 |
| **Payments/Credits** | S-3,107.60 |
| **Balance Due** | $0.00 |



**We Find Answers**
8380 Maple Place, Suite 140
Rancho Cucamonga, CA 91730
TEL: 909.948.7714  FAX: 909.948.4365

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/31/2005 | 21717 |

| Bill To |
|---------|
| Ogletree, Deakins, Nash, Smoak & Steward,<br>Mark Diana, Esquire<br>10 Madison Avenue<br>Suite 402<br>Morristown, NJ 07960 |

| Terms | Project | Contact |
|-------|---------|---------|
| Due on receipt | Tyco-052305 | |

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 7/6/2005 | Data Acquisition Consulting (M. Spencer)<br>Discussed status of case and moving forward with Ingrid Martin. | 0.25 | 250.00 | 62.50 |
| 7/20/2005 | Data Acquisition Consulting (M. Spencer)<br>Reviewed Plasse Computer Deposition Outline.<br>Discussed with O. Yong. E-mailed Ingrid Martin comments. | 0.5 | 250.00 | 125.00 |
| 7/26/2005 | Data Acquisition (Non-tape)(M. Spencer)<br>Traveled to Egan, Flanagan & Cohen in Springfield and obtained forensic image backups of Mr. Plasse's laptop and eight(8) floppy disks. Obtained logical images of 13 CDs. Returned to EvidentData. | 9.25 | 250.00 | 2,312.50 |
| 7/27/2005 | Forensic Analysis (M. Spencer)<br>Created working copy of images - Mr. Plasse's laptop, eight(8) floppy disks, and 13 CDs. Verified and began analysis. Ran search terms, scripts, and reviewed file system to identify relevant data. Discussed status with Ingrid Martin. Restored laptop image to extract Internet History. | 8 | 200.00 | 1,600.00 |
| 7/28/2005 | Forensic Analysis (M. Spencer)<br>Continued analysis of Mr. Plasse's floppy disks and laptop. Discussed findings with Ingrid Martin and Jeff Clements. | 6 | 200.00 | 1,200.00 |
| 7/26/2005 | Expenses<br>(1) 80 GB hard drive to archive Mr. Plasse Laptop, floppy, and CD images. | 1 | 109.00 | 109.00 |

| Total | $5,409.00 |
|-------|-----------|
| **Payments/Credits** | $-5,409.00 |
| **Balance Due** | $0.00 |


**EvidentData**
We Find Answers
8380 Maple Place, Suite 140
Rancho Cucamonga, CA 91730
TEL: 909.948.7714 FAX: 909.948.4365

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/31/2005 | 21729 |

**Bill To**

Ogletree, Deakins, Nash, Smoak & Steward,
Mark Diana, Esquire
10 Madison Avenue
Suite 402
Morristown, NJ 07960

| Terms | Project | Contact |
|-------|---------|---------|
| Due on receipt | Tyco-052305 | |

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 8/2/2005 | Forensic Analysis (M. Spencer) Continued review of Mr. Plasse laptop and floppy disks. Reviewed Windows Shortcuts for resume related activity. Investigating references to resumes in Outlook Express e-mail data files. | 4.5 | 200.00 | 900.00 |
| 8/3/2005 | Forensic Analysis (M. Spencer) Prepared for meeting with Ingrid Martin and Jeff Clements. Met with Ingrid and Jeff to discuss findings, open issues, and moving forward. | 4 | 200.00 | 800.00 |
| 8/4/2005 | Forensic analysis (M. Spencer) Began research and testing of issues discussed at 08/03/05 meeting with Ingrid Martin and Jeff Clements. Worked with Staff on research and testing. Developed report outline and discussed with Ingrid Martin. | 4.5 | 200.00 | 900.00 |
| 8/5/2005 | Forensic Analysis (M. Spencer) Began Tyco - James Plasse Preliminary Review report. Working with staff on research tasks. Discussed status with Ingrid Martin. | 2 | 200.00 | 400.00 |
| 8/8/2005 | Forensic Analysis (M. Spencer) Continued work on Tyco - James Plasse Preliminary Review report. | 4 | 200.00 | 800.00 |
| 8/9/2005 | Forensic Analysis (M. Spencer) Research unexpected date and time stamps, focused on Security System Events. Continued work on report. Worked with staff on Windows System Restore/Windows Shortcut interaction research. | 5 | 200.00 | 1,000.00 |
| 8/10/2005 | Reporting (M. Spencer) Discussed report status with Ingrid Martin. Began adding definitions of terms and more detail to report. | 2 | 250.00 | 500.00 |

