UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. PLASSE,<br><br>    Plaintiff,<br><br>vs.<br><br>TYCO ELECTRONICS<br>CORPORATION,<br><br>    Defendant. | Civil Action No. 04-CV-30056-MAP |

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
### APPLICATION FOR FEES AND COSTS

Defendant Tyco Electronics Corporation ("TEC") respectfully submits this Reply Memorandum of Law in further support of its application for fees and costs.

### Plaintiff's Argument that No Fees and Costs
### Should be Awarded is Baseless

Plaintiff first argues that **no** fees and costs should be awarded at all because the Court's dismissal of the action is a sufficient sanction. Plaintiff adds "the Court should also consider that at the time of the expert's report, the Plaintiff offered to voluntarily dismiss the action but Defendants [sic] insisted on payment of their expert's fees." (Opp. Memo. ¶1). Plaintiff's only-after-being-caught-red-handed offer to dismiss his case certainly does not absolve him of liability for the substantial attorney's fees and costs he forced TEC to incur both before or after that belated offer.

Notably, Plaintiff fails to advise the Court that very early in this litigation, immediately after Plaintiff's November 2004 depositions, TEC proposed that Plaintiff voluntarily dismiss his case based on Plaintiff's then recently-discovered resume fraud and false deposition testimony.

(See Ex. 1 attached hereto). As of that date, TEC had incurred merely $1300 in fees related to Plaintiff's misconduct. (See Clements Aff., Ex. A p. 6). Had Plaintiff owned up to his misconduct at that time, and sensibly agreed to dismiss his case, he would have prevented all of the ensuing efforts, and related fees and costs, to prove and punish his misconduct. Quite literally, the nearly $100,000 in fees and costs for which TEC now seeks reimbursement would never have been incurred. Plaintiff, however, dug in, and not only refused to dismiss his case, but shamelessly accused TEC of falsifying his resume. (See Ex. 2 attached hereto). Plaintiff is now in a predicament because of his own stubborn refusal to admit responsibility early on, compounded by his subsequent efforts to conceal from TEC and the Court his initial misconduct.

It is true that in September 2005 – only **after** TEC had expended tens of thousands of dollars on attorney's fees and computer expert services demonstrating that Plaintiff had indeed committed an egregious fraud on the court – Plaintiff offered to dismiss his lawsuit if TEC agreed not to pursue sanctions against him. TEC rejected Plaintiff's dismissal offer unless Plaintiff also agreed to pay TEC's computer expert fees of approximately $17,000. (Notably, however, TEC did **not** propose that Plaintiff pay any portion of the significant attorney's fees Plaintiff had forced TEC to expend). Plaintiff rejected that offer, and TEC then proposed that Plaintiff pay at least a portion of the $17,000 expert costs. Plaintiff rejected that offer too. Accordingly, TEC filed its motion to dismiss and for sanctions.

TEC's entirely reasonable demand that Plaintiff pay a portion of its computer expert costs does not remotely support Plaintiff's argument that the Court should deny TEC attorney's fees and costs. Plaintiff's offer to dismiss his case in September 2005 – after months of stonewalling, lies and evidence destruction – coming at the eleventh hour as TEC was finalizing its sanctions motion, does not erase the fact that Plaintiff had by that time already forced TEC to incur

approximately $66,000 in attorneys fees and $20,000 in costs. (See Clements Aff., Ex. A; Diana Aff. Exs. A-D). It was entirely within Plaintiff's power to prevent a significant award of fees and costs simply by agreeing to reimburse TEC for a percentage of its expert costs. Once again, Plaintiff stubbornly refused that reasonable offer, which then forced TEC to incur additional attorney's fees to proceed with the motion for sanctions.

TEC would have accepted much less back in September 2005 (just a portion of its expert fees) to gain the certainty of a voluntary dismissal of the action. Plaintiff decided to roll the dice, however, gambling that the Court would not both dismiss his case and award fees and costs. He lost that gamble, and along the way forced TEC to spend even more money to proceed with the motion to dismiss, and forced the Court to expend substantial resources deciding that motion. It is absurd for Plaintiff to argue that under these circumstances, he should not be held responsible for the financial consequences of his deceit.[1]

**Plaintiff's Proposed Fee Reductions are Without Basis**

Plaintiff argues that the fees sought by TEC are excessive because counsel allegedly spent "enormous" amounts of time "reviewing and revising each other's work." (Opp. Memo. ¶¶2, 4-6, 8). Plaintiff's fraud on the court was not simple to uncover. Only through defense counsels' persistence, diligence and teamwork was it possible to reveal and effectively present to the Court Plaintiff's misconduct. What Plaintiff tries to denigrate by labeling "unnecessary and/or duplicative" time was, in fact, entirely necessary collaboration among counsel. Although Plaintiff may have been able to plan and commit his misconduct by himself, exposing his malfeasance took the joint efforts of defense counsel. Plaintiff's request that a total of 154.55

---

[1] It should be noted too that Plaintiff is not going away quietly. He has already filed an appeal of the Court's Order dismissing his case, and thus, he continues to force TEC to spend even more money on attorney's fees.

3

hours (amounting to $42,501.25 at an "estimated blended rate of $275 per hour") must therefore be rejected.[2]

Plaintiff also seeks a reduction of 19.2 hours for what he claims was time spent by TEC to correct the "false" affidavit submitted by Mary Ann Ayala. (Opp. Memo. ¶3). Plaintiff continues to try to distract the Court by accusing TEC of misconduct. The Court will recall that the time spent preparing Ms. Ayala's affidavits was a direct result of Plaintiff's shameless and baseless accusation that Ms. Ayala and TEC had somehow "planted" a false resume in his TEC personnel file. (Of course, that same false resume that Plaintiff denied submitting to TEC was found on his laptop). No reduction of any time devoted to Ms. Ayala's affidavit is warranted.

For all the foregoing reasons, TEC's application for fees and costs should be granted in is entirety.

Respectfully submitted,

TYCO ELECTRONICS CORPORATION,

By its attorneys:

/s/ Jeffrey D. Clements
Jeffrey D. Clements, BBO #632544
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
(617) 451-1802

Mark Diana, *pro hac vice*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue, Suite 402
Morristown, NJ 07960
(973) 656-1600

---

[2] As set forth in TEC's original Memorandum, although any duplication of effort is denied, TEC has already reduced its entire fee application by 10% to address any possible concern in this area.

4

5

**CERTIFICATE OF SERVICE**

    I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically to counsel of record for the plaintiff on October 31, 2006.

                                /s/ Ingrid S. Martin
                                _____