| | **Total** | |
|---|---|---|
| | **Payments/Credits** | |
| | **Balance Due** | |



**EvidentData**
We Find Answers
8380 Maple Place, Suite 140
Rancho Cucamonga, CA 91730
TEL: 909.948.7714  FAX: 909.948.4365

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/31/2005 | 21729 |

**Bill To**

Ogletree, Deakins, Nash, Smoak & Steward,
Mark Diana, Esquire
10 Madison Avenue
Suite 402
Morristown, NJ 07960

| Terms | Project | Contact |
|-------|---------|---------|
| Due on receipt | Tyco-052305 | |

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 8/11/2005 | Reporting (M. Spencer)<br>Performed follow-up review, continued work on report.<br>Organized exhibits. | 4 | 250.00 | 1,000.00 |
| 8/12/2005 | Reporting (M. Spencer)<br>Continued report.  Added section on Most Recently Used (MRU) lists.  Continued to work with staff on Windows Restore/Windows Shortcut testing.  Sent draft report to staff for comment.  Discussed status with Ingrid Martin. | 5 | 250.00 | 1,250.00 |
| 8/15/2005 | Reporting (M. Spencer)<br>Incorporated suggestions from staff and completed James Plasse Preliminary Review report.  Sent cover letter, CD containing report and exhibits, and printed report to Ingrid Martin and Mark Diana via Fed Ex Priority Overnight. | 3 | 250.00 | 750.00 |
| 8/17/2005 | Case Management (M. Spencer)<br>Conference call with Ingrid Martin and Mark Diana. | 0.5 | 250.00 | 125.00 |
| 8/18/2005 | Case Management (M. Spencer)<br>Updated James Passe Preliminary Review report per Ingrid Martin and Mark Diana's directions.  Sent out via FedEx priority overnight in hard copy and on CD with cover letter. | 1.25 | 250.00 | 312.50 |
| | Expenses | | | |
| 8/15/2005 | Shipping Expense (M. Spencer)<br>Sent James Plasse Preliminary Review report to Mark Diana at Ogletree via FedEx Priority Overnight.<br>Tracking #790611210692. | 1 | 10.60 | 10.60 |
| 8/15/2005 | Shipping Expense (M. Spencer) | 1 | 9.01 | 9.01 |

| | | |
|---|---|---|
| | **Total** | |
| | **Payments/Credits** | |
| | **Balance Due** | |



**We Find Answers**
8380 Maple Place, Suite 140
Rancho Cucamonga, CA 91730
TEL: 909.948.7714  FAX: 909.948.4365

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/31/2005 | 21729 |

**Bill To**

Ogletree, Deakins, Nash, Smoak & Steward,
Mark Diana, Esquire
10 Madison Avenue
Suite 402
Morristown, NJ 07960

| Terms | Project | Contact |
|-------|---------|---------|
| Due on receipt | Tyco-052305 | |

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 8/18/2005 | Sent James Plasse Preliminary Review report to Ingrid Martin at Clements via FedEx Priority Overnight. Tracking #792501135475. Shipping Expense (M. Spencer) | 1 | 10.60 | 10.60 |
| 8/18/2005 | Sent updated James Plasse Preliminary Review report to Mark Diana at Ogletree via FedEx Priority Overnight. Tracking #790123768224. Shipping Expense (M. Spencer) | 1 | 9.01 | 9.01 |
| | Sent updated James Plasse Preliminary Review report to Ingrid Martin at Clements via FedEx Priority Overnight. Tracking #792361579660. | | | |

| | |
|---|---|
| **Total** | $8,776.72 |
| **Payments/Credits** | $-8,776.72 |
| **Balance Due** | $0.00 |

# EXHIBIT C



# CURRAN COURT REPORTING
### Professional Shorthand Reporters

Tel. (781) 279-8400                                          Fax  (781) 279-8488

# Invoice

| FEDERAL I.D. # | 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 |
|---|---|

| DATE | 8/2/2005 |
|---|---|

**BILL TO**

Clements & Clements, LLP
Jeffrey D. Clements, Esquire
50 Federal Street
Boston, MA 02110

| INVOICE # | 3377 |
|---|---|

**NAME OF CASE:**

James M. Plasse vs. Tyco Electronics Corporation

| TERMS | REPORTER | JOB NAME |
|---|---|---|
| Net 30 | Nancy M. Walsh | 072205JP |

| DATE | DEPOSITION OF: | ORIG/COPY | NO. OF PAGES | RATE | AMOUNT |
|---|---|---|---|---|---|
| 7/22/2005 | James M. Plasse Volume 3 Minimum Transcript Fee ASCII Disk | Original minimum fee ASCII Disk | 28 <br> 1 | 0.00 <br> 150.00 <br> 25.00 | 0.00 <br> 150.00 <br> 25.00 |
| | | Postage/Handl | 1 | 4.00 | 4.00 |

Please make checks payable to Jacqueline Curran d/b/a
Curran Court Reporting.  Federal ID # 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.

| **Total** | $179.00 |
|---|---|

21 Rowe Hill Road
Stoneham, Massachusetts 02180
E-mail:  currancourtrep@yahoo.com

# EXHIBIT D

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

DATE:    07-18-05                PAYEE:    [NAME REDACTED]          PAYEE #:    215036        211354

| DATE | VOUCHER NUMBER | INVOICE NUMBER | DESCRIPTION | G/L ACCT NO. | NET AMOUNT |
|------|------|------|------|------|------|
| 07-15 05 | 342009 | Retainer Fee | | 07012101 | $3,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL | | $3,000.00 |

# EXHIBIT E

1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

7

MAURICIO LEON,

8

Plaintiff,

No. C03-1158P

9

v.

10

IDX SYSTEMS CORPORATION et al.,

ORDER DISMISSING PLAINTIFF'S
CLAIMS  DUE TO PLAINTIFF'S
SPOLIATION OF EVIDENCE

11

Defendants.

12

13

14

This matter comes before the Court on Defendant's Motion to Dismiss and for Terms re:

15

Spoliation of Evidence and Plaintiffs' Response.  Defendant IDX seeks dismissal of this case or other

16

appropriate sanctions against Plaintiff Dr. Mauricio Leon for having erased data relevant to the

17

litigation from the hard-drive of his IDX-issued computer using a wiping program that he created

18

after he had notice of the pendency of the litigation.   Having reviewed the papers and the pleadings

19

submitted by the parties, and having heard oral argument on the issues and reviewed the video

20

transcript of Dr. Leon's deposition, the Court hereby GRANTS Defendant's motion.  Plaintiff's

21

claims are hereby DISMISSED.  In addition, Plaintiff shall pay Defendants $65,000.00 to reimburse

22

them for the expense incurred in investigating and litigating the issue of spoliation.

23

BACKGROUND

24

This matter originally came before the Court as two related cases.  On April 25, 2003, IDX

25

Systems Corporation ("IDX") brought an action for declaratory relief, essentially seeking a

26

declaration that it can terminate Dr. Mauricio Leon's employment without violating the anti-

ORDER - 1

retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h), the Sarbanes-Oxley Act of 2002,

and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq or its State law

counterpart, the Washington Law Against Discrimination ("WLAD"), RCW 49.60. On May 20,

2003, Dr. Leon filed his own complaint for damages and injunctive relief, including claims for

retaliation under the False Claims Act, violations of the ADA and WLAD, and state common law

claims of wrongful termination, fraudulent inducement, and negligent and intentional infliction of

emotional distress. The Court ordered the cases to be consolidated, with Dr. Leon as the plaintiff in

name.

Dr. Mauricio Leon began his employment with IDX in May of 2001 pursuant to an "at-will"-

style employment agreement. His job title was "Senior Director, Medical Information," and he was

allegedly compensated at an annual salary of $160,000 plus bonus payments. His job duties included

involvement with what was known as the "SAGE" project, a project funded through the National

Institute for Standards and Technology ("NIST") for the purpose of developing software tools and

technologies in the area of medical informatics.

Both parties allege that in mid-2002 Dr. Leon began complaining of mismanagement of the

SAGE project, claiming that certain aspects of the cost-sharing reporting may be illegal. By

September 9, 2002, it appears that serious disagreements had arisen between the parties. IDX

alleges that on this date Dr. Leon demanded an exorbitant severance package in exchange for his

silence regarding alleged federal false claims. In any case, it appears that Dr. Leon worked

intermittently through several stints of different types of administrative and medical leave during the

next several months. Over this time, Dr. Leon also alleges that IDX was violating the False Claim

Act through "various illegal and fraudulent activities" and through its hindrance of various audits of

the SAGE program grant. Dr. Leon also claims that IDX constructively discharged him, and failed to

accommodate his stress-related disability by allowing him to telecommute.

IDX served the summons on its complaint on April 28, 2003. On April 30, and on May 7,

2003, IDX's attorneys sent letters to Dr. Leon's attorney, asking that Dr. Leon return the IDX-issued

ORDER - 2

laptop computer in his possession to IDX. (Taylor Decl., Exs. A, B). On May 8, 2003, Dr. Leon's

attorney responded to IDX's request in writing and asked if Dr. Leon could keep the laptop so that

he could assist auditors who were in the process of auditing the Sage Project. (Id., Ex. C). On May

9, 2003, counsel for IDX responded that Dr. Leon could keep the laptop for the "specific purpose" of

responding to SAGE Project auditors, should they need to speak with him. (Id., Ex. D). Both the

April 30 and the May 9 letters cautioned Dr. Leon's counsel that Dr. Leon should take care to

preserve all data on the computer and to make sure no information was lost.

By July 11, 2003, the SAGE Project auditors had completed their task. (Id. at ¶ 8). Around

this time, Dr. Leon's counsel withdrew from the case and he hired his current counsel. By October

24, 2003, counsel for both sides were again negotiating for the return of the laptop. (Id. at ¶¶ 9, 10).

Not until January 21, 2004, were both sides able to strike a deal. (Calfo Decl., Ex. A). IDX's

computer forensics expert took delivery of the laptop on February 5, 2004. (Norberg Decl., at ¶2).

IDX's expert reported in a declaration submitted to the Court that during his examination of

Dr. Leon's computer, he noticed that "all data in the hard drive's unallocated space (*i.e.* the space

where data that has purportedly been deleted by the user is housed) was intentionally wiped. . ." (Id.

at ¶5). Additionally, the forensics expert determined that the computer had been used to view and

download pornographic files, in contravention of IDX company policy. (Id. at ¶8). Both of these

conclusions are supported by Dr. Leon's testimony in a May 13, 2004, deposition.

Dr. Leon, in his deposition, admits deleting entire directories of personal files as early as

October 2002, and after he was placed on leave by IDX in April 2003. He describes these files as

family pictures and personal financial information, which he deleted by directory, rather than one-by-

one. (Gross Decl. at 9-12).    Later in the deposition, Mr. Leon also states that in the week before he

shipped the computer back to IDX he wrote a program to write over or "wipe" any deleted files from

the unallocated space in the IDX laptop's hard-drive. (Id. at 16-21). According to Dr. Leon, his

program would not allow a subsequent user to read the files he had deleted, but an identifying tail or

head of the data would remain. (Id. at 19). IDX's computer forensics expert observed that Dr.

ORDER - 3

1  Leon's program deleted more than 2,000 files from the hard-drive of his computer. (Norberg Decl. at

2  3). Although Dr. Leon alleges that the purpose of his wiping program was to make sure that

3  someone would not be able to see the personal files that he deleted, at least some of the remaining

4  identifiers of the deleted files reveal that some of the wiped files could have pertained to Dr. Leon's

5  work at IDX or the SAGE project. Additionally, many of the wiped files appear to be of a

6  pornographic nature. (Norberg Decl., Exs. A, B).[1]

7                                   ANALYSIS

8       Federal trial courts are vested with a wide range of inherent powers that allow them to govern

9  their courtrooms and the litigation processes before them. Chambers v. Nasco, 501 U.S. 32, 43

10  (1991). An example of these inherent powers is the discretionary power of a federal trial court to

11  levy appropriate sanctions against a party who prejudices its opponent through the spoliation of

12  evidence that the spoliating party had reason to know was relevant to litigation. Glover v. Bic

13  Corporation, 6 F. 3d 1318 (9th Cir. 1993). Inherent powers must be used only with restraint and

14  discretion. Chambers, 501 U.S. at 44. In order to sanction a party to litigation for spoliation of

15  evidence the Court must determine first whether or not there was a duty to preserve the evidence at

16  issue. Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991). If a duty existed,

17  the court must also consider the prejudice suffered by the non-spoliating party and the level of

18  culpability of the spoliator. After considering these factors, a court must then consider all available

19  sanctions and determine the appropriate one. See e.g. Fujitsu Ltd. v. Federal Express Corp, 247 F.

20  3d 423 (2nd Cir. 2001); Wm. T. Thompson Co. v. GNC, 593 F. Supp. 1443 (C.D. Cal. 1984).

21       I. Did Dr. Leon Have a Duty to Preserve Data on His IDX-issued Laptop?

22

23

24       [1] A week after oral argument was heard on the issue of spoliation, Dr. Leon came forward with
an unsolicited statement that he had allegedly made backup copies of his laptop's hard-drive before he
25  ran the wiping program. He had not revealed this information during his deposition. This self-serving
revelation will not be credited by the Court at this late date, however, because Mr. Leon's credibility on
26  this matter is questionable, his revelation is untimely, and there is no way to verify whether these backups
are full, true copies of the original hard-drive in dispute.

ORDER - 4

1    A litigant or potential litigant is under a duty to preserve evidence in his possession that he

2  knows or should know is relevant to litigation or which might lead to the discovery of admissible

3  evidence. Id.. 593 F. Supp. 1443 at 1455.  Courts have applied this principle even when a complaint

4  has not yet been filed. Turner, 142 F.R.D. at 73 (citing Callelupo v. FMC Corp. 126 F.R.D. 545 (D.

5  Minn. 1989)).  In Callelupo the court found that an employer had notice of a pending class action a

6  month before the complaint was served, based on conversations that the plaintiff in that case had had

7  with the company's equal employment opportunity manager several months before the litigation

8  formally began.  126 F.R.D. at 550.  As a result, the Callelupo court held that destruction of evidence

9  after this date was sanctionable.  Id.  In the case at hand, Dr. Leon threatened IDX with litigation as

10  early as September 2002.  By April 25, 2003, IDX had filed an action for declaratory relief.  On April

11  30 and May 7, Dr. Leon's counsel had received letters regarding the litigation and expressly

12  cautioning Dr. Leon to ensure that no data was lost on his computer.  This Court finds Dr. Leon

13  knew or should have known that he was in possession of evidence relevant to pending litigation by

14  April 30, 2004.  Thus, Dr. Leon had a duty to preserve evidence in his possession no later than this

15  date.  Any spoliation that took place after this date is sanctionable.

16    II.  Is IDX Prejudiced by the Loss of Evidence from Dr. Leon's Laptop?

17    Before Dr. Leon returned the laptop to IDX, Dr. Leon's counsel acknowledged in an October

18  24, 2003, email to IDX attorneys that both sides recognized the relevance of the material on the

19  laptop stating that: "in many instances the files are the original form of potentially relevant evidence."

20  (Turner Decl. Ex. E).    By purposely creating a program to wipe the hard-drive of "potentially

21  relevant evidence," Dr. Leon has precluded IDX from using any information that may have been

22  stored in the hard-drive in its defense.  Although Dr. Leon claims that he only wiped personal files,

23  there is evidence (as discussed above) that not everything that was erased was personal.  The Court

24  knows from Dr. Leon's own deposition testimony that he was not, in fact, meticulously selective

25  about the information he wiped, but that he chose to delete entire directories without verifying their

26  contents.  Defendants aptly note that, "Leon was not entitled to make unilateral decisions as to what

information on his laptop was relevant to this suit based on his subjective determination of what he

considered "personal." (Defs.' Reply at 5).   Indeed, there could be a wealth of "personal" material

that could be relevant to Dr. Leon's ADA and employment-related claims.   Defendants give

examples of what might have been in Dr. Leon's personal directories that could have helped their

case: Dr. Leon's correspondence with Realtors, financial institutions, friends or family would be

relevant to the timing of his decision to resign from IDX; communications with Dr. Leon's health care

providers or friends and family regarding the stress-related illness he allegedly developed while

working at IDX would be relevant to his ADA claims; efforts to find other employment or start a

business instead of remaining with IDX could also be relevant. (Defs.' Reply at 5).  The point is that

because of Dr. Leon's actions there is now no way of knowing what might have been stored on the

laptop's hard-drive and no reliable way of recreating what might have been there.   Under these

circumstances, a party responsible for the destruction of potential evidence has no right to a

presumption that the documents destroyed were irrelevant.  National Assen of Radiation Survivors v.

Turnage, 115 F.R.D. 543, 557 (N.D. Cal., 1987) (quoting Alexander v. National Farmers Org., 687

F. 2d 1173 (8th Cir. 1982)).  On the contrary, courts must draw the strongest inferences allowable in

favor of the party denied access to potentially relevant evidence.  Id.

Leon's counsel suggests that IDX is not prejudiced because: 1) IDX had sole possession of

Dr. Leon's laptop for three weeks starting September 11, 2002, when Dr. Leon was escorted out of

the IDX building because of the parties' dispute, and 2) Dr. Leon was on the IDX network and may

have sent much of the material on his computer over the network at some time.  Plaintiffs assert that

IDX employees had a chance to inspect the contents of Dr. Leon's computer either while it was in

their possession or because a portion of the contents of Dr. Leon's laptop is probably located

somewhere on IDX's network.  This argument, however, does not hold up under scrutiny.  First,

much of what might have been pertinent to IDX's defense would have been created after October

2002, during the year when the relationship between the parties was at its most contentious.  Second,

Dr. Leon stated in his deposition that he wiped his hard drive specifically to avoid having IDX

ORDER - 6

officials see what was there. (Calfo Decl. at 15).  This same impulse would also probably have kept

him from sending sensitive information about his SAGE project observations, health issues or other

employment-related concerns over the IDX network.  Additionally, there is no evidence that he

shared his pornographic web browsing on the IDX network because this would have violated

company policy, as did his use of the laptop for this purpose.  Because the type of evidence just

discussed would likely be at the heart of IDX's defense were it available, this Court finds that Dr.

Leon's wiping of the laptop hard-drive severely prejudices Defendants.

### III.  Dr. Leon's Culpability

Willful spoliation occurs when a party has clear notice of an obligation to preserve evidence

and proceeds to intentionally destroy evidence in spite of its obligation not to.  Computer Associates

Int'l.v. American Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo., 1990).  Under the most lenient

interpretation, Dr. Leon's behavior amounts to willful spoliation of evidence because he knew or

should have known no later than April 30, 2003, that he was under a duty to preserve all data on the

laptop.  In flagrant disregard for this duty, however, he went to the trouble of writing his own C-

language program to write over deleted documents in his hard-drive, thus using his own computer

expertise and knowledge to block forensic detection of whatever information he had stored in and

deleted from his personal directories.   While Leon argues that his wiping of relevant evidence was

negligent because he only meant to wipe "personal" information from the computer, the Court has

already established that Dr. Leon did not have the authority to make unilateral decisions about what

evidence was relevant to this case.  Furthermore, Dr. Leon did not even verify that he was only

deleting personal information.  As mentioned previously, Dr. Leon deleted whole directories without

looking at their contents and designed his wiping program to write over data indiscriminately.

(Kieffer Decl., Ex. 1 at 15).  The Court finds that the extraordinary measures to which Dr. Leon

resorted to destroy evidence relevant to this litigation merit a finding of bad-faith.

### IV.  Sanctions

ORDER - 7

1      Having determined that Dr. Leon was under a duty to preserve data on his computer at the

2  date he created the wiping program, that IDX was severely prejudiced by Dr. Leon's use of the

3  wiping program, and that design and use of a wiping program constituted bad-faith spoliation on Dr.

4  Leon's part, this Court may sanction Dr. Leon's behavior. <u>Wm. T. Thompson Co.,</u> 593 F. Supp. at

5  1455. A wide range of sanctions is available because spoliation encompasses a wide range of

6  behaviors. <u>Henderson v. Tyrell,</u> 80 Wn. App. 592, 605, 910 P. 2d 522. The Court may exclude

7  certain evidence at trial, direct that an adverse inference instruction against the spoliator be given to

8  the jury, fine or demand monetary sanctions from the spoliator, or dismiss a complaint or enter a

9  default judgment against the spoliator. <u>Id.</u> at 1457. Sanctioning spoliators serves a punitive and a

10  prophylactic function. <u>Nation-wide Check Corporation v. Forest Hills Distributors, Inc.,</u> 692 F. 2d

11  214, 218 (1ˢᵗ Cir. 1982). By punishing a spoliator, the Court ensures that he will not profit through his

12  misdeeds. Additionally, those who might be tempted to emulate the spoliator's behavior will be

13  deterred. Where a spoliator's behavior is egregious, dismissal or default is appropriate. <u>Computer</u>

14  <u>Associates Intel. ,</u> 133 F.R.D. at 168. Accordingly, this Court finds that dismissal of Dr. Leon's

15  claims is an appropriate sanction for his behavior.

16      In this instance, less drastic sanctions are not useful. A ruling excluding evidence would be

17  futile, as the most salient evidence has been destroyed and any material that might have been helpful

18  to the Defendants cannot be produced due to the wiping of the hard-drive. Fashioning a jury

19  instruction that creates a presumption in favor of the Defense would leave Defendants equally

20  helpless to rebut any material the Plaintiff might use to overcome the presumption. Finally, while a

21  fine might adequately punish Dr. Leon for his actions, it does nothing to arm the Defense with

22  evidence to counter Plaintiff's claims.

23      In this case, the extreme nature of Dr. Leon's bad-faith behavior, combined with the harm

24  done to Defendants merits a dismissal of Dr. Leon's claims with prejudice. Additionally, Defendants

25  IDX submitted a detailed affidavit at oral argument outlining the expenses it incurred investigating

26  and litigating the issue of Dr. Leon's spoliation. The costs came to approximately $65,000.00. The

ORDER - 8

1  Court has reviewed this information and finds the charges and costs listed therein reasonable.  In

2  order to restore IDX to where it would have been had Dr. Leon observed the rules of litigation, this

3  Court also orders Dr. Leon to pay Defendants $65,000.00.

4

5                                          CONCLUSION

6          Because Dr. Leon's behavior demonstrates an egregious disregard for the litigation process

7  and IDX's case was damaged by his actions, this Court GRANTS Defendants' motion.  The

8  Plaintiff's claims are  hereby ordered DISMISSED with prejudice and Plaintiff Leon is ordered to pay

9  $65,000.00 in litigation costs to Defendant IDX within sixty days of this order.  Defendants shall

10 advise the Court which, if any, of their outstanding motions they would like the Court to consider.

11 This notification shall be made within five days of this order.

12

13 The Clerk is directed to send copies of this order to all counsel of record.

14          Dated: September 30, 2004

15                                          /s/ Marsha J. Pechman
                                          Marsha J. Pechman
16                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

ORDER - 9